UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

MILANA DRAVNEL,

       *Plaintiff,*

- against -

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

       *Defendants.*
------------------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**DECLARATION OF JUDD BURSTEIN IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE COMPLAINT**

I, JUDD BURSTEIN, declare as follows:

1. I am a principal of the law firm of Judd Burstein, P.C., attorneys for Defendant Oscar De La Hoya. As such, I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Defendant Oscar De La Hoya's Motion to Compel Arbitration or, in the alternative, to Dismiss the Complaint, dated November 26, 2007.

3. The purpose of this declaration is to place certain Exhibits before this Court.

4. Exhibit A is a true and accurate copy of the Complaint filed in this Action.

5. Exhibit B is a true and accurate copy of an agreement, entered into and signed by Milana Dravnel and Oscar De La Hoya, dated September 23, 2007.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 26th day of November, 2007, in New York County, New York.

                                                                 JUDD BURSTEIN (JB-9585)

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------X    Index No.
MILANA DRAVNEL,                           Date Purchased: 07115321

                    Plaintiff,            **SUMMONS**

     -against -                           Plaintiff designates
                                          ~~KINGS COUNTY~~ as the    NEW
OSCAR DE LA HOYA and John and/or Jane     place of trial.            YORK
Does 1 & 2,                               Venue is based on
                                          residence of
                    Defendants.           Plaintiff.
------------------------------------X

TO THE ABOVE NAMED DEFENDANT(S):

    YOU ARE HEREBY SUMMONED to answer the Complaint in this action and to serve a copy of your Answer within twenty (20) days after the service of this Summons, exclusive of the day of service [or within thirty (30) days after the service is complete if this Summons is not personally delivered to you within the State of New York]; and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated:    New York, New York
          November 14, 2007

                                          Yours etc.,

                                          [signature]
                    **FILED**             BY:
                                          SALVATORE STRAZZULLO, ESQ
                    NOV 15 2007           STRAZZULLO LAW FIRM
                    NEW YORK              Attorney for Plaintiff
                    COUNTY CLERK'S OFFICE 100 Park Avenue
                                          Suite 1600
                                          New York, New York 10017
                                          800-476-9993

PLAINTIFF'S ADDRESS:                      DEFENDANT'S ADDRESS:
1356 65th Street                          Oscar De La Hoya
Brooklyn, New York                        713 N Star
                                          Big Bear, CA 92315

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------X
MILANA DRAVNEL,

               Plaintiff,

  -against -

OSCAR DE LA HOYA and John and/or Jane
Does 1 & 2 ,

               Defendants.
----------------------------------------X

Index No.

**VERIFIED**
**COMPLAINT**

07115321

FILED
NOV 15 2007
COUNTY CLERKS OFFICE
NEW YORK

    Plaintiff, by her attorneys, STRAZZULLO LAW FIRM, as and for her complaint against the Defendants, alleges, upon information and belief and at all times hereinafter mentioned, as follows:

    1.   Plaintiff is a resident of the County of Kings, State of New York.

    2.   Defendants John and/or Jane Doe are resident of the County of New York, State of New York.

    3.   Defendant OSCAR DE LA HOYA was and still is a resident of the County of New York, State of New York

    4.   That on or about January 2006 through May 2007 Defendant OSCAR DE LA HOYA and Plaintiff had an intimate relationship.

    5.   That on or about January 2006 through May 2007 Plaintiff had a personal relationship with Defendant Oscar De La Hoya.

6. On or about May 17, 2007 there were photographs taken of the defendant, Oscar De La Hoya. The photographs were taken at the Ritz-Carlton in Philadelphia, State of Pennsylvania.

7. Plaintiff appeared on a live show on Entertainment Tonight to discuss the pictures and the events which took place between her self and defendant Oscar De La Hoya on or about May 2007.

8. On or about September 2007, the photographs that were taken by Plaintiff's camera are authentic as they were sold to x17online for publication below market value.

9. Subsequently thereafter and after meeting with defendant's Oscar De La Hoya's representatives, the Plaintiff was forced to recant what was stated at her previous interview with Entertainment Tonight regarding the photographs. Plaintiff contacted the Daily News newspaper while she was in a meeting with Mr. De La Hoya's representatives and his "spin" press who coached her in her statement to the Daily News.

10. Further the defendants claimed that there were FBI detectives who were interested in speaking with the Plaintiff regarding the interview and photographs.

11. That on or about September 23, 2007 Plaintiff entered into an agreement with Stephen Espinoza, as

authorized representative of Oscar De La Hoya (hereinafter referred to as the "Agreement".)

12. The agreement was one-sided and essentially written so Plaintiff would not enter "into any agreement with any third party regarding [defendant Oscar De La Hoya] or any photograph or image purporting to depict the defendant, other than x17."

13. Defendant Stephen Espinoza, who signed Defendant's Oscar De La Hoya's name as authorized representative and my friend were present during the execution of the agreement. Mr. De La Hoya was not present during the execution of the agreement

14. There was no consideration for entering into this agreement with the defendants.

15. There was no negotiation of said agreement. That Plaintiff was not represented by an attorney during the execution of the agreement. However, the only addition to the agreement that Plaintiff made was that it is subject to review by her review attorney.

16. There was no consideration for the Agreement with the Defendants.

FIRST CAUSE OF ACTION - FRAUD

17. On or about September 2007 defendants represented to Plaintiff that Plaintiff will publicly recant and

retract her prior public statements regarding Oscar De La Hoya and not sell the photographs. Further, the representatives claimed that they would indemnify the Plaintiff and they would not file any lawsuits arising from the initial sale of the photographs. The agreement stated that if there was any breach of violation of the agreement that they would be entitled to liquidated damages.

18. In the interim, the image of the Plaintiff was ruined as she was coerced to recant to the Daily News her prior truthful public statements. Plaintiff's image has been tarnished and was portrayed as a liar to the press.

19. All of these representations were false and were made to induce Plaintiff to refrain from making any further public statements concerning the pictures taken of Oscar De La Hoya. The Plaintiff has not been able to speak for herself and reclaim her image. If she did, she would be in violation of the agreement. These false representations were made to enable, STEPHEN ESPINOZA, as authorized representative and Oscar De La Hoya to more easily diminish the Plaintiff's stature and destroy her reputation.

20. At the times these representations were made, Defendants had no intention of fulfilling these promises, and knew them to be false.

21. Reassured by Plaintiff's one year personal relationship with Oscar De La Hoya, Plaintiff relied on the foregoing representations by, inter alia, not making public statements concerning the pictures that were taken by her and her interview with Entertainment Tonight or its aftermath in order to protect her reputation, foregoing other employment opportunities that would have been available to her from not signing the agreement.

22. As a direct and proximate result of the Defendants knowing representations, Plaintiff has suffered monetary damages, as well as harm to her public reputation

23. That Defendants conduct was willful and malicious.

24. As a direct and proximate result of defendants' fraud, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, but not less than $20 million.

SECOND CAUSE OF ACTION - TORTIOUS INTEFERENCE WITH CONTRACT

Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 24, supra, as if fully set forth here.

25. Plaintiff and Defendant had a personal relationship with defendant OSCAR DE LA HOYA from early 2006 through May 2007.

26. By acts described herein, Defendants and through their agents intentionally procured the execution of said Agreement in an effort to stonewall the Plaintiff's effort to sell the pictures taken by her from her own camera.

27. Defendants' conduct was willful and malicious.

28. As a direct and proximate result of these defendants' tortuous interference with entering into an Agreement with Defendant, Defendant is entitled to compensatory damages in an amount to be determined at trial, but not less than $20 million, and punitive damages in an amount to be determined at trial, but not less than $50 million.

### THIRD CAUSE OF ACTION - UNDUE INFLUENCE

Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 28, supra, as if fully set forth here.

29. Defendants had a confidential and/or fiduciary relationship with Plaintiff. Plaintiff and Defendant were in an intimate relationship from January 2001.

30. That Defendants' obtained Plaintiff's signature on said agreement by means of coercion.

31. That the coercion Defendants exerted upon Plaintiff deprived Plaintiff of free will.

32. That the influence Defendant exercised over Plaintiff amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted constrained the Plaintiff to do that which was against her free will and desire, but which she was unable to refuse.

33. That Plaintiff was in a mental condition such that she was completely dependent upon the representations and was unaware of the legal consequences of the transaction.

34. That based on the Doctrine of Constructive Fraud – the Defendants have the burden of proving by clear and satisfactory evidence that entering into the Agreement was freely and voluntarily made and that Defendants did not acquire the Plaintiff's signature by fraud, undue influence, or coercion.

35. That based on the doctrine of undue influence, the Court should grant an order rescinding the Agreement and granting Plaintiff damages in the amount of $20 million.

FOURTH CAUSE OF ACTION – DEFAMATION

Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 35, supra, as if fully set forth here.

36. Defendant's OSCAR DE LA HOYA subsequent statement to Entertainment Tonight is a broadcast which tends to expose Plaintiff to public hatred, contempt, ridicule or disgrace. Defendant in his interview stated that the pictures taken by Plaintiff with her own camera were photoshopped.

37. These statements are clearly defamatory and were purportedly disseminated to two prominent New York City publications, the New York Times and Entertainment Tonight.

38. These statements were clearly directed and there was no question that they pertained directly to Plaintiff.

39. These statements made by Defendants were false and had no basis and were made knowingly by defendant in reckless disregard of the truth.

40. Should these statements actually be published in all of the publications to which they were disseminated, Plaintiff stands to suffer a significant financial loss due to its damage to her goodwill and her reputation in the industry in an amount to be determined at trial.

FIFTH CAUSE OF ACTION - INFLICTION OF EMOTIONAL DISTRESS

Plaintiff repeats, reiterates and re-alleges the allegations contained in paragraphs 1 through 40, supra, as if fully set forth here.

41. Defendant's conduct would be intolerable to any ordinary member of the community.

42. Upon information and belief, defendant OSCAR DE LA HOYA, set up the meeting with his authorized representative and Plaintiff to scapegoat himself for conduct that he had done, it was well aware that such conduct would cause Plaintiff significant mental distress.

43. As a result of this outrageous conduct, Plaintiff suffered severe emotional distress.

44. Since the moment she was forced to recant her story with Daily News, Plaintiff as suffered from increased, severe levels of stress, anxiety and depression. She has been unable to work since the incident.

45. As a result thereof, Plaintiff has suffered substantial loss, including general and special damages, in an amount to be proven at trial of not less than $20 million.

46. Plaintiff is also entitled to punitive damages.

WHEREFORE, Plaintiff demands judgment against the Defendant for rescission of the Agreement;

    a. On the first cause of action against defendants Plaintiff is entitled to compensatory damages in an amount to be determined at trial, but not less than $20 million;

b. On the second cause of action against defendants Plaintiff Defendant is entitled to compensatory damages in an amount to be determined at trial, but not less than $20 million, and punitive damages in an amount to be determined at trial, but not less than $50 million;

c. On the third cause of action doctrine of undue influence, the Court should grant an order rescinding the Agreement and granting Plaintiff damages in the amount of $20 million;

d. On the fourth cause of action in an amount to be determined at trial;

e. the fifth cause of action including general and special damages, in an amount to be proven at trial of not less than $20 million.

f. together with attorneys' fees, and for such other relief as the Court may deem just and proper.

Dated: Brooklyn, New York
       November 14, 2007

                        Yours, etc.,

                        By:
                        SALVATORE STRAZZULLO, ESQ.
                        STRAZZULLO LAW FIRM
                        Attorneys for Plaintiff
                        100 Park Avenue
                        Suite 1600
                        New York, NY 10017
                        800-476-9993

**VERIFICATION**

STATE OF NEW YORK   )
                    )  ss.:
COUNTY OF KINGS     )

The undersigned, the PLAINTIFF named in the foregoing action, being duly sworn, says:

I have read the foregoing **VERIFIED COMPLAINT** subscribed by me and know the contents thereof, and the same is true of my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe it to be true.

_____
MILANA DRAVNEL

Sworn to before me this
14th day of November, 2007

_____
Notary Public



SALVATORE E. STRAZZULLO
Notary Public, State of New York
No. 02ST6194040
Qualified in Kings County
Commission Expires Jan. 12, 2008

# EXHIBIT B

**AGREEMENT**

The following sets forth the terms of the agreement ("Agreement"), dated as of September 22, 2007, between Malina Dravnel ("MD") and Oscar De La Hoya ("DLH"). In consideration of the reciprocal commitments and mutual benefits hereunder, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. MD acknowledges that she, on her own initiative, approached DLH's representatives and initiated the discussions which have resulted in this Agreement. MD acknowledges that the purpose for initiating contact with DLH's representative was to advise them of her intention to publicly recant and retract her prior public statements regarding DLH and to publicly announce that the images that had been previously posted to the internet had been taken from MD's camera by a third party without her consent and had been altered and to seek DLH's consent and approval of her public statement(s) (the "Statements"). MD acknowledges that she has not requested, nor has DLH agreed, to pay or to cause any other party to pay to her any financial compensation in connection with this Agreement or otherwise.

2. MD represents and warrants that she has not entered into any agreement with any third party regarding DLH, or any photograph or image purporting to depict DLH, other than X17. Pursuant to MD's request, but subject to MD actually publicly making the Statements as mutually agreed by MD and DLH, DLH: (a) shall indemnify MD against all legal fees paid or incurred by MD for the defense of any third party lawsuit, whether filed domestically and/or internationally, against MD at any time after the date hereof claiming that the Statements constitute a breach of an agreement between MD and a third party; and (b) agrees not to file or pursue any lawsuit against MD arising out of any publication of photographs or interviews given by MD which occurred prior to the date hereof. MD agrees not to file or pursue any lawsuit against DLH arising out of any matter which has occurred prior to the date hereof.

3. MD shall keep this Agreement and the terms hereof strictly confidential. Without limiting the generality of the foregoing, MD shall not use, divulge, disseminate, discuss, refer to or acknowledge the existence of, publish, reproduce or otherwise disclose (or authorize or permit any third party to do any of the above): (a) this Agreement or the terms hereof; (b) any information regarding DLH; or (c) any photographs or images of DLH. In addition, after the date hereof MD shall not, without DLH's prior written consent, grant or participate in any interviews or articles, make any public statement or otherwise discuss or divulge any information regarding DLH. In the event of any breach or violation by MD of the terms of this Paragraph 3, then DLH shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $25,000 for each violation hereof. Likewise in the event of any breach or violation by DLH of DLH's obligations pursuant to Paragraph 2, then MD shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $250,000 for each violation hereof. In addition, MD agrees that In the event of any breach, alleged breach or violation of the terms of this Paragraph 3, then DLH shall sustain irreparable damage and damage which is difficult, and DLH shall therefore be entitled to injunctive and/or other equitable remedy to prevent and/or remedy any such breach or violation, and MD agrees not to oppose any such injunctive or other equitable remedy.

4. Notwithstanding anything to the contrary contained herein, and without prejudice to any other remedies set forth herein or otherwise at law or in equity, DLH's obligations under Paragraph 2

shall be null and void, and DLH shall be fully released from all of his covenants and obligations thereunder, in the event of any breach, alleged breach or violation by MD of the terms of Paragraphs 2 or 3 above.

     5.    This is the entire agreement between MD and DLH regarding the subject matter hereof. MD acknowledges that neither DLH nor any other party has made any promises to her other than those contained in this Agreement. This Agreement may not be amended or modified in any way, except pursuant to a written instrument signed by both parties. MD acknowledges that she has been advise to consult with an attorney before signing this Agreement and that she has had a reasonable opportunity to do so.

     6.    Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any applicable law, rule or regulation, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect. In the event that one or more of the provisions of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired thereby.

     7.    This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be fully performed therein. Any and all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS. Each party shall have a right of appeal to a three-arbitrator panel, which appeal shall also be conducted by private, confidential arbitration in accordance with the rules of JAMS.

MD ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS AGREEMENT, UNDERSTANDS IT, AND IS VOLUNTARILY ENTERING INTO IT OF HER OWN FREE WILL, WITHOUT DURESS OR COERCION, AFTER DUE CONSIDERATION OF ITS TERMS AND CONDITIONS. MD FURTHER ACKNOWLEDGES THAT EXCEPT AS STATED IN THIS AGREEMENT, NEITHER DLH NOR ANY REPRESENTATIVE OF DLH HAS MADE ANY OTHER REPRESENTATIONS OR PROMISES TO HER.

*[handwritten: SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY]*

_____     _____
Milana Dravnel                                     Oscar De La Hoya
                                                    By Stephen Espinoza, Authorized Representative
Date:_____         Date:   9/28/07

AGREED AND ACCEPTED, AS TO THE CONFIDENTIALITY PROVISIONS OF PARAGRAPH 3 ONLY:

_____
Richard Rubino