UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MILANA DRAVNEL,

                *Plaintiff,*

   – against –


OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

                *Defendants.*
-------------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

GREENBURG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
(310) 201-7484

- AND -

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Attorneys for Defendant*
*Oscar De La Hoya*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... ii

STATEMENT OF THE FACTS ................................................. 1

THE COMPLAINT ......................................................... 1

THE SEPTEMBER 2007 AGREEMENT'S ARBITRATION CLAUSE ................... 4

POINT I

    THE COURT SHOULD COMPEL ARBITRATION OF THE COMPLAINT'S FIRST,
    SECOND, THIRD AND FIFTH CLAIMS FOR RELIEF ......................... 4

POINT II

    PLAINTIFF'S DEFAMATION CLAIM SHOULD BE STAYED
    PENDING ARBITRATION ............................................... 6

POINT III

    IN THE ALTERNATIVE, IF THE COURT DOES NOT COMPEL
    ARBITRATION, IT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO
    STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED ................ 7

    A.    PLAINTIFF'S FRAUD ALLEGATIONS FAIL TO STATE A CLAIM UPON
        WHICH RELIEF MAY BE GRANTED ............................... 8

    B.    PLAINTIFF'S ALLEGATIONS OF TORTIOUS INTERFERENCE
        FAIL TO STATE A CLAIM UPON WHICH
        RELIEF MAY BE GRANTED ..................................... 10

    C.    PLAINTIFF'S ALLEGATIONS OF "UNDUE INFLUENCE" FAIL TO STATE A
        CLAIM UPON WHICH RELIEF MAY BE GRANTED ................. 11

    D.    PLAINTIFF'S DEFAMATION ALLEGATIONS FAIL TO STATE A CLAIM
        UPON WHICH RELIEF MAY BE GRANTED ........................ 13

    E.    PLAINTIFF'S ALLEGATIONS OF INTENTIONAL INFLICTION OF
        EMOTIONAL DISTRESS FAIL TO STATE A CLAIM UPON WHICH
        RELIEF MAY BE GRANTED ..................................... 14

CONCLUSION .......................................................... 16

TABLE OF AUTHORITIES

CASES

*ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.,*
307 F.3d 24 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Adams v. Suozzi,*
433 F.3d 220 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*American Maintenance Bldg. Co. of New York v. Acme Property Services, Inc.,*
Case No. 1:06-CV-1366, ___ F.Supp.2d ___, 2007 WL 2492921 (N.D.N.Y. Aug. 29, 2007)
(Kahn, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Argent Electric, Inc. v. Cooper Lighting, Inc.,*
2005 WL 2105591 (S.D.N.Y. August 31, 2005) (Berman, D.J.) . . . . . . . . . . . . . . . . . . . . . . . 10

*Buckeye Check Cashing, Inc. v. Cardegna,*
546 U.S. 440, 126 S.Ct. 1204 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Carvel Corp. v. Noonan,*
3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Chanayil v. Gulati,*
169 F.3d 168 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Danisco A/S v. Novo Nordisk A/S,*
Case No. 01 Civ. 10557, 2003 WL 282391 (S.D.N.Y. Feb. 10, 2003) (Swain, D.J.) . . . . . . . . . 6

*Dunay v. Ladenburg, Thalmann & Co., Inc.,*
170 A.D.2d 335, 565 N.Y.S.2d 819 (1st Dep't 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Foley v. Mobil Chemical Co.,*
214 A.D.2d 1003, 626 N.Y.S.2d 906 (4th Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,*
815 F.2d 840 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gilbert v. Fox & Roach, LP,*
Case. No. Civ. 05-668, 2005 WL 2347121 (D.N.J. Sept. 23, 2005) (Kugler, D.J) . . . . . . . . . . . 4

*Howell v. New York Post Co., Inc.,*
81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*International Audiotext Network, Inc. v. American Tel. and Tel. Co.,*
62 F.3d 69 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*J. Crew Group, Inc. v. Griffin,*
Case No. 90 Civ. 2662, 1990 WL 193918 (S.D.N.Y. Nov. 27, 1991) . . . . . . . . . . . . . . . . . . . . . 14

*Jaffe v. National League for Nursing,*
222 A.D.2d 233, 635 N.Y.S.2d 9 (1st Dep't 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*John F. Dillon & Co, LLC v. Foremost Maritime Corp.,*
Case No. 02 Civ. 7803, 2004 WL 1396180 (S.D.N.Y. June 21, 2004) (Stein, D.J.) . . . . . . . . . . 10

*Katara v. D.E. Jones Commodities, Inc.,*
835 F.2d 966 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Leibowitz v. Bank Leumi Trust Co.,*
152 A.D.2d 169, 171, 548 N.Y.S.2d 513, 514 (2d Dep't 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.,*
Case. No. 02 Civ. 7689, 2005 WL 832050 (S.D.N.Y. April 12, 2005) (Baer, D.J.) . . . . . . . . . . 12

*Murphy v. American Home Products Corp.,*
58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Nunez v. A-T Financial Information Inc.,*
957 F.Supp. 438 (S.D.N.Y. 1997) (Preska, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rosenblatt v. Birnbaum,*
20 A.D.2d 556, 558, 245 N.Y.S.2d 72, 76 (2d Dep't 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Shaw Group, Inc. v. Triplefine Intern. Corp.,*
322 F.3d 115 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Van-Go Transport Co., Inc. v. New York City Board of Education,*
971 F.Supp. 90 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

STATUES AND OTHER AUTHORITIES

9 U.S.C. §§ 1, *et. seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

9 U.S.C. §3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9 U.S.C. § 4 ................................................................ 1

Fed. R. Civ. P. 8 .......................................................... 13

Fed. R. Civ. P. 12(b)(6) ................................................ 1, 7

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MILANA DRAVNEL,

                    *Plaintiff,*

     – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

                   *Defendants.*
-------------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Defendant Oscar De La Hoya ("Defendant") respectfully submits this memorandum of law in support of his motion, pursuant to 9 U.S.C. §§ 3 and 4, to compel arbitration of all of Plaintiff Milana Dravnel's ("Plaintiff") claims other than her defamation claim, which should be stayed pending arbitration. In the alternative, if the Court declines to compel arbitration, Defendant seeks dismissal of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

### STATEMENT OF THE FACTS

**THE COMPLAINT**

Although drafted in a manner that makes it difficult to comprehend, we understand the Complaint, dated November 14, 2007, ("Complaint")[1], to allege the following:

---

[1]     All exhibits referenced herein are annexed to the Declaration of Judd Burstein, Esq., dated November 26, 2007 ("Burstein Declaration"). The Complaint is annexed to the Burstein Declaration at Exhibit A.

1.    From January of 2006, until May of 2007, Plaintiff and Defendant had an "intimate relationship." (Complaint at ¶ 4);

2.    In May of 2007, certain photographs ("the photos") were taken of Plaintiff and Defendant in Philadelphia, Pennsylvania. (Complaint at ¶ 6);

3.    Thereafter, Plaintiff appeared on the Entertainment Tonight television show to discuss the photos. (Complaint at ¶ 7)[2];

4.    In September of 2007, Plaintiff sold the photos "to x17online [a website] for publication below market value." (Complaint at ¶ 8);

5.    Sometime after the photos were sold to x17online, Defendant's representatives allegedly "forced" Plaintiff -- by unspecified means -- to recant the statements she had made to Entertainment Tonight. (Complaint at ¶ 9); and

6.    On September 23, 2007, Plaintiff met with one of Defendant's attorneys, and entered into a "one-sided" agreement ("September 2007 Agreement") (annexed as Exhibit B to the Burstein Declaration) with Defendant (executed on behalf of Defendant by his attorney) which barred her, *inter alia*, from entering into "any agreement with any third party regarding [defendant Oscar De La Hoya] or any photograph or image purporting to depict the defendant, other than x17." (Complaint at ¶¶ 11-12).

Based upon these factual allegations, Plaintiff urges five claims for relief:

---

[2]    Although not apparent from the face of the Complaint, Plaintiff will undoubtedly concede that Defendant is an international superstar boxer who is literally one of the most famous sports personalities on the planet.

2

1.    A claim that the September 2007 Agreement was procured by fraud. (Complaint at ¶¶ 17-24);

2.    A claim that, by reason of supposedly forcing her into the September 2007 Agreement, Defendant tortiously interfered with Plaintiff's opportunity to sell photographs of Defendant. (Complaint at ¶¶ 25-28);

3.    A claim that the September 2007 Agreement was procured through coercion and undue influence. (Complaint at ¶¶ 29-35);

4.    A claim that, prior to their entering into the September 2007 Agreement, Defendant defamed Plaintiff by stating the photos had been "photoshopped." (Complaint at ¶¶ 36-40); and

5.    A claim that by reason of having "forced" Plaintiff to recant her claims that the photos were legitimate, Defendant intentionally inflicted emotional distress upon Plaintiff. (Complaint at ¶¶ 41-46).

Hence, other than Plaintiff's defamation claim, all of the Complaint's claims for relief allege that Plaintiff was damaged by reason of the September 2007 Agreement. As for the defamation claim, which alleges conduct that transpired prior to the execution of the September 2007 Agreement, it too is dependent upon the validity of that September 2007 Agreement because, in Paragraph 2 thereof, Plaintiff "agree[d] not to file or pursue any lawsuit against [Defendant] arising out of any matter which has occurred prior to the date hereof." Hence, if the September 2007 Agreement is enforceable, Plaintiff is barred from pursuing her defamation claim.

3

## THE SEPTEMBER 2007 AGREEMENT'S ARBITRATION CLAUSE

The September 2007 Agreement's arbitration clause is extremely broad:

> Any and all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS. Each party shall have the right to a three-arbitrator panel, which appeal shall also be conducted by private, confidential arbitration in accordance with the rules of JAMS.

(Exhibit B to Burstein Declaration at ¶ 7).

## POINT I

### THE COURT SHOULD COMPEL ARBITRATION OF THE COMPLAINT'S FIRST, SECOND, THIRD AND FIFTH CLAIMS FOR RELIEF

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, governs the enforceability of arbitration agreements contained within any contract "involving commerce." 9 U.S.C. § 2. "[T]he Supreme Court has held that the term 'involving commerce' signifies the 'broadest permissible exercise of Congress' Commerce Clause power.'" *Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005) (Citations omitted). Hence, the FAA applies so long as a contract containing an arbitration clause "has a slight nexus to interstate commerce." *Gilbert v. Fox & Roach, LP*, Case. No. Civ. 05-668, 2005 WL 2347121, at *2 (D.N.J. Sept. 23, 2005) (Kugler, D.J). Since, (a) according to the Complaint, Plaintiff sold certain pictures of Defendant to a website and gave an interview on a national television show (Complaint at ¶¶ 7-8), and (b) the September 2007 Agreement prohibits Plaintiff from selling any other pictures of Defendant or disclosing

4

information about him to anyone (Exhibit B to Burstein Declaration at ¶ 3), the September 2007 Agreement plainly "involve[s] commerce" and is therefore governed by the FAA.

Given the applicability of the FAA, which "requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration," *Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (Citation omitted), Plaintiff cannot avoid arbitration. The September 2007 Agreement's arbitration clause -- which covers "[a]ny and all disputes, claims, controversies and actions hereunder" -- is broad enough to encompass a claim that the September 2007 Agreement was procured through fraud or undue influence. (Exhibit B to Burstein Declaration at ¶ 7). *See ACE Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 31-34 (2d Cir. 2002) (Agreement's arbitration clause requiring arbitration of any "right of action hereunder" was broad enough to require arbitration of a claim that the agreement had been fraudulently induced).

Accordingly, Plaintiff cannot avoid arbitration on the theory that the September 2007 Agreement was fraudulently induced. Rather, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 1209 (2006). Because Plaintiff makes no claim that the arbitration clause itself -- as opposed to the entire September 2007 Agreement -- was the product of fraud or undue influence, her fraud and duress claims must be arbitrated.

Similarly, Plaintiff's tortious interference and intentional infliction claims must be arbitrated, because both of those claims allege injury caused by Plaintiff supposedly having been wrongfully forced to enter into the September 2007 Agreement.    "If allegations underlying the claims 'touch matters' covered by the parties' ... agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 846 (2d Cir. 1987).    These claims do far more than "touch matters" covered by the September 2007 Agreement.  Rather, the claims would not exist but for that agreement.

## POINT II

### PLAINTIFF'S DEFAMATION CLAIM SHOULD BE STAYED PENDING ARBITRATION

Since the defamation alleged by Plaintiff predates the September 2007 Agreement, we recognize that the claim itself is not subject to arbitration.  Nonetheless, that claim should be stayed pending the arbitration of Plaintiff's other claims.

Where a complaint contains both arbitrable and non-arbitrable claims, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket ....    Broad stay orders are particularly appropriate if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Genesco*, 815 F.2d at 856.  The Court has "inherent authority to control its docket where, as here, the issues are substantially interrelated, the stay will not prejudice significantly Plaintiff ..., and the stay is in the interests of judicial economy." *Danisco A/S v. Novo Nordisk A/S*, Case No. 01 Civ. 10557, 2003 WL 282391, at *4 (S.D.N.Y. Feb. 10, 2003) (Swain, D.J.).

6

Application of these principles to the present case strongly militates in favor of a stay. **First**, because four out of Plaintiff's five claims must be arbitrated, the arbitrable claims predominate the lawsuit. **Second**, as detailed below in POINT III(D), Plaintiff's defamation claim is, at best, of questionable value. **Third**, the viability of the defamation claim is inextricably linked to the result of the arbitration, because the September 2007 Agreement explicitly precludes Plaintiff from "fil[ing] or pursu[ing] any lawsuit against [Defendant] arising out of any matter which has occurred prior to the date hereof." (Exhibit B to Burstein Declaration at ¶ 2). Hence, if Plaintiff does not prevail on her arbitrable claims, her defamation claim would fall of its own weight. **Fourth**, granting a stay here will not prejudice Plaintiff because any damages awarded to her on her defamation claim would necessarily be contingent upon her overturning the September 2007 Agreement in the arbitration. **Fifth**, permitting Plaintiff to litigate a claim that could be subsequently precluded by an arbitration award in Defendant's favor would not advance the goal of judicial economy.

### POINT III

### IN THE ALTERNATIVE, IF THE COURT DOES NOT COMPEL ARBITRATION, IT SHOULD DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

If the Court were to deny (erroneously, we respectfully contend) Defendant's motion to compel arbitration, it should then dismiss the entire action pursuant to Fed. R. Civ. P. 12(b)(6).

7

## A.    PLAINTIFF'S FRAUD ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's First Claim for Relief seeks damages based upon the following "false" representations made in September 2007:

> [D]efendants represented to Plaintiff that Plaintiff will publically recant and retract her prior public statements regarding Oscar De La Hoya and not sell the photographs. Further, the representatives claimed that they would indemnify the Plaintiff and they would not file any lawsuits arising from the initial sale of the photographs. The agreement stated that if there was any breach of violation of the agreement that they would be entitled to liquidated damages.

(Complaint at ¶ 17).

This claim fails for a host of reasons.

**First**, we fail to see how Plaintiff can allege that she was defrauded because Defendant allegedly predicted that she would recant her own story. The only party who had the power to make that representation true or false was Plaintiff herself. In any event, Plaintiff's own Complaint, at Paragraph 9, explicitly alleges that Plaintiff did in fact end up recanting her prior statements. Hence, Defendant's supposed representation about what Plaintiff would do in the future was entirely accurate.

**Second**, the other allegedly fraudulent representations -- (a) that Defendant would indemnify Plaintiff (presumably for claims arising from her prior sale of the photos to x17online), (b) that Defendant would not file any lawsuits against Plaintiff arising from the sale of the photos, and (c) that Plaintiff would be liable for liquidated damages if she breached the

8

agreement – are all true. This is made clear by the September 2007 Agreement itself, which contains each of these provisions.[3]

Thus, the Court is faced here with a fraud claim in which no false, much less intentionally fraudulent, statements are alleged to have been made. As such, the claim must be dismissed. *See Chanayil v. Gulati*, 169 F.3d 168, 171 (2d Cir. 1999) ("Under New York law, the elements of common law fraud are '**a material, false representation**, an intent to defraud thereby, and reasonable reliance on the representation, causing damage to the plaintiff.'" (Quoting *Katara v. D.E. Jones Commodities, Inc.*, 835 F.2d 966, 970-71 (2d Cir. 1987) (Emphasis added).

Moreover, Plaintiff's fraud claim is not remotely saved by the allegation that "[a]t the time these representations were made, Defendants had no intention of fulfilling these promises and knew them to be false." (Complaint at ¶ 20). In the first instance, this allegation would arguably make sense only if Plaintiff also alleged that Defendant had breached the September 2007 Agreement by not indemnifying Plaintiff for a third party suit or by actually suing her.[4] Yet, the Complaint does not contain any such allegation.

---

[3]    The law is clear that where, as here, a plaintiff fails to annex to her complaint an agreement upon which she "relies heavily," the Court may consider the agreement if submitted by the defendant on a Rule 12(b)(6) motion. *See International Audiotext Network, Inc. v. American Tel. and Tel. Co.*, 62 F.3d 69, 71-72 (2d Cir. 1995).

[4]    We cannot even understand how Plaintiff could have been defrauded by Defendant's alleged insistence upon a liquidated damages clause that he never intended to enforce. To the contrary, Plaintiff would only benefit from Defendant limiting his right to seek damages to a type of damages he never intended to seek.

In any event, even if there were such an allegation, it would not sustain Plaintiff's fraud

claim:

> A plaintiff may not assert both fraud and contract claims arising out of the same
> transaction. "Where a fraud claim arises out of the same facts as plaintiff's breach
> of contract claim, with the addition only of an allegation that defendant never
> intended to perform the precise promises spelled out in the contract between the
> parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of
> contract."

*Argent Electric, Inc. v. Cooper Lighting, Inc.*, 2005 WL 2105591, at *8 (S.D.N.Y. August 31,

2005) (Berman, D.J.) (Citation omitted).

## B.    PLAINTIFF'S ALLEGATIONS OF TORTIOUS INTERFERENCE FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

It is difficult to respond to Plaintiff's Second Claim for Relief -- alleging tortious

interference with contract -- because the claim is difficult to understand.  Although Plaintiff has

labeled the claim as one for tortious interference with contract, that could not possibly be what

she is alleging because the only contract mentioned in the Complaint is the September 2007

Agreement between Plaintiff and Defendant.  The law is clear that "a party 'cannot tortiously

interfere with its own contract.'"  *John F. Dillon & Co, LLC v. Foremost Maritime Corp.*, Case

No. 02 Civ. 7803, 2004 WL 1396180, at *11 (S.D.N.Y. June 21, 2004) (Stein, D.J.) (Citation

omitted).

However, viewing the Complaint as liberally as possible, it is imaginable that Plaintiff is

seeking to allege tortious interference with Plaintiff's prospective economic advantage from

future sales of photographs of and information about Defendant.   However, for at least two

reasons, that claim fares no better. **First**, "[a]llegations of tortious interference must be more than just mere suspicions, and, therefore, the complaint must allege 'interference with a specific identified business relationship with a third party.'" *American Maintenance Bldg. Co. of New York v. Acme Property Services, Inc.*, Case No. 1:06-CV-1366, ___ F.Supp.2d ___, 2007 WL 2492921, at *12 (N.D.N.Y. Aug. 29, 2007) (Kahn, D.J.) (Citation omitted). Here, the Complaint contains no such allegation. Indeed, Plaintiff even fails to allege that Plaintiff had any other photographs of or information about Defendant to sell to anyone -- identified or not.

**Second**, a claim for tortious interference with prospective economic advantages requires a plaintiff to allege conduct by the defendant that "amount[s] to a crime or an independent tort." *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 363 (2004). Here, the Complaint contains no such allegation.

## C.    PLAINTIFF'S ALLEGATIONS OF "UNDUE INFLUENCE" FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

As is the case with her other claims, Plaintiff's Third Claim for Relief, entitled "Undue Influence," is hardly a model of clarity. Viewed most liberally, we understand Plaintiff to be alleging that Defendant was Plaintiff's fiduciary, and that his securing Plaintiff's consent to the September 2007 Agreement was a breach of his duty as a fiduciary.

There is a fundamental flaw in this claim: the fact that the Complaint itself precludes a claim that Defendant owed a fiduciary duty to Plaintiff. According to Paragraph 5 of the Complaint, Plaintiff and Defendant had a "personal relationship" between January of 2006, and May of 2007. That relationship is subsequently described as "intimate" at Paragraphs 4 and 29

11

of the Complaint.[5]    Putting aside the question of whether a description of a relationship as "intimate" or "personal" is sufficient to plead a fiduciary relationship, the Complaint's allegation that the relationship **ended** in May of 2007, dooms Plaintiff's claim.

According to the Complaint, Defendant's alleged exercise of undue influence took place **after** the parties' relationship had ended in May of 2007.  Hence, even if there had been a fiduciary relationship between the parties at one point in time, that fiduciary duty no longer existed at the time Defendant allegedly "coerced" Plaintiff into executing the September 2007 Agreement.[6]    Therefore, it would have been impossible for Defendant to have breached a by-then non-existent fiduciary duty.  *See Rosenblatt v. Birnbaum*, 20 A.D.2d 556, 558, 245 N.Y.S.2d 72, 76 (2d Dep't 1963) ("After divorce, the confidential relationship no longer exists as a matter of law"); *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, Case. No. 02 Civ. 7689, 2005 WL 832050, at *8 (S.D.N.Y. April 12, 2005) (Baer, D.J.) ("While it is true that Merrill Lynch recommended GEM to Allegheny before the fiduciary relationship ended, the wrongdoing happened after that relationship was severed. This claim could only stand if Allegheny can show that Merrill Lynch made disclosures (or lack thereof) while it was still in the fiduciary capacity."); *Dunay v. Ladenburg, Thalmann & Co., Inc.*, 170 A.D.2d 335, 336, 565 N.Y.S.2d

---

[5]    Paragraph 29 also alleges that the relationship commenced in January 2001, but we assume that this is a typographical error.

[6]    We also note how outlandish it is for Plaintiff to seek to rely upon a confidential relationship that allegedly existed between her and Defendant when it was Plaintiff herself who acted outrageously in seeking to profit from that relationship.

819, 820 (1st Dep't 1991) ("The dissolution of the at will partnership by defendants Weisglass and Koenig was plainly permissible and upon that event, any fiduciary duty they owed to plaintiff ceased.").

**D.    PLAINTIFF'S DEFAMATION ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Plaintiff alleges that she was defamed by Defendant when he claimed to the media that "the pictures taken by Plaintiff with her own camera were photoshopped." (Complaint at ¶ 36). On its face, an alleged statement by Defendant that the photos were "photoshopped" is not defamatory as to Plaintiff unless coupled with a statement that Plaintiff did the "photoshopping." The Complaint contains no such allegation.

However, given the liberal pleading standard afforded by Fed. R. Civ. P. 8, this gap in pleading would not be reason to dismiss Plaintiff's defamation claim, because it would not be unreasonable to construe the Complaint as alleging that Defendant was also claiming that Plaintiff had done the "photoshopping."

Nonetheless, Plaintiff's defamation claim fails by reason of another allegation in the Complaint. Specifically, **Paragraph 18 of the Complaint alleges that the supposed damage to Plaintiff's reputation was not caused by any statement made by Defendant, but by her own public admission that the photos were doctored**: "In the interim, the image of the Plaintiff was ruined as she was coerced to recant to the Daily News her prior truthful statements."

13

This allegation, which essentially admits that any harm suffered by Plaintiff was self-inflicted, dooms Plaintiff's defamation claim. As Judge Conboy stated in *J. Crew Group, Inc. v. Griffin*, Case No. 90 Civ. 2662, 1990 WL 193918, at *2 (S.D.N.Y. Nov. 27, 1991):

> Under New York law, it is well-settled that there can be no defamation without publication.... According to the general rule, if the person claiming to be defamed communicates the defamatory statements to another, no liability for any resulting damage is incurred by the originator of the statements. Thus, there is ordinarily "no publication if the defamatory statement is exposed to a third party by the person claiming to be defamed."

(Citations omitted).[7]

## E. PLAINTIFF'S ALLEGATIONS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Plaintiff's fifth claim for relief seeks damages for intentional infliction of emotional distress. "Under New York law, the tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Nunez v. A-T Financial Information Inc.*, 957

---

[7]   In responding to this argument, Plaintiff may seek to rely upon the doctrine of "compelled self-publication." *See Van-Go Transport Co., Inc. v. New York City Board of Education*, 971 F.Supp. 90 (E.D.N.Y. 1997). The viability of this theory is at best an open question in New York. *See, id.* at 102. However, even if the "compelled self-publication" theory were recognized in New York, it would be inapplicable here. As explained by the Court in *Van-Go,* a claim of "compelled self-publication" would be available only in those circumstances where a plaintiff could demonstrate a "lack of control over the publication," *id.* at 104, by reason of a legal obligation to make disclosure, or the necessity of explaining to a prospective employer the reason for a past discharge. *Id.* at 103-104. The allegations in the Complaint do not begin to meet this standard.

14

F.Supp. 438, 442 (S.D.N.Y. 1997) (Preska, D.J.) (*Citing Howell v. New York Post Co., Inc.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993)).  "Courts have relied on the outrageousness element to set reasonable bounds on this potentially limitless tort and have required that the plaintiff allege conduct 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (*Quoting Murphy v. American Home Products Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 236 (1983)).  The conduct alleged here does not approach this exacting standard.[8]

---

[8]    *See, e.g., Leibowitz v. Bank Leumi Trust Co.*, 152 A.D.2d 169, 171, 548 N.Y.S.2d 513, 514 (2d Dep't 1989) (No cognizable claim by Plaintiff who was "the only Jewish female" in her department and was frequently the subject of derogatory remarks, often being called a "Hebe" or a "kike"); *Foley v. Mobil Chemical Co.*, 214 A.D.2d 1003, 1005, 626 N.Y.S.2d 906, 908 (4th Dep't 1995) (Despite the court's finding that defendants' alleged discrimination and sexual harassment was "wholly inappropriate" behavior, it was not sufficiently outrageous to state a cause of action for intentional infliction of emotional distress); *Jaffe v. National League for Nursing*, 222 A.D.2d 233, 233, 635 N.Y.S.2d 9, 10 (1st Dep't 1995) ("A case of alleged employee harassment and intimidation, leading to forced resignation … [fell] far short of the rigorous standard of outrageous conduct necessary to maintain a cause of action for intentional infliction of emotional distress.").

## CONCLUSION

For the foregoing reasons, Defendant Oscar De La Hoya requests that the Court enter an Order (a) compelling Plaintiff to arbitrate the Complaint's First, Second, Third and Fifth Claims for Relief, and (b) staying the litigation of the Complaint's Fourth Claim for Relief pending completion of the arbitration.   In the alternative, Defendant asks the Court to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: New York, New York
       November 26, 2007

> Respectfully submitted,
> Bertram Fields, Esq.
> Jeffrey Spitz, Esq.
> GREENBURG GLUSKER
> 1900 Avenue of the Stars
> Los Angeles, California 90067
> (310) 201-7484
>
> - AND -
>
> JUDD BURSTEIN, P.C.
>
> By_____
> Judd Burstein (JB-9585)
> 1790 Broadway, Suite 1501
> New York, New York 10019
> (212) 974-2400
>
> *Attorneys for Defendant Oscar De La Hoya*

16