UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MILANA DRAVNEL,

                           Plaintiff,

      -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                       Defendants.

-----------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL
ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
<u>WHICH RELIEF CAN BE GRANTED</u>**

STRAZZULLO LAW FIRM
Salvatore E. Strazzullo,
Esq.

(SS 7419)
100 Park Avenue, Suite 1600
New York, New York  10017
Tel:  (212) 551-3224
Fax:  (212) 926-5001
*Attorneys for Plaintiff Milana Dravnel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

      A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED;
      THEREFORE NO AGREEMENT TO ARBITRATE EXISTS. . . . . . . . . . .4

POINT II

      IF THE COURT FINDS A CONTRACT WAS FORMED, MS. DRAVNEL
      SHOULD NOT BE COMPELLED TO ARBITRATION AS THE
      AGREEMENT TO ARBITRATE IS UNCONSCIONABLE. . . . . . . . . . . . . 9

POINT III

      MS. DRAVNEL DEMANDS A JURY TRIAL DETERMINE
      WHETHER A LEGALLY ENFORCEABLE
      ARBITRATION AGREEMENT WAS FORMED. . . . . . . . . . . . . . . . . . . . .11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ........ . . . .13

JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ........ . ... . 14

**TABLE OF AUTHORITIES**

**STATUTES**

CPLR § 7503(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Fed. R. Civ.P. 15(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9 U.S.C.A. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CASES**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*AT&T Technologies Inc. v. Communications Workers*, 475 U.S. 643 (1986) . . . . . . . . 6

*Benckiser Consumer Products, Inc. v. Kasday*, WL 677631 (S.D.N.Y. 1998) . . . . . . . . .12

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y 2002) . . . . . . . . . . 6, 9, 11

*Brower v. Gateway 2000*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (1st Dep't 1998) . . . . . . 10

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F3d 360 (2d Cir. 2003) . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . .12

*Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161,
404 N.Y.S.2d 206 (4th Dept. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 198 (2d Cir.1999) . . . . . . . . . . .9

*Garten v. Kurth*, 265 F.3d 136 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gillman v. Chase Manhattan Bank, NA*, 73 N.Y.2d 1, 537 N.Y.S.2d 787,
534 N.E.2d 824 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Klos v. Lotnicze*, 133 F.3d 164 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Manos v. Interbank of New York*, 202 A.D.2d 403, 608 N.Y.S.2d 691
(2d Dept. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nelson v. Ring*, 136 A.D.2d 878, 524 N.Y.S.2d 544 (3d Dept. 1988) . . . . . . . . . . . . . . .8

*Opals on Ice Lingerie v. Bodylines, Inc.,* 320 F.3d 363 (2d Cir. 2003) . . . . . . . . . . . . 6, 7

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51 (1980) . . . . . . . . 5, 11

*Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375 (4th Dept. 1994) . . . . . . . . . . . . 7

*Sandvik AB v. Advent Intern. Corp.,* 220 F.3d 99 (3d Cir. 2000) . . . . . . . . . . . . . . . . . . 5

*Schreck v. Spinard*, 13 A.D.3d 1027, 788 N.Y.S.2d 214 (3d Dept. 2004) . . . . . . . . . . . 8

*Three Valleys Mun. Water v. E.F. Hutton*, 925 F.2d 1136 (9th Cir. 1991) . . . . . . . . . . . 6

*Wilhelm v. Wood*, 151 A.D.42, 135 N.Y.S. 930 (2d Dept. 1912) . . . . . . . . . . . . . . . . . . . 8

*Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.) . . . . . . . . . 6

*Wright v. SFX Entertainment Inc.* 2001 WL 103433 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MILANA DRAVNEL,

                          Plaintiff,

        -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                         Defendants.

-------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL
ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
WHICH RELIEF CAN BE GRANTED**

       Plaintiff Milana Dravnel submits this Memorandum of Law in opposition to

defendant Oscar De La Hoya's Motion to Compel Arbitration.

       Because Plaintiff has filed an Amended Complaint, the majority of the grounds

upon which Defendants moved to dismiss have been rendered moot by the changes to the

Complaint by the Amended Complaint, filed January 2, 2008, pursuant to Fed. R. Civ. P.

Rule 15(a)(1)(A).

       The sole remaining issue within Defendant's Motion to Dismiss is whether Ms.

Dravnel entered into a valid agreement – which included an arbitration clause – through

which she gave up her right to litigate in a judicial forum, and instead compelled her to arbitration.

Simply put, since the arbitration clause Defendant seeks to enforce was within an agreement that was never formed, the arbitration provision contained in the agreement is not valid or enforceable, and the motion to compel Plaintiff to arbitration should be denied.

## STATEMENT OF FACTS

Plaintiff Milana Dravnel filed an Amended Complaint in this matter on January 2, 2007, charging Defendant with Tortious Interference with Business Opportunities, Tortious Interference with Contract, Intentional Infliction of Emotional Distress, Defamation, Defamation by Compelled Self-publication, and Product Libel.

The facts relevant to the sole issue in Defendant's Motion to Dismiss that remains in light of the amendments to the Complaint, are as follows:   After deflecting Defendant's various and aggressive efforts to contact and send messages to her, both directly and through her work and friends, Plaintiff Milana Dravnel agreed to meet with two representatives of the champion boxer and businessman, Oscar De la Hoya.  Thus, Stephen Espinoza, an attorney, and Glen Bunting, a publicist with Sitrick and Company – both from California – met with Ms. Dravnel in Bunting's New York City offices in midtown on the Sunday afternoon of September 23, 2007. A friend of Ms. Dravnel's, Richard Rubino, accompanied Ms. Dravnel to the meeting.  There, De La Hoya's agents

2

focused the meeting both on photographs that Ms. Dravnel possessed of Mr. De La Hoya, and Ms. Dravnel's relationship with him.  (Dravnel Dec. ¶ 3; Rubino Dec. ¶ 3.)[1]

Within that meeting, pursuant to discussions between those present as well as with Mr. De la Hoya by telephone, Espinoza drafted an agreement for Ms. Dravnel and for Mr. De la Hoya (through his representative(s)) to sign (hereinafter "the Agreement"). In brief, the Agreement focused generally on Ms. Dravnel's assent to disavow publicly both the authenticity of the photographs of Mr. De la Hoya that she possessed, as well as her previous statements about those photographs.

Ms. Dravnel informed Espinoza more than once that she would not sign the Agreement without her attorneys' approval, and at one point, Ms. Dravnel and Mr. Rubino left the offices to consider the Agreement – and it remained unsigned.  (Dravnel Dec. ¶¶ 9, 13).

It is also notable that compared to both of De la Hoya's representatives who are experienced professionals, and Ms. Dravnel, on the other hand, is a 22-year-old woman whose only education consisted of some high school.  Her friend, Mr. Rubino, is a retired police officer with an automotive business in New York City.

Because it was a Sunday, Ms. Dravnel was unable to contact her attorney.  At the same time, Espinoza and Bunting were pressuring Ms. Dravnel to sign the Agreement

---

[1] See Declaration of Milana Dravnel dated January 2, 2008, and Declaration of Richard Rubino dated January 2, 2008.

because – they told her – they had to return to California by the following day.  (Dravnel Dec. ¶ 12).

Consequently, Ms. Dravnel, again with Mr. Rubino, went back to meet Espinoza, and only agreed to sign the Agreement with the following, additional provision: "SUBJECT TO REVIEW BY MD'S [Milana Dravnel's] ATTORNEY."  She only then signed, directly below that provision.  The parties agreed that the Agreement would not be valid or enforceable unless and until Ms. Dravnel's attorneys reviewed and approved it *See* Agreement, as EXHIBIT 1, attached to Dravnel and Rubino Declarations.

Significantly, Ms. Dravnel's attorneys have never approved the agreement, and thus no agreement was ever completed.

Accordingly, because no agreement was ever formed, the arbitration provision contained in the Agreement is not valid, and defendant's motion to compel arbitration must be denied.

## POINT I

### A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED; <u>THEREFORE NO AGREEMENT TO ARBITRATE EXISTS</u>

Under both federal and New York law, a party may not be compelled to arbitration unless a valid contract containing an arbitration agreement has been entered

into.[2] *See* CPLR § 7503(a); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (1980) (although sales contract contained arbitration clause, providing that any claim arising out of contract or merchandise covered thereby would be submitted to and determined by arbitration, plaintiff buyer's claim that there was never meeting of minds on terms and conditions contained in agreement, accompanied by supporting affidavits, was sufficient to require jury determination as to whether there had been a meeting of minds on the purported agreement to arbitrate); *Sandvik AB v. Advent Intern. Corp.*, 220 F.3d 99, 106 (3d Cir. 2000)( defendant not entitled to arbitration where it disputed very existence of binding contract); *Manos v. Interbank of New York,* 202 A.D.2d 403, 608 N.Y.S.2d 691 (2d Dept. 1994) (CPLR 7503(a) to compel party to arbitrate pursuant to contractual agreement, there must be no substantial question as to whether valid agreement was made or complied with).

This long-settled principle is a straightforward one:

> [B]y contending that they never entered into such contracts, plaintiffs also necessarily contest any agreements to arbitrate within the contracts. To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration, that a 'party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'

---

[2] Plaintiff notes here that while she does not concede that the agreement at issue relates to interstate commerce, invoking the Federal Arbitration Act (FAA), nonetheless, as demonstrated here, under the FAA and New York State law, the Court -- not an arbitrator -- decides whether the alleged agreement to arbitrate was formed, and if so, whether the arbitration agreement is unconscionable or procured by fraud.  Therefore, it does not matter if the alleged agreement falls under the FAA or not -- and this issue will not be addressed.

5

*Three Valleys Mun. Water v. E.F. Hutton*, 925 F.2d 1136, 1142 (9th Cir. 1991), citing

*AT& T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). *See*

*also Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) ("[B]efore the court compels

arbitration of a claim, the court must find that a valid agreement to arbitrate exists.")

Moreover, as noted in *Three Valleys*, the Federal Arbitration Act does not confer

jurisdiction on arbitrators absent an agreement of the parties to arbitrate. *Id.* at 1142 n.5.

It is a factual question for the Court to decide, applying New York contract

principles, whether parties entered into a contract. *See Adams v. Suozzi,* 433 F.3d 220,

226 (2d Cir. 2005) (The court is to determine whether the parties entered into a contract);

*Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.) (The court

should apply state-law principles of contract to determine whether an agreement existed);

*Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 381 (S.D.N.Y 2002) (State-contract

principles of contract are used to evaluate the validity of an agreement to arbitrate).

The case of *Opals on Ice Lingerie v. Bodylines, Inc.,* 320 F.3d 363, 372 (2d Cir.

2003), is worthy of note. There, a New York and a Nevada company drafted various

documents which Opals argued should constitute a valid contract - containing an

arbitration clause. However, the documents drafted and signed by Opals each called for

arbitration in New York, governed by New York law. The only documents undisputedly

signed by Bodylines which contain an arbitration clause- two Addendums - each called

for arbitration in California, governed by California law. The court found this difference

to be significant, indicating that there was **no meeting of the minds** as to an agreement to

6

arbitrate. Fundamental to every valid, enforceable contract is that the parties have a meeting of the minds and mutually assent to the essential terms and conditions of their agreement. Thus, if no contract was formed, then any arbitration agreement contained in the contract is unenforceable. *Opals, supra*, 320 F.3d 371-72.

In the case here, Ms. Dravnel was unable to obtain the assistance of her attorney in negotiating and evaluating the terms of the Agreement, which defendant and his agents had drafted. At the same time, Defendants' agents were pressuring Plaintiff to sign the Agreement, since they purportedly had to return to California. Accordingly, it was ***explicitly agreed between the parties***[3] – **and was included as a handwritten clause within the contract** "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY." - that Ms. Dravnel's signature would ***not be binding*** as an assent to the Agreement, ***until*** the Agreement was reviewed by her attorney. Thus, her signature had no force and effect as an assent to the Agreement without her attorney's input.

Thus the agreement, including the arbitration clause, was subject to the approval of Ms. Dravnel's attorney, and was not a fully formed contract because without the approval of Ms. Dravnel's attorneys, there was no meeting of the minds or mutual assent between the parties. *Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375, 376 (4th Dept. 1994) (an agreement that is subject to approval by an attorney is not binding and enforceable until such approval is

---

[3] Ms. Dravnel and Mr. Rubino both state that when Ms. Dravnel signed the agreement, they told attorney Espinoza that the agreement would not be binding or enforceable without Ms. Dravnel's attorneys' approval. (Dravnel Dec. ¶¶ 15 - 18; Rubino Dec. ¶¶ 14 - 18).

given); *Schreck v. Spinard*, 13 A.D.3d 1027, 1027–28, 788 N.Y.S.2d 214, 214–15 (3d Dept. 2004) (when an agreement is subject to attorney approval, it is not binding and enforceable until it is approved.); *Nelson v. Ring,* 136 A.D.2d 878, 879, 524 N.Y.S.2d 544, 544 – 546 (3d Dept. 1988) (attorney approval clauses are considered an essential part of real property contracts which must be satisfied before a contract is enforceable).

In *Cohn v. Geon Intercontinental Corp.,* 62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dept. 1978), a case similar to the one here, the Court found that the defendant's handwritten words to the effect that the document was subject to legal advice, as well as the defendant's crossing out of the words "consented to," vitiated any "intent to bind defendant" to the terms set forth in the document. As a result, the Court found that there was no mutual assent or meeting of the minds sufficient to form a binding contract. *Id.* at 1161–62, 404 N.Y.S.2d at 208-09.

Ms. Dravnel had the right to make her acceptance of the agreement dependent on the approval of her attorney, and she did so. *See Wilhelm v. Wood,* 151 A.D.42, 135 N.Y.S. 930, 932 (2d Dept. 1912) (a party to a contract has the right to make their acceptance dependent upon the approval of their own attorney.) Her attorneys never approved the agreement; therefore, any arbitration provision in the agreement is invalid and unenforceable, and defendant's motion to compel arbitration should be denied.

8

## POINT II

### IF THE COURT FINDS A CONTRACT WAS FORMED, MS. DRAVNEL SHOULD NOT BE COMPELLED TO ARBITRATION AS THE AGREEMENT TO ARBITRATE IS UNCONSCIONABLE

Even if the Court finds a valid contract was formed by the parties on September 23, 2007 – despite Plaintiff's arguments in POINT ONE, *supra* - the Court should nonetheless find that the arbitration provision is unconscionable, and for that reason also, unenforceable.[4]

In New York, unconscionability generally requires both procedural and substantive elements. *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). The test for procedural inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party lacked "a meaningful choice" in deciding whether to sign the contract. *Desiderio v. National Ass'n of Sec. Dealers,* 191 F.3d 198, 207 (2d Cir.1999). Although it is true that "one who signs an agreement without full knowledge of its terms might be held to assume the risk that [s]he has entered a one-sided bargain," this rule does not apply if a plaintiff is able to demonstrate an absence of meaningful choice. *Id.* To determine whether a contract was validly formed, one factor upon which a court should focus is any disparity in experience and education, *i.e.* bargaining power, between the parties. *See Wright v. SFX Entertainment Inc.,* 2001 WL 103433, at *3; *Gillman v. Chase Manhattan Bank, NA,* 73

---

[4] The Court must determine whether a valid arbitration provision exists employing New York state law. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F3d 360, 365 (2d Cir. 2003).

N.Y.2d 1,10-11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988); *see also Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms"); *Brower v. Gateway 2000,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998) (describing disparity in bargaining power as turning on the "experience and education of the party claiming unconscionability").

In this case, Mr. De La Hoya's attorney and agent drafted the Agreement, which included the arbitration agreement, when Ms. Dravnel had no legal counsel. At the time, Ms. Dravnel, 22-years-old, with just a high school education, did not even know what arbitration was – thus, making it difficult in the extreme for her to agree to be subject to it.

On the other hand, Mr. De La Hoya's agents drafting and negotiating the Agreement were professionals -- Attorney Espinoza is a member of Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook, Johnson, Lande & Wolf LLP, a leading Southern California transactional entertainment law firm. Glen Bunting is employed by Sitrick and Company, one of the nation's leading public relations firms.

The power imbalance between Ms. Dravnel and Mr. De La Hoya's two representatives is so stark that Ms. Dravnel's participation in negotiating the Agreement could hardly be considered meaningful -- indeed, she recognized and conceded that

10

imbalance, by requesting that her own legal counsel first review the Agreement before being bound by it

This being so, any arbitration provision obtained on that day is procedurally unconscionable due to the extreme power imbalance between the parties. *See Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

Additionally, not only is the arbitration agreement procedurally unconscionable, it is substantively unconscionable. The Agreement's arbitration clause unreasonably favors Mr. De La Hoya, and inures totally to his benefit. Mr. De La Hoya, a concededly famous international superstar boxer, has everything to gain by requiring Ms. Dravnel to litigate her disputes with him in confidential arbitration, as compared to a judicial forum.

To permit Mr. De La Hoya to use his power and extensive resources to trick Ms. Dravnel into giving up her rights to litigate her dispute in the judicial forum would be unconscionable and should not be permitted.

## POINT III

### MS. DRAVNEL DEMANDS A JURY TRIAL DETERMINE WHETHER A LEGALLY ENFORCEABLE ARBITRATION AGREEMENT WAS FORMED

The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration. To prevail on a motion to compel arbitration, Mr. De La Hoya must show that there are no genuine issues of material fact to be tried and that he is entitled to a judgment as a matter of law. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F2d 51, 54 (3d Cir. 1980) (the standard for evaluating a motion to compel

11

arbitration is the same as that for summary judgment);  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

The "attorney approval clause" as a matter of law demonstrates that no valid contract was formed; therefore, no valid arbitration provision exists and defendant's motion to compel arbitration should be denied.  Mr. De La Hoya has not met his burden in proving that a valid, enforceable contract containing an arbitration provision exists. The words "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY" single-handedly demonstrate that at the time Ms. Dravnel signed the document, she did not intend to be bound by the agreement until after her attorneys reviewed and approved it. No issue of fact remains, and the Court should deny defendant's motion to compel arbitration as a matter of law.

However, in the event that the Court does not deny defendant's motion to compel arbitration and finds that a material issue of fact exists, then Ms. Dravnel demands pursuant to 9 U.S.C.A. § 4,[5] that a jury determine whether a contract was formed.  *See also Benckiser Consumer Products, Inc. v. Kasday,* WL 677631, *2–3 (S.D.N.Y. 1998).

At trial, the evidence presented will demonstrate the nature of Ms. Dravnel's relationship with Mr. De La Hoya and the influence he had upon her, as well as the parties' prior interactions, all of which affected Ms. Dravnel's state of mind such that she

---

[5] Under 9 USCA § 4, the party opposing arbitration may request a jury decide whether an arbitration agreement was made.

12

would not assent to the Agreement drafted by Defendant's agents and presented to her on September 23, 2007, without advice from her attorneys.

## CONCLUSION

The September 23, 2007 document is not a formed contract, as it contains an "attorney approval clause" that was never fulfilled.  Because no agreement was ever formed on September 23, 2007, the arbitration provision in the agreement is invalid.  The Court should deny defendant's motion to compel arbitration and permit Ms. Dravnel to proceed in the judicial forum.

The remainder of Defendant's motion to dismiss the complaint is moot, as Plaintiff has addressed defendant's issues by filing an amended complaint on January 2, 2008.

**Jury Demand**

Should the Court not find as a matter of law that no valid Agreement was made,

then plaintiff demands a jury trial on the issue.

Dated:      New York, New York
            January 2, 2007

                                            Yours, etc.

                                            STRAZZULLO LAW FIRM

                                            By:
                                            Salvatore E. Strazzullo, Esq.
                                            (SS 7419)
                                            100 Park Avenue, Suite 1600
                                            New York, New York  10017
                                            Tel:  (212) 551-3224
                                            Fax:  (212) 926-5001
                                            *Attorneys for Plaintiff Milana Dravnel*

TO:    Judd Burstein, Esq.
       Judd Burstein, P.C.
       1790 Broadway, Suite 1501
       New York, New York  10019
       Tel:     (212) 974-2400
       Fax:     (212) 974-2944

       -AND-

       Greenberg Glusker
       Bert Fields, Esq.
       Jeffrey Spitz, Esq.
       1900 Avenue of the Stars, 21st Floor
       Los Angeles, California  90067
       Tel:     (310) 553-3610
       Fax:     (310) 553-0687
       *Attorneys for Oscar De La Hoya*

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MILANA DRAVNEL,

                      Plaintiff,

      -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                    Defendants.

-----------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL
ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
<u>WHICH RELIEF CAN BE GRANTED</u>**

Esq.

STRAZZULLO LAW FIRM
Salvatore E. Strazzullo,

(SS 7419)
100 Park Avenue, Suite 1600
New York, New York  10017
Tel:  (212) 551-3224
Fax:  (212) 926-5001
*Attorneys for Plaintiff Milana Dravnel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

POINT I

      A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED;
      THEREFORE NO AGREEMENT TO ARBITRATE EXISTS. . . . . . . . . . .4

POINT II

      IF THE COURT FINDS A CONTRACT WAS FORMED, MS. DRAVNEL
      SHOULD NOT BE COMPELLED TO ARBITRATION AS THE
      AGREEMENT TO ARBITRATE IS UNCONSCIONABLE. . . . . . . . . . . . 9

POINT III

      MS. DRAVNEL DEMANDS A JURY TRIAL DETERMINE
      WHETHER A LEGALLY ENFORCEABLE
      ARBITRATION AGREEMENT WAS FORMED. . . . . . . . . . . . . . . . . . . . .11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ............ . . .13

JURY DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ........ . ... . . 14

## TABLE OF AUTHORITIES

**STATUTES**

CPLR § 7503(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

Fed. R. Civ.P. 15(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

9 U.S.C.A. § 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**CASES**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

*AT&T Technologies Inc. v. Communications Workers*, 475 U.S. 643 (1986) . . . . . . . . 6

*Benckiser Consumer Products, Inc. v. Kasday*, WL 677631 (S.D.N.Y. 1998) . . . . . . . .12

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y 2002) . . . . . . . . . . 6, 9, 11

*Brower v. Gateway 2000*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (1st Dep't 1998) . . . . . . 10

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F3d 360 (2d Cir. 2003) . . . . . . 9

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . .12

*Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161,
404 N.Y.S.2d 206 (4th Dept. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Desiderio v. National Ass'n of Sec. Dealers*, 191 F.3d 198 (2d Cir.1999) . . . . . . . . . . . .9

*Garten v. Kurth*, 265 F.3d 136 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Gillman v. Chase Manhattan Bank, NA*, 73 N.Y.2d 1, 537 N.Y.S.2d 787,
534 N.E.2d 824 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

*Klos v. Lotnicze*, 133 F.3d 164 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Manos v. Interbank of New York*, 202 A.D.2d 403, 608 N.Y.S.2d 691
(2d Dept. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Nelson v. Ring*, 136 A.D.2d 878, 524 N.Y.S.2d 544 (3d Dept. 1988) . . . . . . . . . . . . . . .8

*Opals on Ice Lingerie v. Bodylines, Inc.,* 320 F.3d 363 (2d Cir. 2003) . . . . . . . . . . . 6, 7

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51 (1980) . . . . . . . . 5, 11

*Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375 (4th Dept. 1994) . . . . . . . . . . . . 7

*Sandvik AB v. Advent Intern. Corp.,* 220 F.3d 99 (3d Cir. 2000) . . . . . . . . . . . . . . . . . .5

*Schreck v. Spinard,* 13 A.D.3d 1027, 788 N.Y.S.2d 214 (3d Dept. 2004) . . . . . . . . . . . .8

*Three Valleys Mun. Water v. E.F. Hutton,* 925 F.2d 1136 (9th Cir. 1991) . . . . . . . . . . . . 6

*Wilhelm v. Wood,* 151 A.D.42, 135 N.Y.S. 930 (2d Dept. 1912) . . . . . . . . . . . . . . . . . . . 8

*Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.) . . . . . . . . . 6

*Wright v. SFX Entertainment Inc.* 2001 WL 103433 . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

iii



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MILANA DRAVNEL,

                              Plaintiff,                 Case No.: 07-cv-10406

                                                        Hon. Laura T. Swain
        -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,                            **ORAL ARGUMENT REQUESTED**

                              Defendants.

-------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL
ARBITRATION OR, IN THE ALTERNATIVE, TO DISMISS THE
COMPLAINT FOR FAILURE TO STATE A CLAIM UPON
<u>WHICH RELIEF CAN BE GRANTED</u>**


        Plaintiff Milana Dravnel submits this Memorandum of Law in opposition to

defendant Oscar De La Hoya's Motion to Compel Arbitration.

        Because Plaintiff has filed an Amended Complaint, the majority of the grounds

upon which Defendants moved to dismiss have been rendered moot by the changes to the

Complaint by the Amended Complaint, filed January 2, 2008, pursuant to Fed. R. Civ. P.

Rule 15(a)(1)(A).

        The sole remaining issue within Defendant's Motion to Dismiss is whether Ms.

Dravnel entered into a valid agreement – which included an arbitration clause – through

which she gave up her right to litigate in a judicial forum, and instead compelled her to arbitration.

Simply put, since the arbitration clause Defendant seeks to enforce was within an agreement that was never formed, the arbitration provision contained in the agreement is not valid or enforceable, and the motion to compel Plaintiff to arbitration should be denied.

## STATEMENT OF FACTS

Plaintiff Milana Dravnel filed an Amended Complaint in this matter on January 2, 2007, charging Defendant with Tortious Interference with Business Opportunities, Tortious Interference with Contract, Intentional Infliction of Emotional Distress, Defamation, Defamation by Compelled Self-publication, and Product Libel.

The facts relevant to the sole issue in Defendant's Motion to Dismiss that remains in light of the amendments to the Complaint, are as follows:   After deflecting Defendant's various and aggressive efforts to contact and send messages to her, both directly and through her work and friends, Plaintiff Milana Dravnel agreed to meet with two representatives of the champion boxer and businessman, Oscar De la Hoya.  Thus, Stephen Espinoza, an attorney, and Glen Bunting, a publicist with Sitrick and Company – both from California – met with Ms. Dravnel in Bunting's New York City offices in midtown on the Sunday afternoon of September 23, 2007. A friend of Ms. Dravnel's, Richard Rubino, accompanied Ms. Dravnel to the meeting.  There, De La Hoya's agents

2

focused the meeting both on photographs that Ms. Dravnel possessed of Mr. De La Hoya, and Ms. Dravnel's relationship with him.  (Dravnel Dec. ¶ 3; Rubino Dec. ¶ 3.)[1]

Within that meeting, pursuant to discussions between those present as well as with Mr. De la Hoya by telephone, Espinoza drafted an agreement for Ms. Dravnel and for Mr. De la Hoya (through his representative(s)) to sign (hereinafter "the Agreement"). In brief, the Agreement focused generally on Ms. Dravnel's assent to disavow publicly both the authenticity of the photographs of Mr. De la Hoya that she possessed, as well as her previous statements about those photographs.

Ms. Dravnel informed Espinoza more than once that she would not sign the Agreement without her attorneys' approval, and at one point, Ms. Dravnel and Mr. Rubino left the offices to consider the Agreement – and it remained unsigned.  (Dravnel Dec. ¶¶ 9, 13).

It is also notable that compared to both of De la Hoya's representatives who are experienced professionals, and Ms. Dravnel, on the other hand, is a 22-year-old woman whose only education consisted of some high school.  Her friend, Mr. Rubino, is a retired police officer with an automotive business in New York City.

Because it was a Sunday, Ms. Dravnel was unable to contact her attorney.  At the same time, Espinoza and Bunting were pressuring Ms. Dravnel to sign the Agreement

---

[1] See Declaration of Milana Dravnel dated January 2, 2008, and Declaration of Richard Rubino dated January 2, 2008.

3

because – they told her – they had to return to California by the following day.  (Dravnel Dec. ¶ 12).

Consequently, Ms. Dravnel, again with Mr. Rubino, went back to meet Espinoza, and only agreed to sign the Agreement with the following, additional provision: "SUBJECT TO REVIEW BY MD'S [Milana Dravnel's] ATTORNEY."  She only then signed, directly below that provision.  The parties agreed that the Agreement would not be valid or enforceable unless and until Ms. Dravnel's attorneys reviewed and approved it *See* Agreement, as EXHIBIT 1, attached to Dravnel and Rubino Declarations.

Significantly, Ms. Dravnel's attorneys have never approved the agreement, and thus no agreement was ever completed.

Accordingly, because no agreement was ever formed, the arbitration provision contained in the Agreement is not valid, and defendant's motion to compel arbitration must be denied.

## POINT I

### A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED; <u>THEREFORE NO AGREEMENT TO ARBITRATE EXISTS</u>

Under both federal and New York law, a party may not be compelled to arbitration unless a valid contract containing an arbitration agreement has been entered

4

into.[2] *See* CPLR § 7503(a); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636

F.2d 51, 54 (1980) (although sales contract contained arbitration clause, providing that

any claim arising out of contract or merchandise covered thereby would be submitted to

and determined by arbitration, plaintiff buyer's claim that there was never meeting of

minds on terms and conditions contained in agreement, accompanied by supporting

affidavits, was sufficient to require jury determination as to whether there had been a

meeting of minds on the purported agreement to arbitrate); *Sandvik AB v. Advent Intern.*

*Corp.*, 220 F.3d 99, 106 (3d Cir. 2000)( defendant not entitled to arbitration where it

disputed very existence of binding contract); *Manos v. Interbank of New York*, 202

A.D.2d 403, 608 N.Y.S.2d 691 (2d Dept. 1994) (CPLR 7503(a) to compel party to

arbitrate pursuant to contractual agreement, there must be no substantial question as to

whether valid agreement was made or complied with).

   This long-settled principle is a straightforward one:

> [B]y contending that they never entered into such contracts, plaintiffs also
> necessarily contest any agreements to arbitrate within the contracts. To
> require the plaintiffs to arbitrate where they deny that they entered into the
> contracts would be inconsistent with the 'first principle' of arbitration, that
> a 'party cannot be required to submit [to arbitration] any dispute which he
> has not agreed so to submit.'

---

[2] Plaintiff notes here that while she does not concede that the agreement at issue relates to
interstate commerce, invoking the Federal Arbitration Act (FAA), nonetheless, as
demonstrated here, under the FAA and New York State law, the Court -- not an arbitrator
-- decides whether the alleged agreement to arbitrate was formed, and if so, whether the
arbitration agreement is unconscionable or procured by fraud.  Therefore, it does not
matter if the alleged agreement falls under the FAA or not -- and this issue will not be
addressed.

*Three Valleys Mun. Water v. E.F. Hutton*, 925 F.2d 1136, 1142 (9th Cir. 1991), citing

*AT& T Technologies Inc. v. Communications Workers*, 475 U.S. 643, 648 (1986). *See*

*also Garten v. Kurth*, 265 F.3d 136, 142 (2d Cir. 2001) ("[B]efore the court compels

arbitration of a claim, the court must find that a valid agreement to arbitrate exists.")

Moreover, as noted in *Three Valleys*, the Federal Arbitration Act does not confer

jurisdiction on arbitrators absent an agreement of the parties to arbitrate. *Id.* at 1142 n.5.

It is a factual question for the Court to decide, applying New York contract

principles, whether parties entered into a contract. *See Adams v. Suozzi,* 433 F.3d 220,

226 (2d Cir. 2005) (The court is to determine whether the parties entered into a contract);

*Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir.) (The court

should apply state-law principles of contract to determine whether an agreement existed);

*Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 381 (S.D.N.Y 2002) (State-contract

principles of contract are used to evaluate the validity of an agreement to arbitrate).

The case of *Opals on Ice Lingerie v. Bodylines, Inc.,* 320 F.3d 363, 372 (2d Cir.

2003), is worthy of note. There, a New York and a Nevada company drafted various

documents which Opals argued should constitute a valid contract - containing an

arbitration clause. However, the documents drafted and signed by Opals each called for

arbitration in New York, governed by New York law. The only documents undisputedly

signed by Bodylines which contain an arbitration clause- two Addendums - each called

for arbitration in California, governed by California law. The court found this difference

to be significant, indicating that there was **no meeting of the minds** as to an agreement to

arbitrate.  Fundamental to every valid, enforceable contract is that the parties have a

meeting of the minds and mutually assent to the essential terms and conditions of their

agreement.  Thus, if no contract was formed, then any arbitration agreement contained in

the contract is unenforceable. *Opals, supra*, 320 F.3d 371-72.

      In the case here, Ms. Dravnel was unable to obtain the assistance of her attorney

in negotiating and evaluating the terms of the Agreement, which defendant and his agents

had drafted.  At the same time, Defendants' agents were pressuring Plaintiff to sign the

Agreement, since they purportedly had to return to California.  Accordingly, it was

*explicitly agreed between the parties*[3] **– and was included as a handwritten clause**

**within the contract** "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY." -

that Ms. Dravnel's signature would *not be binding* as an assent to the Agreement, *until*

the Agreement was reviewed by her attorney.  Thus, her signature had no force and effect

as an assent to the Agreement without her attorney's input.

      Thus the agreement, including the arbitration clause, was subject to the approval of Ms.

Dravnel's attorney, and was not a fully formed contract because without the approval of Ms.

Dravnel's attorneys, there was no meeting of the minds or mutual assent between the parties.

*Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375, 376 (4th Dept. 1994) (an agreement that

is subject to approval by an attorney is not binding and enforceable until such approval is

---

[3]  Ms. Dravnel and Mr. Rubino both state that when Ms. Dravnel signed the agreement, they
told attorney Espinoza that the agreement would not be binding or enforceable without Ms.
Dravnel's attorneys' approval.  (Dravnel Dec. ¶¶ 15 - 18; Rubino Dec. ¶¶ 14 - 18).

given); *Schreck v. Spinard*, 13 A.D.3d 1027, 1027–28, 788 N.Y.S.2d 214, 214–15 (3d Dept. 2004) (when an agreement is subject to attorney approval, it is not binding and enforceable until it is approved.); *Nelson v. Ring,* 136 A.D.2d 878, 879, 524 N.Y.S.2d 544, 544 – 546 (3d Dept. 1988) (attorney approval clauses are considered an essential part of real property contracts which must be satisfied before a contract is enforceable).

In *Cohn v. Geon Intercontinental Corp.,* 62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dept. 1978), a case similar to the one here, the Court found that the defendant's handwritten words to the effect that the document was subject to legal advice, as well as the defendant's crossing out of the words "consented to," vitiated any "intent to bind defendant" to the terms set forth in the document.  As a result, the Court found that there was no mutual assent or meeting of the minds sufficient to form a binding contract.  *Id.* at 1161–62, 404 N.Y.S.2d at 208-09.

Ms. Dravnel had the right to make her acceptance of the agreement dependent on the approval of her attorney, and she did so.  *See Wilhelm v. Wood*, 151 A.D.42, 135 N.Y.S. 930, 932 (2d Dept. 1912) (a party to a contract has the right to make their acceptance dependent upon the approval of their own attorney.)  Her attorneys never approved the agreement; therefore, any arbitration provision in the agreement is invalid and unenforceable, and defendant's motion to compel arbitration should be denied.

## POINT II

### IF THE COURT FINDS A CONTRACT WAS FORMED, MS. DRAVNEL SHOULD NOT BE COMPELLED TO ARBITRATION AS THE AGREEMENT TO ARBITRATE IS UNCONSCIONABLE

Even if the Court finds a valid contract was formed by the parties on September 23, 2007 – despite Plaintiff's arguments in POINT ONE, *supra* - the Court should nonetheless find that the arbitration provision is unconscionable, and for that reason also, unenforceable.[4]

In New York, unconscionability generally requires both procedural and substantive elements. *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).  The test for procedural inadequacy in forming a contract is whether, in light of all the facts and circumstances, a party lacked "a meaningful choice" in deciding whether to sign the contract. *Desiderio v. National Ass'n of Sec. Dealers,* 191 F.3d 198, 207 (2d Cir.1999).  Although it is true that "one who signs an agreement without full knowledge of its terms might be held to assume the risk that [s]he has entered a one-sided bargain," this rule does not apply if a plaintiff is able to demonstrate an absence of meaningful choice. *Id.*  To determine whether a contract was validly formed, one factor upon which a court should focus is any disparity in experience and education, *i.e.* bargaining power, between the parties. *See Wright v. SFX Entertainment Inc.,* 2001 WL 103433, at *3; *Gillman v. Chase Manhattan Bank, NA,* 73

---

[4] The Court must determine whether a valid arbitration provision exists employing New York state law. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F3d 360, 365 (2d Cir. 2003).

N.Y.2d 1,10-11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988); *see also Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms"); *Brower v. Gateway 2000,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998) (describing disparity in bargaining power as turning on the "experience and education of the party claiming unconscionability").

In this case, Mr. De La Hoya's attorney and agent drafted the Agreement, which included the arbitration agreement, when Ms. Dravnel had no legal counsel. At the time, Ms. Dravnel, 22-years-old, with just a high school education, did not even know what arbitration was – thus, making it difficult in the extreme for her to agree to be subject to it.

On the other hand, Mr. De La Hoya's agents drafting and negotiating the Agreement were professionals -- Attorney Espinoza is a member of Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook, Johnson, Lande & Wolf LLP, a leading Southern California transactional entertainment law firm. Glen Bunting is employed by Sitrick and Company, one of the nation's leading public relations firms.

The power imbalance between Ms. Dravnel and Mr. De La Hoya's two representatives is so stark that Ms. Dravnel's participation in negotiating the Agreement could hardly be considered meaningful -- indeed, she recognized and conceded that

10

imbalance, by requesting that her own legal counsel first review the Agreement before being

bound by it

This being so, any arbitration provision obtained on that day is procedurally

unconscionable due to the extreme power imbalance between the parties. *See Brennan v.*

*Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

Additionally, not only is the arbitration agreement procedurally unconscionable, it is

substantively unconscionable. The Agreement's arbitration clause unreasonably favors Mr.

De La Hoya, and inures totally to his benefit. Mr. De La Hoya, a concededly famous

international superstar boxer, has everything to gain by requiring Ms. Dravnel to litigate her

disputes with him in confidential arbitration, as compared to a judicial forum.

To permit Mr. De La Hoya to use his power and extensive resources to trick Ms.

Dravnel into giving up her rights to litigate her dispute in the judicial forum would be

unconscionable and should not be permitted.

**POINT III**

**MS. DRAVNEL DEMANDS A JURY TRIAL DETERMINE**
**WHETHER A LEGALLY ENFORCEABLE**
**ARBITRATION AGREEMENT WAS FORMED**

The party seeking to compel arbitration has the burden of proving the existence of

a contract calling for arbitration. To prevail on a motion to compel arbitration, Mr. De La

Hoya must show that there are no genuine issues of material fact to be tried and that he is

entitled to a judgment as a matter of law. *See Par-Knit Mills, Inc. v. Stockbridge Fabrics*

*Co., Ltd.,* 636 F2d 51, 54 (3d Cir. 1980) (the standard for evaluating a motion to compel

11

arbitration is the same as that for summary judgment); Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

The "attorney approval clause" as a matter of law demonstrates that no valid contract was formed; therefore, no valid arbitration provision exists and defendant's motion to compel arbitration should be denied.  Mr. De La Hoya has not met his burden in proving that a valid, enforceable contract containing an arbitration provision exists. The words "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY" single-handedly demonstrate that at the time Ms. Dravnel signed the document, she did not intend to be bound by the agreement until after her attorneys reviewed and approved it. No issue of fact remains, and the Court should deny defendant's motion to compel arbitration as a matter of law.

However, in the event that the Court does not deny defendant's motion to compel arbitration and finds that a material issue of fact exists, then Ms. Dravnel demands pursuant to 9 U.S.C.A. § 4,[5] that a jury determine whether a contract was formed.  *See also Benckiser Consumer Products, Inc. v. Kasday,* WL 677631, *2–3 (S.D.N.Y. 1998).

At trial, the evidence presented will demonstrate the nature of Ms. Dravnel's relationship with Mr. De La Hoya and the influence he had upon her, as well as the parties' prior interactions, all of which affected Ms. Dravnel's state of mind such that she

---

[5] Under 9 USCA § 4, the party opposing arbitration may request a jury decide whether an arbitration agreement was made.

12

would not assent to the Agreement drafted by Defendant's agents and presented to her on

September 23, 2007, without advice from her attorneys.

## CONCLUSION

The September 23, 2007 document is not a formed contract, as it contains an

"attorney approval clause" that was never fulfilled.  Because no agreement was ever

formed on September 23, 2007, the arbitration provision in the agreement is invalid.  The

Court should deny defendant's motion to compel arbitration and permit Ms. Dravnel to

proceed in the judicial forum.

The remainder of Defendant's motion to dismiss the complaint is moot, as

Plaintiff has addressed defendant's issues by filing an amended complaint on January 2,

2008.

**Jury Demand**

Should the Court not find as a matter of law that no valid Agreement was made,

then plaintiff demands a jury trial on the issue.

Dated:     New York, New York
           January 2, 2007

Yours, etc.

STRAZZULLO LAW FIRM

By:
Salvatore E. Strazzullo, Esq.
(SS 7419)
100 Park Avenue, Suite 1600
New York, New York  10017
Tel:  (212) 551-3224
Fax:  (212) 926-5001
*Attorneys for Plaintiff Milana Dravnel*

TO:     Judd Burstein, Esq.
        Judd Burstein, P.C.
        1790 Broadway, Suite 1501
        New York, New York  10019
        Tel:     (212) 974-2400
        Fax:     (212) 974-2944

        -AND-

        Greenberg Glusker
        Bert Fields, Esq.
        Jeffrey Spitz, Esq.
        1900 Avenue of the Stars, 21st Floor
        Los Angeles, California  90067
        Tel:     (310) 553-3610
        Fax:     (310) 553-0687
        *Attorneys for Oscar De La Hoya*

14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MILANA DRAVNEL,

                        Plaintiff,

      -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                       Defendants.

------------------------------------------------------------------X

**DECLARATION OF
MILANA DRAVNEL**

Hon. Laura T. Swain
Case No.: 07-cv-10406

      I, MILANA DRAVNEL, declare as follows:

1.      I am the Plaintiff in the above-entitled matter.  I am fully familiar with the facts and circumstances of this case.

2.      I make this Declaration in opposition to Defendant's motion to compel arbitration.

3.      On September 23, 2007, I met with representatives of Defendant Oscar De La Hoya (hereinafter "Mr. De La Hoya") regarding photographs I had of Mr. De La Hoya dressed in women's clothing.  My friend, Richard Rubino, accompanied me to the meeting.

3.      On September 23, 2007, Stephen Espinoza (hereinafter "attorney Espinoza"), an attorney, and Glen Bunting (hereinafter "Bunting"), a publicist with Sitrick and Company, introduced themselves to me as Mr. De La Hoya's representatives (hereinafter collectively "De La Hoya's representatives").

4.      Both attorney Espinoza and Bunting stated they had flown to New York from California for one day to meet with me.

5.    Mr. Rubino, attorney Espinoza, and I met for approximately 1.5 hours at a deli near Espinoza's hotel to discuss the photographs.

6.    I told attorney Espinoza and Bunting more than once that the photographs were authentic and real.

7.    Attorney Espinoza and Bunting, the publicist, were anxious to obtain an agreement from me relating to Mr. De La Hoya and the photographs.

8.    Attorney Espinoza drafted an agreement for me to sign.

9.    I told attorney Espinoza that I would not sign any agreement until after my attorneys had reviewed and approved it.

10.    I am 22 years old.  I immigrated from Russia when I was 12 years old.  I did not graduate high school, and have only recently obtained my GED.  I have no legal training.

11.    I never agreed to the terms of the agreement drafted by attorney Espinoza, and I certainly never agreed to arbitrate any matters relating to the supposed agreement.  On September 23, 2007, I did not even know what arbitration was.

12.    Attorney Espinoza and Bunting stressed that they were flying out the following day, and that I had to sign the agreement before they left.

13.    I left the meeting on September 23, 2007, with a copy of an unsigned agreement.

14.    After leaving the meeting, I discussed the proposed agreement with Mr. Rubino.

15.    I then returned to attorney Espinoza's hotel and met him in the lobby.  I informed attorney Espinoza that if he would add language to the agreement stating that the agreement would not be effective or valid until after I had my attorneys review and approve it, then I would sign it that day.   It was clearly explained to attorney Espinoza that if I signed the agreement, that it was subject to approval and review by my attorneys.

2

16.    Mr. Rubino also explained to attorney Espinoza that I would sign the agreement only if he added a clause stating that the agreement would not become a binding contract until my attorneys reviewed and approved it.

17.    Attorney Espinoza then wrote above the signature line for my name "SUBJECT TO APPROVAL BY MD'S ATTORNEY."

18.    I then placed my signature on the paper.

19.    I have never given Mr. De La Hoya or his representatives any information that would lead them to believe that any of my attorneys have approved the proposed agreement.

20.    I was very clear in my meetings with Mr. De La Hoya's representatives, that the agreement would not be binding unless and until my attorneys reviewed it and approved it.

21.    When I left Mr. De La Hoya's representatives on September 23, 2007, I did not believe we had entered into a binding contract. I believed that in order for it to become binding, my attorneys would have to review it and agree to it.

22.    A copy of the agreement referred to herein is attached as EXHIBIT "1".

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 30th day of December 2007, in Kings County, New York.

MILANA DRAVNEL

3

Jan 02 2008 5:37PM   MANHATTAN AUTO CARE          12123533709          P.2
Jan 02 08 02:59p     Gail Blasie                  15168048219        p.3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MILANA DRAVNEL,

                          Plaintiff,                    **DECLARATION OF
                                                         RICHARD RUBINO**

          -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,                    Hon. Laura T. Swain
                                                Case No.: 07-cv-10406
                          Defendants.

------------------------------------------------------------X

I, RICHARD RUBINO, declare as follows:

1.      I am a friend of the Plaintiff, Milana Dravnel.  I am not an attorney.

2.      On September 23, 2007, I accompanied the Plaintiff, Milana Dravnel, to

Manhattan to meet with representatives of the Defendant, Oscar De La Hoya.

3.      The purpose of the meeting was to negotiate an agreement between Ms. Dravnel

and Mr. De La Hoya regarding digital photographs in Ms. Dravnel's possession of Mr.

De La Hoya dressed in women's clothing.

4.      Mr. De La Hoya's representatives introduced themselves as Stephen Espinoza, an

attorney, and Glen Bunting, a publicist from the public relations firm Sitrick and

Company.

5.      Ms. Dravnel told attorney Stephen Espinoza and Glen Bunting many times that

the photos were authentic and real.

6.      During the meeting, attorney Stephen Espinoza stated to Ms. Dravnel and me that

he, Stephen Espinoza, was speaking on the telephone with Mr. De La Hoya and another

attorney, both of whom were present in California.

Jan 02 2008 5:37PM    MANHATTAN AUTO CARE        12123533709        P.3
Jan 02 08 03:00p    Gail Blasie                    15168048219        p.4

7.     Attorney Stephen Espinoza typed up the agreement while we were all present.

8.     In a draft of the agreement, attorney Stephen Espinoza included a provision requiring any disputes relating to the agreement be resolved in California under California law. I objected to that provision, and it was deleted.

9.     I also objected to the inclusion of any provision requiring that disputes under the agreement be resolved in arbitration. It was my understanding that any provision requiring arbitration had been deleted from the agreement.

10.     Attorney Stephen Espinoza presented a final agreement for Ms. Dravnel to sign regarding the photographs of Mr. De La Hoya dressed in women's clothing.

11.     Ms. Dravnel did not want to sign the agreement at that time, and specifically told attorney Stephen Espinoza that she did not want to sign it until her attorneys had a chance to review it.

12.     Attorney Stephen Espinoza stated that he and Glen Bunting were leaving for California the next day, September 24, 2007, and that if Ms. Dravnel were going to sign the agreement, she would have to do it that day, September 23, 2007.

13.     Ms. Dravnel and I left the meeting with the agreement unsigned.

14.     Ms. Dravnel and I later returned to attorney Stephen Espinoza's hotel. Ms. Dravnel agreed to sign the agreement, with the proviso that it would not be effective or binding until her attorney approved it. Ms. Dravnel told Stephen Espinoza that it was not a contract unless and until her attorneys reviewed and approved it.

15.     I also told attorney Stephen Espinoza that the agreement would not be binding unless and until Ms. Dravnel's attorneys approved it.

Jan 02 2008 5:37PM    MANHATTAN AUTO CARE          12123533709          P.4
Jan 02 08 03:00p    Gail Blasie                          15168048219        p.5

16.    Attorney Stephen Espinoza then wrote on the agreement, above Ms. Dravnel's

signature line, that the agreement was "subject to further review by MD's attorneys."

17.    Ms. Dravnel then signed the agreement.

18.    At all times it was made very clear to attorney Stephen Espinoza that the

agreement would not be binding unless and until Ms. Dravnel's attorneys approved it.

19.    A copy of the agreement referred to herein is attached as EXHIBIT "1".

20.    To the best of my knowledge, Ms. Dravnel's attorneys have never approved the

agreement.

I declare under penalty of perjury under the laws of the United States that the

foregoing is true and correct. Executed this        day of          2008, in New York County,

New York.

                              RICHARD RUBINO

                                         01/02/08

3

**EXHIBIT "A"**

# AGREEMENT

The following sets forth the terms of the agreement ("Agreement"), dated as of September 22, 2007, between Malina Dravnel ("MD") and Oscar De La Hoya ("DLH"). In consideration of the reciprocal commitments and mutual benefits hereunder, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    MD acknowledges that she, on her own initiative, approached DLH's representatives and initiated the discussions which have resulted in this Agreement. MD acknowledges that the purpose for initiating contact with DLH's representative was to advise them of her intention to publicly recant and retract her prior public statements regarding DLH and to publicly announce that the images that had been previously posted to the internet had been taken from MD's camera by a third party without her consent and had been altered and to seek DLH's consent and approval of her public statement(s) (the "Statements"). MD acknowledges that she has not requested, nor has DLH agreed, to pay or to cause any other party to pay to her any financial compensation in connection with this Agreement or otherwise.

2.    MD represents and warrants that she has not entered into any agreement with any third party regarding DLH, or any photograph or image purporting to depict DLH other than X17. Pursuant to MD's request, but subject to MD actually publicly making the Statements as mutually agreed by MD and DLH, DLH: (a) shall indemnify MD against all legal fees paid or incurred by MD for the defense of any third party lawsuit, whether filed domestically and/or internationally, against MD at any time after the date hereof claiming that the Statements constitute a breach of an agreement between MD and a third party; and (b) agrees not to file or pursue any lawsuit against MD arising out of any publication of photographs or interviews given by MD which occurred prior to the date hereof. MD agrees not to file or pursue any lawsuit against DLH arising out of any matter which has occurred prior to the date hereof.

3.    MD shall keep this Agreement and the terms hereof strictly confidential. Without limiting the generality of the foregoing, MD shall not use, divulge, disseminate, discuss, refer to or acknowledge the existence of, publish, reproduce or otherwise disclose (or authorize or permit any third party to do any of the above) (a) this Agreement or the terms hereof; (b) any information regarding DLH; or (c) any photographs or images of DLH. In addition, after the date hereof MD shall not without DLH's prior written consent, grant or participate in any interviews or articles, make any public statement or otherwise discuss or divulge any information regarding DLH. In the event of any breach or violation by MD of the terms of this Paragraph 3, then DLH shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $25,000 for each violation hereof. Likewise in the event of any breach or violation by DLH of DLH's obligations pursuant to Paragraph 2, then MD shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $250,000 for each violation hereof. In addition, MD agrees that In the event of any breach, alleged breach or violation of the terms of this Paragraph 3, then DLH shall sustain irreparable damage and damage which is difficult, and DLH shall therefore be entitled to injunctive and/or other equitable remedy to prevent and/or remedy any such breach or violation, and MD agrees not to oppose any such injunctive or other equitable remedy.

4.    Notwithstanding anything to the contrary contained herein, and without prejudice to any other remedies set forth herein or otherwise at law or in equity, DLH's obligations under Paragraph 2

shall be null and void, and DLH shall be fully released from all of his covenants and obligations thereunder, in the event of any breach, alleged breach or violation by MD of the terms of Paragraphs 2 or 3 above.

5.     This is the entire agreement between MD and DLH regarding the subject matter hereof. MD acknowledges that neither DLH nor any other party has made any promises to her other than those contained in this Agreement. This Agreement may not be amended or modified in any way, except pursuant to a written instrument signed by both parties. MD acknowledges that she has been advise to consult with an attorney before signing this Agreement and that she has had a reasonable opportunity to do so.

6.     Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any applicable law, rule or regulation, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect. In the event that one or more of the provisions of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired thereby.

7.     This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be fully performed therein. Any and all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS. Each party shall have a right of appeal to a three-arbitrator panel, which appeal shall also be conducted by private, confidential arbitration in accordance with the rules of JAMS.

MD ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS AGREEMENT, UNDERSTANDS IT, AND IS VOLUNTARILY ENTERING INTO IT OF HER OWN FREE WILL, WITHOUT DURESS OR COERCION, AFTER DUE CONSIDERATION OF ITS TERMS AND CONDITIONS. MD FURTHER ACKNOWLEDGES THAT EXCEPT AS STATED IN THIS AGREEMENT, NEITHER DLH NOR ANY REPRESENTATIVE OF DLH HAS MADE ANY OTHER REPRESENTATIONS OR PROMISES TO HER.

SUBJECT TO FURTHER REVIEW BY MD'S RETIRED ATTORNEY

_____
Milana Dravnel

Date: _____

_____
Oscar De La Hoya
By Stephen Espinoza, Authorized Representative
Date: 9/28/07

AGREED AND ACCEPTED, AS TO THE CONFIDENTIALITY PROVISIONS OF PARAGRAPH 3 ONLY:

_____
Richard Rubino

- 2 -