UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
MILANA DRAVNEL,

                *Plaintiff*,

  – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

                *Defendants*.
-------------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT
REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S
MOTION TO COMPEL ARBITRATION**

GREENBURG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
(310) 201-7484

- AND -

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Attorneys for Defendant
Oscar De La Hoya*

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................ ii

INTRODUCTION ....................................................... 1

ARGUMENT ........................................................... 3

    PLAINTIFF'S MOTION TO COMPEL SHOULD BE GRANTED ................. 3

        A.    THE ISSUE OF WHETHER THE SUPPOSED ABSENCE OF
              ATTORNEY APPROVAL VITIATES THE SEPTEMBER 2007
              AGREEMENT'S ARBITRATION CLAUSE MUST BE
              DECIDED BY THE ARBITRATOR ................................ 3

        B.    PLAINTIFF'S CLAIM THAT THE SEPTEMBER 2007 AGREEMENT
              IS UNCONSCIONABLE MUST ALSO BE RESOLVED
              BY THE ARBITRATOR ....................................... 9

CONCLUSION ........................................................ 10

## TABLE OF AUTHORITIES

CASES

*Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,*
    445 F.3d 121 (2d Cir. 2006) .................................................. 7

*Bar-Aval v. Time Warner Cable Inc.,*
    2006 WL 2990032 (S.D.N.Y. 2006) .................................... 8, 9

*Baron v. Rabinovic,*
    2006 WL 1318426 (E.D.N.Y. 2006) .................................... 2, 3

*Brennan v. Bally Total Fitness,*
    198 F.Supp.2d 377 (S.D.N.Y. 2002) (Scheindlin, D.J.) ............... 9

*Brennan v. Bally Total Fitness,*
    153 F.Supp. 2d. 408 (S.D.N.Y. 2001) .................................... 10

*Buckeye Check Cashing, Inc. v. Cardegna,*
    126 S.Ct. 1204 (2006) ......................................................... 9

*Cohn v. Geon Intercontinental Corp.,*
    62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dep't 1978) ............... 4

*Contec Corp. v. Remote Solution Co.,*
    398 F.3d 205 (2d Cir. 2005) ............................................. 7, 8

*Desiderio v. National Association of Securities Dealers,*
    191 F.3d 198 (2d Cir. 1999) ................................................ 9

*Ferguson v. Lion Holdings, Inc.,*
    312 F.Supp.2d 484 (S.D.N.Y. 2004) (Leisure, D.J.) ................... 2

*Opals on Ice Lingerie v. Bodylines, Inc.,*
    320 F.3d 362 (2d Cir. 2002) ................................................ 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395 (1967) ........................................................... 9

*Savino v. Computer Credit, Inc.,*
    960 F.Supp. 599 (E.D.N.Y. 1997) ......................................... 2

STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MILANA DRAVNEL,

                *Plaintiff*,

– against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

                *Defendants*.
------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT
REQUESTED**

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION

Defendant Oscar De La Hoya ("Defendant") respectfully submits this Reply Memorandum of Law in support of his motion, pursuant to 9 U.S.C. §§ 3 and 4, to compel arbitration of Plaintiff Milana Dravnel's ("Plaintiff") claims.[1]

### INTRODUCTION

Although Plaintiff has filed an Amended Complaint, dated January 2, 2008, (Exhibit A to the accompanying Declaration of Judd Burstein) alleging a variety of frivolous new claims such as "Product Libel" and "Compelled Self-Defamation," those changes do not moot Defendant's motion because Plaintiff's claims for tortious interference and intentional infliction of emotional distress remain in the case. Indeed, the only change brought about by the Amended Complaint is that Plaintiff has now brought her defamation-based claims within the ambit of the September 2007 Agreement (the "Agreement") (Exhibit B to the Declaration of Judd Burstein submitted as

---

[1] Defendant's original motion also sought, in the alternative, to dismiss the Original Complaint, dated November 14, 2007. That motion has been obviated by the Amended Complaint. Hence, contemporaneously with the submission of this Reply Memorandum of Law, we are also submitting a new motion to dismiss the Amended Complaint.

part of Defendant's initial moving papers). In contrast to the Original Complaint (Exhibit A to the Declaration of Judd Burstein submitted as part of Defendant's initial moving papers), which alleged only defamatory conduct that occurred after the execution of the Agreement (Original Complaint at ¶ 36), the Amended Complaint now alleges a host of supposedly defamatory statements made **before** the execution of the Agreement. Accordingly, the defamation-based claims now fall within the Agreement's provision barring Plaintiff from "fil[ing] or pursu[ing] any lawsuit against DLH arising out of any matter which has occurred prior to the date hereof." (Agreement at ¶ 2).

We also take note of Plaintiff's inconsistent pleadings in this case. In her first pleading, Plaintiff time and again affirmed the existence of the Agreement. (*See, e.g.*, Original Complaint at ¶¶ 11, 19, 34). Indeed, she sought damages based upon the fact that she had been fraudulently induced into entering the Agreement. In seeking those damages, Plaintiff necessarily reaffirmed that there had in fact been a meeting of the minds. *See Ferguson v. Lion Holdings, Inc.*, 312 F.Supp.2d 484, 498 (S.D.N.Y. 2004) (Leisure, D.J.) (When a plaintiff claims fraud in the inducement and seeks damages rather than rescission, she is thereby affirming the contract). Then, when faced with a motion to compel arbitration, Plaintiff now suddenly claims that she never actually agreed to enter into the contract on which she had been seeking damages.

We understand that amendments of this nature are permitted by Fed. R. Civ. P. 15. *See Savino v. Computer Credit, Inc.*, 960 F.Supp. 599, 601 (E.D.N.Y. 1997); *but see Baron v.*

2

*Rabinovic*, No. CV-05-0110, 2006 WL 1318426, at *1 (E.D.N.Y. May 12, 2006). Nonetheless, this studied attempt to plead around a motion to compel arbitration smacks of bad faith.

## ARGUMENT

## POINT I

## DEFENDANT'S MOTION TO COMPEL SHOULD BE GRANTED

Before turning to a discussion of Plaintiff's arguments, we first note that Plaintiff has, by her silence, conceded (a) that arbitration of all of her non-defamation claims is required, and (b) that her defamation-based claims should be stayed.[2] That is, Plaintiff's **only** argument in her answering papers is that the Agreement is not enforceable.

### A. THE ISSUE OF WHETHER THE SUPPOSED ABSENCE OF ATTORNEY APPROVAL VITIATES THE SEPTEMBER 2007 AGREEMENT'S ARBITRATION CLAUSE MUST BE DECIDED BY THE ARBITRATOR

Plaintiff seeks to avoid arbitration because the Agreement includes the following hand-written language inserted above her signature: "Subject to further review by MD's Attorney." Based upon this language, Plaintiff argues that she is not required to arbitrate anything until the Court decides whether the Agreement ever came into effect. In advancing this argument, Plaintiff has misconstrued the inquiry to be made by the Court. The issue here is not the

---

[2] As noted above, a stay is no longer necessary because the Amended Complaint's new allegations of defamatory conduct that predate the Agreement have brought Plaintiff's defamation claims within the ambit of the Agreement's arbitration clause. In any event, Plaintiff has conceded that a stay would be appropriate if some of her claims need to be arbitrated.

3

relevance and impact of the "attorney review" language, but **who decides that issue**. The law is clear that the issue is one that must be decided by an arbitrator.

Plaintiff's argument relies upon a host of cases in which courts held that real estate contracts never became binding because they had a provision explicitly requiring an affirmative act of attorney **approval** before they became effective.[3] This case is fundamentally different because there is nothing in the Agreement which required affirmative attorney approval. Rather, the Agreement stated only that it was subject to "further **review** by MD's attorney." (Emphasis supplied).

This is a crucial distinction in light of the accompanying Declaration of Stephen Espinoza, the representative of Defendant who executed the Agreement. As explained in Mr. Espinoza's Declaration:

> When I came out to the street, Ms. Dravnel and Mr. Rubino were waiting by Mr. Rubino's car. I handed them a clean copy of the agreement to sign. At this point, Mr. Rubino [Ms. Dravnel's friend] stated that he and Ms. Dravnel wanted to show the agreement to an attorney solely for the purpose of seeing if any language needed to be clarified, and not to decide whether to enter into the agreement. Moreover, Mr. Rubino explicitly told me that I would hear from an attorney the next morning only if there were some language issues. That is the reason I hand-wrote in "Subject to further review by MD's Attorney" above the signature line for Ms. Dravnel.

---

[3] The only case that does not fall completely within this description is *Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161, 1162, 404 N.Y.S.2d 206, 209 (4th Dep't 1978). However, in *Cohn*, the defendant actually struck out the words "CONSENTED TO" before stating that the agreement was subject to his attorney's advice. Moreover, in *Cohn*, the exact words used by the parties were not set forth in the decision.

> Prior to her signing, I explicitly told Ms. Dravnel that she did not have to sign the agreement at that point, and that if she had an attorney, she should have it reviewed by the attorney before signing it. I made it crystal clear that Mr. de la Hoya would still be willing to sign the agreement the following day. Ms. Dravnel refused this offer and signed.
>
> As we left each other, there was absolutely no doubt about the facts that (a) Ms. Dravnel and I had reached agreement, (b) she would be speaking to an attorney only for the purpose of determining if any language changes were needed to clarify the agreement, and (c) I would hear from that attorney the next morning only if there were any drafting issues.
>
> No lawyer representing Ms. Dravnel ever called me the next day or at any time thereafter concerning the agreement she had signed.

(Declaration of Stephen Espinoza at ¶¶ 13-16).

In other words, this is not a case where there are undisputed facts demonstrating the parties' understanding that an agreement would not become effective unless there was an affirmative act of attorney approval. Rather there is a factual dispute in this case as to what the "attorney review" insertion means. Indeed, that is one of a number of factual issues to be resolved. For example, if Plaintiff had no intention of entering into the Agreement absent attorney approval, why did she voluntarily return hours later to meet with Mr. Espinoza to sign the agreement before showing it to an attorney? Also, given that the insertion only called for review, did she take the Agreement to an attorney? If she did so, and the attorney expressed no reservations, then the Agreement is surely valid by its own terms because it was "reviewed" by her attorney.

Given that the handwritten insertion does not demonstrate, as a matter of law, that the parties never formed a contract, we are left with the question of whether the Court or an

5

arbitrator should decide if the Agreement is an enforceable document. In answering this question, the following facts are relevant:

**First**, Plaintiff does not dispute that she signed the Agreement and that the Agreement contains an arbitration clause.[4]

**Second**, as noted above, Plaintiff does not dispute that the language of the arbitration clause covers at least some of her claims.

**Third**, Plaintiff does not make any claim that the arbitration clause, as opposed to the entire Agreement, is in any way unenforceable.

**Fourth**, the arbitration clause explicitly provides not only that "any and all disputes, claims, controversies and actions hereunder" shall be arbitrated by JAMS, it also provides that the arbitration is to be conducted "in accordance with the rules of JAMS."

**Fifth**, JAMS's rules explicitly provide:

> The Parties shall be deemed to have made these Rules a part of their Arbitration agreement whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules.

\* \* \*

> Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which

---

[4] These facts distinguish this case from *Opals on Ice Lingerie v. Body Lines, Inc.*, 320 F.3d 362 (2d Cir. 2002). In *Opals*, the parties had signed two different versions of a contract, each of which contained a different arbitration clause providing for arbitration in different locales governed by different law. Here, in contrast, we have a single agreement signed by both parties.

6

>     Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(JAMS Rules 1(b) and 11(c)).

These facts are determinative in light of *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), where the Court held that an arbitration clause's incorporation of AAA rules granting the arbitrator authority to decide questions of jurisdiction required that the arbitrator decide whether the parties had in fact agreed to arbitrate their disputes:

>     The arbitration clause at issue here appears in paragraph 19 of the 1999 Agreement and provides:
>
> >     In the event of any controversy arising with respect to this Agreement, both parties shall use its best efforts to resolve the controversy. In the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA")....
>
>     Rule 7 of the AAA Commercial Arbitration Rules states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a).
>
>     **We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as *clear and unmistakable evidence* of the parties' intent to delegate such issues to an arbitrator.**

(Bold and italic emphasis supplied); *accord Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 126 (2d Cir. 2006).

Here, we have an identical situation with the JAMS Rules. Indeed, the JAMS Rules are even more explicit than the AAA Rules relied upon in *Contec*, because JAMS's Rules provide for the arbitrator to decide the "existence" of an arbitration agreement.

Judge Wood's decision in *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006), makes our point. There, the plaintiff alleged that he had been charged improper fees in connection with his use of Time Warner's Roadrunner internet service. Time Warner argued that the dispute must be arbitrated because there was an arbitration clause in a contract that the plaintiff had to accept by a mouse click when running the start-up software. In response, the plaintiff contended that he had never even seen nor assented to the contract containing the arbitration clause. *Id.* at *4. Judge Wood acknowledged that, as here, the plaintiff was "challenging the existence (but not the 'validity') of the contract containing the arbitration provision." *Id.* at *7. Nonetheless, relying upon *Contec*, the Court concluded that an arbitrator must decide whether the parties had ever formed a contract because, *inter alia*, the arbitration provision at issue incorporated AAA's rules. *Id.* at *4.

This case is functionally indistinguishable from *Bar-Ayal* because in both cases (a) the party seeking to resist arbitration alleged that he or she had never entered into the contract that contained the arbitration clause in question, and (b) that the arbitration clause incorporated rules of an arbitration forum which granted the arbitrator jurisdiction to decide whether the parties had entered into any agreement. Hence, in light of *Contec* and *Bar-Aval*, the issue of whether the

8

"attorney advice" insertion negates the existence of the Agreement must be resolved in arbitration.

### B. PLAINTIFF'S CLAIM THAT THE SEPTEMBER 2007 AGREEMENT IS UNCONSCIONABLE MUST ALSO BE RESOLVED BY THE ARBITRATOR

In arguing that the Agreement is unenforceable because it is unconscionable, Plaintiff ignores the governing law. Put simply, since she alleges that the Agreement, as a whole, as opposed to just the arbitration clause, is unconscionable, that claim must be resolved in arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403-04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1209 (2006); *Bar-Ayal* at *15.[5]

The case primarily relied upon by Plaintiff, *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y. 2002) (Scheindlin, D.J.), is not to the contrary, and Plaintiff's citation of it is misleading because Plaintiff regrettably does not cite an earlier decision in the same case.

---

[5] Although the Court need not reach the issue on this motion, Plaintiff's claim that the Agreement is unconscionable is likely sanctionable. "A contract or clause is unconscionable when there is an 'absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Desiderio v. National Association of Securities Dealers, Inc.*, 191 F.3d 198, 207 (2d Cir. 1999). As the Declaration of Mr. Espinoza makes clear, Plaintiff insisted upon multiple changes in the Agreement, there were multiple drafts created during the negotiation, and the Agreement was then signed only after Plaintiff went off on her own for a few hours and then came back to meet with Mr. Espinoza **at her request**. Indeed, **it was Plaintiff who requested the arbitration clause, calling for arbitration in New York pursuant to New York law, instead of a provision calling for litigation in the California courts pursuant California law.** Moreover, the terms of the Agreement are hardly unconscionable. This is made clear, *inter alia*, by the fact that the Agreement provides for $25,000 in liquidated damages for each breach by Plaintiff, but $250,000 in liquidated damages for each breach by Mr. De La Hoya. This disparity – plainly directed towards the disparate financial resources of the parties – demonstrates that the Agreement was not unreasonably favorable to Mr. De La Hoya.

In *Brennan v. Bally Total Fitness*, 153 F.Supp.2d. 408, 414 (S.D.N.Y. 2001), the Court held that it, rather than an arbitrator, would resolve an unconscionability claim only because the Court was not faced with "an arbitration clause within a contract, but an entire arbitration agreement" that contained no material terms broader than the obligation to arbitrate disputes arising out of the plaintiff's employment. Here, in contrast, there are numerous other material terms in the Agreement beyond the arbitration clause.

## CONCLUSION

For the foregoing reasons, Defendant Oscar De La Hoya requests that the Court enter an Order compelling Plaintiff to arbitrate all of her claims in this case.

Dated: New York, New York
       January 8, 2008

Respectfully submitted,

Bertram Fields, Esq.
Jeffrey Spitz, Esq.
GREENBERG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
Tel:   (310) 201-7484

JUDD BURSTEIN, P.C.

By_____
Judd Burstein (JB-9585)
1790 Broadway
New York, New York 10019
Tel:   (212) 974-2400

*Attorneys for Defendant Oscar De La Hoya*