UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MILANA DRAVNEL,

                       Plaintiff,

       -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                    Defendants.

-----------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO DISMISS
THE AMENDED COMPLAINT FOR FAILURE TO STATE A
<u>CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

STRAZZULLO LAW FIRM
Salvatore E. Strazzullo, Esq.
(SS 7419)
100 Park Avenue, Suite 1600
New York, New York  10017
Tel:  (212) 551-3224
Fax:  (212) 926-5001
*Attorneys for Plaintiff Milana Dravnel*

TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

POINT I

     ACCEPTED AS TRUE, PLAINTIFF'S ALLEGATIONS IN HER
     AMENDED COMPLAINT SUFFICIENTLY SET FORTH CAUSES
     OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS
     RELATIONS AND CONTRACT, DEFAMATION, PRODUCT LIBEL,
     DEFAMATION BY COMPELLED SELF-PUBLICATION AND
     INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. . . . . . . . . . . . . .3

POINT II

     DEFENDANT WRONGFULLY INTERFERED WITH
     PLAINTIFF'S BUSINESS RELATIONSHIPS BY MAKING
     MISREPRESENTATIONS TO THE PUBLIC, CAUSING
     PLAINTIFF TO LOSE NUMEROUS BUSINESS OPPORTUNITIES . . . . . . . . 4

     A.   PLAINTIFF HAS ALLEGED NUMEROUS BUSINESS
         RELATIONSHIPS WITH THIRD PARTIES WITH WHOM
         DEFENDANT WRONGFULLY INTERFERED. . . . . . . . . . . . . . . . . . . 4

     B.   DEFENDANT'S FRIVOLOUS THREATS OF A LAWSUIT AND
         ARREST, AND DEFAMATION, CONSTITUTE THE TORTIOUS
         WRONGFUL MEANS BY WHICH HE INTERFERED WITH
         PLAINTIFF'S BUSINESS RELATIONS. . . . . . . . . . . . . . . . . . . . . . . . . 6

     C.   *BUT FOR* DEFENDANT'S INTERFERENCE BY WRONGFUL
         MEANS, PLAINTIFF'S PROSPECTIVE BUSINESS RELATIONS
         WOULD HAVE COALESCED INTO ACTUAL CONTRACTS. . . . . . . . 9

POINT III

     BECAUSE DEFENDANT USED WRONGFUL MEANS TO INTERFERE
     WITH PLAINTIFF'S EXISTING CONTRACTS, PLAINTIFF HAS
     ALLEGED A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE
     WITH CONTRACTS EVEN IF THE CONTRACTS WERE TERMINABLE
     BY WILL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

POINT IV

       PLAINTIFF'S FOURTH CAUSE OF ACTION FOR
       DEFAMATION  SHOULD NOT BE DISMISSED. . . . . . . . . . . . . . . . . . . . . . .11

       A.    DEFENDANT'S STATEMENTS INJURED PLAINTIFF'S
             TRADE OR BUSINESS; THEREFORE, SPECIAL
             DAMAGES NEED NOT BE PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       B.    DEFENDANT'S STATEMENTS ACCUSE PLAINTIFF
             OF COMMITTING LARCENY BY FALSE   PRETENSES,
             WHICH IS LIBEL *PER SE*, AND SPECIAL DAMAGES NEED
             NOT BE PLED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

       C.    FURTHER, DEFENDANT'S DEFAMATORY
             STATEMENTS EXPOSE PLAINTIFF TO PUBLIC
             RIDICULE AND CONTEMPT, OBVIATING THE NEED
             TO PLEAD SPECIAL DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . .13

       D.    EVEN SO, PLAINTIFF HAS SUFFICIENTLY PLED
             SPECIAL DAMAGES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

POINT V

       PLAINTIFF'S STATEMENTS TO THE *DAILY NEWS* DO NOT
       EXEMPT DEFENDANT FROM HIS LIBELOUS ACTIONS. . . . . . . . . . . . . 15

POINT VI

       PLAINTIFF'S FIFTH CAUSE OF ACTION IS SUFFICIENT, AND
       SPECIAL DAMAGES NEED NOT BE PLED. . . . . . . . . . . . . . . . . . . . . . .18

POINT VII

       PLAINTIFF HAS SUFFICIENTLY PLED INTENTIONAL
       INFLICTION OF EMOTIONAL DISTRESS IN THE THIRD
       CAUSE OF ACTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

<u>TABLE OF AUTHORITIES</u>

*Baxter v. A.R. Baron & Co., Inc.,*
    No. 94 Civ. 3913,
    1996 WL 586338 (S.D.N.Y. Oct. 11, 1996) (Koetl, J.) . . . . . . . . . . . . . . . . . . . . . 3

*Ben-Oliel v. Press Pub. Co.,*
    251 N.Y. 250, 167 N.E. 432 (N.Y.1929) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cohen v. Koenig,*
    25 F.3d 1168 (2d Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Doe v. American Broadcasting Cos.,*
    152 A.D.2d 482, 543 N.Y.S.2d 455) (1st Dept. 1989) . . . . . . . . . . . . . . . . . . . . 19

*Drug Research Corp. v. Curtis Publishing Co.,*
    7 N.Y.2d 435, 199 N.Y.S.2d 33 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

*Elmore v. Shell Oil Co.,*
    733 F.Supp. 544 (E.D.N.Y. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Goldman v. Belden,*
    754 F.2d 1059 (2d Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Grant v. Wallingford Bd. of Educ.,*
    69 F.3d 669, (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,*
    50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . .6, 7, 10

*Hinsdale v. Orange County Publications,*
    17 N.Y.2d 284, 270 N.Y.S.2d 592 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

*Hubbell Inc. v. Pass & Seymour, Inc.,*
    883 F.Supp. 955 (S.D.N.Y.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Internet Law Library v. Southridge Capital Management,*
    223 F.Supp.2d 474 (S.D.N.Y. July 17, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . .3

*J. Crew Group v. Griffin,*
    No. 90 Civ. 2663,
    1990 WL 193918 (S.D.N.Y.  November 27, 1990) (Conboy, K.) . . . . . . . . . . . .16

*Lora v. Greifinger,*
    No. 96 Civ. 0628,
    1997 WL 102473 (S.D.N.Y. February 27, 1997) (Koetl, J.G.) . . . . . . . . . . . . . .3

iii

*Matherson v. Marchello,*
   100 A.D.2d 233,  473 N.Y.S.2d 998 (2d Dept. 1984) . . . . . . . . . . . . . . .. . . .12, 13

*Mencher v. Chesley,*
   297 N.Y. 94, 75 N.E.2d 257 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mobile Data Shred, Inc. v. United Bank of Switzerland,*
   No. 99 Civ. 10315,
   2000 WL 351516 (S.D.N.Y. Apr. 5, 2000) (Scheindlin, S.) . . . . . . . . . . . . . . . 5

*Nader v. General Motors Corp.,*
   25 N.Y.2d 560, 307 N.Y.S.2d 647 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Omni Food Sales v. Boan,*
   No. 06 Civ. 119
   2007 WL 2435163 (S.D.N.Y.  August 24, 2007) (Crotty, P.) . . . . . . . . . . . . .. . 9

*People v. Arnold,*
   15 A.D.3d 783, 790 N.Y.S.2d 291 (3d Dept. 2005) . . . . . . . . . . . . . . . . . . . . . .13

*Reporters' Assn. of America v. Sun Printing & Publishing Assn.,*
   186 N.Y. 437 (1906) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Riley v. Dun & Bradstreet,*
   172 F.2d 303 (6th Cir. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Ruder & Finn Inc. v. Seaboard Sur. Co.,*
   52 N.Y.2d 663, 439 N.Y.S.2d 858 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Schneidman Heating v. New York Plumbers' Specialties Co.,*
   238 A.D. 318, 264 N.Y.S.146 (1st Dept. 1933) . . . . . . . . . . . . . . . . . . . . . . . . 14

*Squire Records, Inc. v. Vanguard Recording Soc., Inc.,*
   25 A.D.2d 190, 268 N.Y.S.2d 251 (1st Dept. 1966) . . . . . . . . . . . . . . . . . . . . .14

*Tischmann v. ITT/Sheraton Corp.,*
   882 F.Supp. 1358 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Universal City Studios v. Nintendo Co., Ltd.,*
   797 F.2d 70 (2d Cir.1986) *cert. denied,* 479 U.S. 987, 107 S.Ct. 578 (1986). . . 7

*Van Lengen v. Parr,*
   136 A.D.2d 964, 525 N.Y.S.2d 100 (4th Dept. 1988) . . . . . . . . . . . . . . . . . . . . 12

*Van-Go Transp. Co. v. N.Y. City Bd. of Educ,*
    971 F.Supp. 90 (E.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 17

*Vasarhelyi v. New School for Social Research,*
    230 A.D.2d 658, 646 N.Y.S.2d 795 (1st Dept. 1996) . . . . . . . . . . . . . . . . . . . . . 19

*Weldy v. Piedmont Airlines,*
    No. Civ-88-628E
    1989 WL 158342 (Dec. 22, 1989 W.D.N.Y.) (Elfvin, E.),
    *rev'd on other grounds,* 985 F.2d 57 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 16

*Wieder v. Chem. Bank,*
    202 A.D.2d 168, 608 N.Y.S.2d 195 (1st Dept. 1994) . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 9(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 1, 3

Fed. R. Civ. P. § 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Penal Law § 155.05[1] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Prosser, Torts at p. 915 [4th ed.] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...18

Prosser & Keeton, Torts § 12, at 61 [5th ed.] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

v

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
MILANA DRAVNEL,

                       Plaintiff,

        -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                    Defendants.

-----------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT OSCAR DE LA HOYA'S MOTION TO DISMISS
THE AMENDED COMPLAINT FOR FAILURE TO STATE A
<u>CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

       Plaintiff Milana Dravnel submits this Memorandum of Law in opposition to

Defendant Oscar De La Hoya's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and

9(g).

       Simply put, Plaintiff has more than adequately pled causes of action as set forth in her

amended complaint filed January 2, 2008, for tortious interference with business relations

and contract, defamation, product libel, defamation by compelled self-publication and

intentional infliction of emotional distress.

## STATEMENT OF FACTS

The facts of this matter are fully set forth in Plaintiff's Amended Complaint (hereinafter referred to as "Am. Com.").

Briefly, Plaintiff is a 22-year old dancer and model who met Defendant Oscar De La Hoya, a world renowned boxing champion, in New York City. (Am. Com. ¶¶ 5, 6, & 10.) Plaintiff and Defendant commenced a relationship. (Am. Com. ¶ 12.) At various times while Defendant and Plaintiff were together, photographs were taken of Plaintiff and Defendant. (Am. Com. ¶ 15.)

In September 2007, through her agent X17 and publicist R. Couri Hay, Plaintiff sold to various media photographs of Defendant. (Am. Com. ¶¶ 25 - 27.) In response, Defendant began a campaign of harassment against Plaintiff in an attempt to locate her and dissuade her from releasing the photographs, and thereafter issued nationwide press releases and media statements that the photographs were fake. (Am. Com. ¶¶ 17 – 24, 30, 31, 62 (a) – (j)).

Defendant's tactics frightened and intimidated Plaintiff. He, through his agents, was then able to persuade her to state, falsely, to the *New York Daily News* on September 23, 2007, that she could not verify the authenticity of the photographs. (Am. Com. ¶¶ 32, 38 – 40.)

Thereafter, Plaintiff filed suit against Defendant in state court for, *inter alia*, defamation. Defendant removed the action to federal court and filed a motion to dismiss the complaint and to compel arbitration. Plaintiff filed opposition papers to Defendant's motion to compel arbitration and filed an amended complaint on January 2, 2008. Defendant moved

to dismiss Plaintiff's amended complaint, and Plaintiff now files this memorandum in opposition to Defendant's motion to dismiss her amended complaint.

For the reasons set forth below, Plaintiff has more than adequately pled causes of action for tortious interference with business relations and contract, defamation, product libel, defamation by compelled self-publication, and intentional infliction of emotional distress and Defendant's motion to dismiss the amended complaint must fail.

### POINT I

**ACCEPTED AS TRUE, PLAINTIFF'S ALLEGATIONS IN HER AMENDED COMPLAINT SUFFICIENTLY SET FORTH CAUSES OF ACTION FOR TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS AND CONTRACTS, DEFAMATION, PRODUCT LIBEL, DEFAMATION BY COMPELLED SELF-PUBLICATION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the allegations in the complaint are accepted as true. *Cohen v. Koenig,* 25 F.3d 1168, 1171-72 (2d Cir.1994), *Grant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995). All reasonable inferences must be made in the Plaintiff's favor. *See Baxter v. A.R. Baron & Co., Inc.,* No. 94 Civ. 3913, 1996 WL 586338, at *2 (S.D.N.Y. Oct.11, 1996) (Koetl, J.) (*abrogated* on other grounds recognized by *Internet Law Library v. Southridge Capital Management*, 223 F.Supp.2d 474 (S.D.N.Y. July 17, 2002)). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985); *see also Lora v. Greifinger,* No. 96 Civ. 0628, 1997 WL 102473, at *3 (S.D.N.Y. February 27, 1997) (Koetl, J.)

3

As argued below, Plaintiff has pled sufficient causes of action for tortious interference with business relations and contract, defamation, product libel, defamation by compelled self-publication, and intentional infliction of emotional distress, and Defendant's motion to dismiss should be denied.

## POINT II

### DEFENDANT WRONGFULLY INTERFERED WITH PLAINTIFF'S BUSINESS RELATIONSHIPS BY MAKING MISREPRESENTATIONS TO THE PUBLIC, CAUSING PLAINTIFF TO LOSE NUMEROUS BUSINESS OPPORTUNITIES

Defendant claims, wrongly, that Plaintiff's allegations of tortious interference with business relations must fail because Plaintiff (1) did not identify specific business relationships; (2) did not allege that "but for Defendant's conduct" her prospective business relations would have "coalesced"; and (3) did not allege that Defendant engaged in "wrongful means." As demonstrated below, Defendant is incorrect on all three counts.

**A.** **Plaintiff has alleged numerous business relationships with third parties with whom Defendant wrongfully interfered.**

In her amended complaint, Plaintiff identified specific business relationships with which Defendant's defamation interfered as follows:

- "X17, an on-line celebrity news site, agreed and did purchase the photographs of Defendant De La Hoya from Plaintiff. Further, Plaintiff entered into an agreement with X17 regarding the selling of additional interviews to other media outlets, and a publicity schedule was created." (Am. Com. ¶ 25.)

- "Plaintiff also entered into an agreement with R. Couri Hay Creative Public Relations, a world famous public relations firm that represents sports figures, models and other famous people of interest." (Am. Com. ¶ 26.)

- "As part of the agreements with X17 and R. Couri Hay Creative Public Relations, Plaintiff appeared and was interviewed on Entertainment Tonight, a celebrity news

4

television channel, regarding the photographs, and portions of the interview were broadcast at various intervals that September week." (Am. Com. ¶ 27.)

- "After Plaintiff's interview was aired on television, she and/or her representatives began receiving calls from other large entertainment media groups, which made expressed specific interest in interviewing Plaintiff regarding the photographs. For example, Playboy Magazine, Maximum Magazine, OK Magazine, and the Inquirer expressed interest in interviewing Plaintiff and purchasing the photographs." (Am. Com. ¶ 28.)

- "R. Couri Hay Creative Public Relations was also working on book, movie and other sponsorship deals regarding the photographs on behalf of Plaintiff." (Am. Com. ¶ 9.)

As Defendant stated in his memorandum, "proof of an **existing contract is not necessary**." To meet the requirements of validly drafting this cause of action, Plaintiff must only demonstrate interference with a specifically identified business relationship with a third party to support a claim of tortious interference with business relations. *See Mobile Data Shred, Inc. v. United Bank of Switzerland,* No. 99 Civ. 10315, 2000 WL 351516, at *7 (S.D.N.Y. Apr. 5, 2000) (Scheindlin, S.) (Emphasis added).

Plaintiff has done just what the caselaw requires. As alleged in paragraph 28 of Plaintiff's Amended Complaint, media outlets including Playboy, Maximum, OK and the Inquirer had all communicated with R. Couri Hay Creative Public Relations and/or X17 about doing an interview with Plaintiff and purchasing the photographs. Indeed, Plaintiff went beyond merely alleging impairment of her ability to attract new business – a concern of the court's in *Mobile Data Shred, Inc.. Id.* at *7 (Scheindlin, S.). Plaintiff identified specific businesses with which she and her agents were communicating regarding a business transaction, with which Defendant wrongfully interfered by claiming the photographs were not authentic and essentially calling Plaintiff a liar. Defendant then further wrongfully

5

interfered with Plaintiff's business relations by coercing her to state to the media that she could not verify the authenticity of the photographs. All of those acts by Defendant and his agents, wrongfully interfered with Plaintiff's business relations which she identified in her amended complaint.

**B.**    <u>**Defendant's frivolous threats of a lawsuit and arrest, and defamation, constitute the tortious wrongful means by which he interfered with Plaintiff's business relations.**</u>

When a Defendant utilizes "wrongful means" to interfere with a Plaintiff's business relations, he is liable for tortious interference with business relations. "Wrongful means" include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degree of economic pressure. *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp,*. 50 N.Y.2d 183, 191, 428 N.Y.S.2d 628, 632 - 633 (1980).

As set forth in her amended complaint, the Defendant here used "wrongful means" to interfere with her business relations when (1) he threatened to have Plaintiff arrested (Am. Com. ¶ 22*)*; (2) he threatened to sue Plaintiff and others who published the photographs (Am. Com. ¶ 31, 62(d));  (3) he placed undue influence on Plaintiff to state that she could not authenticate the photographs (Am. Com. ¶¶ 17 – 24, 30 – 33, 36 – 40); and (4) he defamed and libeled Plaintiff and the photographs by stating the photographs were fake and had been manufactured (Am. Com. ¶  62).

While Defendant claims that he "had a right to seek relief in the Courts," he did not have the right to threaten to commence a **frivolous** lawsuit, aimed to harass, intimidate, and

interfere with Plaintiff's business relations.[1]  (*See Hubbell Inc. v. Pass & Seymour, Inc.,* 883 F.Supp. 955, 963 (S.D.N.Y.1995) (citing *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980)); *Universal City Studios v. Nintendo Co., Ltd.,* 797 F.2d 70, 75 (2d Cir.1986) (citing Restatement (Second) of Torts) *cert. denied,* 479 U.S. 987, 107 S.Ct. 578 (1986).

Defendant's threats to institute a lawsuit were frivolous as Defendant knew the photographs were authentic, and that he had no grounds to sue.  His purpose in making such threats was to interfere with Plaintiff's business relationships by scaring Plaintiff and others into not publishing the photographs, and by coercing Plaintiff to state that she could not verify the authenticity of the photographs.  By employing such wrongful means, Defendant interfered with Plaintiff's business relations.

Defendant and his agents engaged in misrepresentations and deceit – wrongful behavior – by asserting through the media that Plaintiff released fake photographs of Mr. De La Hoya dressed in women's clothing.  These injurious falsehoods spread by Defendant and his agents were wrongful and tortious, and satisfy the "wrongful interference" element of Plaintiff's tortious interference with business relations cause of action against Defendant. Defendant and his agents issued the following defamatory and false statements about Plaintiff and the photographs, painting Plaintiff as a deceitful liar.  See Am. Com. ¶ 62.

- (a) On or about September 19, 2007, Defendant De La Hoya's agent Jack Tiernan issued a statement to the press that "They're [the photographs] completely manufactured.  The pictures have been manipulated or manufactured, and the matter has been referred to his [De La Hoya's] attorney."  Tiernan further stated to the press that he had spoken with De La Hoya about the photographs and that

---

[1]    At this point, Plaintiff only must allege that Defendant's threatened lawsuit was meant to harass and would have been frivolous, which she has done.  At trial, Plaintiff will then prove that Defendant knew the photographs were authentic; therefore, he had no grounds to sue.

De La Hoya had "said as much." These statements were published by Radar online and other internet and press media.

- (b) On or about September 19, 2007, Defendant De La Hoya's representative, Debbie Caplan, stated to the press that the photographs were "photoshopped" and that "They're not real." This statement was published by the New York Daily News.

- (c) On or about September 19, 2007, Defendant De La Hoya's attorney, Bertram Fields, issued a statement to the press that "The photographs depicting Mr. De La Hoya's image that were posted online today by an obscure paparazzi website are fake. Many of the website's viewers identified the photos as a 'really bad photoshop job.' Unfortunately, with today's technology, anyone can make any photo seem like something other than it is." This statement was published by repeatedly by the media, including but not limited to www.towleroad.com, radaronline.com, OG Paper, tmz.com, and popcrunch.com.

- (d) On or about September 19, 2007, Defendant De La Hoya's attorney, Bertram Fields, released a statement to the media that "He [Oscar] assures me the photographs are phony. He has asked me to pursue his legal remedies." This statement was widely sent to the media by Defendant, and specifically published by the New York Daily News, the National Ledger, and Access Hollywood.

- (e) On or about September 19, 2007, Defendant De La Hoya's representatives stated to "Extra's" Mario Lopez, that the photographs were fake. This statement was repeated by the reporter on the internet and on the television.

- (f) On or about September 22, 2007, Defendants and/or their agents stated to the media that Plaintiff wanted to "publicly announce that the images that had been previously posted to the internet had been taken from [DRAVNEL'S] camera by a third party without her consent and had been altered. . .;" and compelled Plaintiff to make a false statement to a New York Daily News reporter, that "I cannot personally verify the authenticity of the images of Oscar De La Hoya that have been shown on television. These images were taken from my personal camera and were out of my control."

- (g) On or about September 25, 2007, Defendant De La Hoya stated to the press that "These pictures are obvious fabrications." This statement  was published by the New York Post.

- (h) On or about September 27, 2007, Defendant De La Hoya stated to reporter Mark Steines from "Entertainment Tonight" that "these [photographs] are fake, these are Photoshopped." This information was republished on various internet publications.

8

- (i) On or about September 28, 2007, Defendant De La Hoya appeared on Entertainment Tonight and The Insider, national television shows, and stated the photographs were fake and photoshopped.

- (j) On or about September 26, 2007, Defendant De La Hoya, through his attorney, Bertram Fields, released a statement to the press stating, "The woman who purportedly took the photographs has stated publicly she cannot confirm that the images have been posted, published and broadcast are genuine. A well known and independent photograph forensic expert has stated his opinion that the photographs are fake, which is what Oscar De La Hoya has been saying all along." This statement was published by various news outlets, including the National Ledger.

C.    ***But for* Defendant's interference by wrongful means, Plaintiff's prospective business relations would have coalesced into actual contracts.**

Defendant's claim that Plaintiff failed to plead the "but for" element of her tortious interference claim is specious. The case of *Omni Food Sales v. Boan,* No. 06 Civ. 3913, 2007 WL 2435163 (S.D.N.Y. August 24, 2007) (Crotty, P.) is worthy of note. There the court found that Defendant's argument was specious in light of the fact that Plaintiff had properly pled the "but for" element of her cause of action by stating "as a result of [Defendant's] conspiracy, [the third party] rejected [Plaintiff] as its actual and potential broker." *Id.*

This case is no different. Plaintiff specifically pled in paragraph 46 of her Amended Complaint as follows:

Were it not for Defendant's improper interference, Plaintiff would have had economic opportunites from which she would have profited.

At this point, Plaintiff has stated all of the elements of a cause of action for tortious interference with business relations. Certainly, no court requires Plaintiff to state a cause of action <u>and</u> also prove it in order to sustain a motion to dismiss. Moreover, Plaintiff is confident that at trial she will prove that Defendant defamed and libeled her by calling the

9

photographs fake and accusing her of releasing photoshopped and manufactured photographs; that he wrongfully threatened to sue her and others, coercing her into stating that she could not authenticate the photographs; and that *but for* Defendant's wrongful interference, Plaintiff would have entered into business contracts with Playboy, Maximum, OK and the Inquirer, and many other magazines.

### POINT III

### BECAUSE DEFENDANT USED WRONGFUL MEANS TO INTERFERE WITH PLAINTIFF'S EXISTING CONTRACTS, PLAINTIFF HAS ALLEGED A CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACTS EVEN IF THE CONTRACTS WERE TERMINABLE BY WILL

Whether the contracts interfered with were terminable at will or not, plaintiff still has a cause of action for tortious interference with contract. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 194, 428 N.Y.S.2d 628, 634 (1980) (stating that where contracts terminable at will have been involved, courts have upheld complaints and recoveries in actions seeking damages for interference when the alleged means employed by the one interfering were wrongful – including making fraudulent representations or threats. If such misconduct exists, a cause of action will lie where one's actions have induced nonperformance of a contract deemed to be voidable.) (Citations omitted)).

Plaintiff has sufficiently set forth a set of facts, which if accepted as true, comprises a cause of action for tortious interference with contract as follows:  (1) the existence of valid contracts with X17 and R. Couri Hay (Am. Com. ¶¶ 25, 26 & 49); (2) that defendant was aware of the contracts (Am. Com. ¶¶ 31 & 42); (3) defendant intentionally and wrongfully interfered with the contracts by making fraudulent representations about the photographs, threatening lawsuits and publicly defaming plaintiff and the photographs (Am. Com. ¶¶ 58 – 62); and (4) caused damages to plaintiff (Am. Com. ¶¶ 51, 63, 67, & 71.)

10

Defendant's argument that there is no evidence that defendant did or said anything to interfere with plaintiff's contracts with X17, a celebrity news site, and R. Couri Hay Creative Public Relations, a world famous public relations firm (Am. Com. ¶¶ 25 &26), defies logic. X17 and R. Couri Hay are in the business of media and public relations. Of course, they were aware of defendant's widespread statements to the press that the photographs were fake (Am. Com. ¶ 62 (a) – (j)) and his threats of legal action (Am. Com. ¶ 62(d)).

Lastly, defendant's parsing of the word "rescinded" should not bar plaintiff from pursing her cause of action for tortious interference. Defendant claims, that by only alleging that X17 rescinded the contract, Plaintiff has not pled that X17 breached the agreement. There is no evidence that X17's rescinding of the contract was not a breach of the contract. Rather, that is simply an assumption made by Defendant.

### POINT IV

### PLAINTIFF'S FOURTH CAUSE OF ACTION FOR DEFAMATION SHOULD NOT BE DISMISSED[2]

Defendant wrongfully alleges that Plaintiff did not sufficiently plead a defamation claim because (1) Defendant's defamation was not "slander *per se*" and Plaintiff did not allege special damages; (2) Plaintiff's statement that she could not authenticate the photos vitiated any liability that Defendant has for his defamatory publications; and (3) Defendant's statements made after Plaintiff was coerced into stating that she could not authenticate the photographs were not against Plaintiff.

---

[2]    In his memo of law, Defendant inadvertently labeled Plaintiff's defamation claim as her "third claim." Plaintiff's defamation claim is contained in her Fourth Cause of Action in the Amended Complaint.

11

Defendant's defamation is libel[3] *per se*, and special damages need not be pled or proved. *Van Lengen v.* Parr, 136 A.D.2d 964, 525 N.Y.S.2d 100 (4th Dept. 1988). Defendant committed libel *per se* by (1) accusing Plaintiff of committing a crime; (2) exposing Plaintiff to hatred and contempt and induced an evil or unsavory opinion of her in the minds of a substantial number of persons in her community (*Mencher v. Chesley,* 297 N.Y. 94, 100, 75 N.E.2d 257, 259 (1947); and (3) disparaging Plaintiff in her trade (*Ben-Oliel v. Press Pub. Co.* 251 N.Y. 250, 167 N.E. 432 (N.Y.1929)).

A. <u>**Defendant's statements injured Plaintiff's trade or business; therefore, special damages need not be pled.**</u>

Defendant and his agents issued public statements that the photographs Plaintiff released were "fake", "manufactured", and "photoshopped," and injured Plaintiff <u>in her trade or business</u> – that is, the selling of the photographs.[4] Therefore, Defendant committed libel *per se* against Plaintiff when he impugned Plaintiff's business – the selling of the photographs – and she need not plead special damages.

---

[3]    Defamation broadcast by means of radio or television is classified as libel. *See Matherson v. Marchello,* 100 A.D.2d 233, 240, 473 N.Y.S.2d 998, 1004 (2d Dept. 1984). Given the vast and far-flung audiences reached by the broadcasting media today, it is self-evident that the potential harm to a defamed person is far greater when published via broadcast media, including the internet, rather than by simple spoken slander. As such, Defendant's press releases and nationwide media campaign defaming Plaintiff is libel.

[4]    As conceded by Defendant in his Memorandum of Law in Support of Motion to Compel Arbitration, dated November 26, 2007, at 4–5, Plaintiff's selling the photographs and engaging in media interviews involved "commerce." Plaintiff's reference to this point should not be construed in any way to mean that the September 23, 2007 document is a formed contract or that the arbitration clause included in the September 23, 2007 document is enforceable. It is only meant to demonstrate to the Court that Defendant agrees that Plaintiff's selling of the photographs and engaging in media interviews constitutes a "trade" or "business" with which Defendant tortiously interfered.

**B.**    **Defendant's statements accuse Plaintiff of committing larceny by false pretenses, which is libel *per se*, and special damages need not be pled.**

Additionally, Defendant further committed libel *per se* against Plaintiff by accusing Plaintiff of the crime of larceny by false pretenses.[5]  Defendant's claims that the photographs Plaintiff sold were fake, manufactured and photoshopped accused Plaintiff of intentionally presenting false information in exchange for the money of others.[6]  Therefore, Defendant's statements accusing Plaintiff of a crime are libel *per se*, and special damages need not be pled.

**C.**    **Further, Defendant's defamatory statements expose Plaintiff to public ridicule and contempt, obviating the need to plead special damages.**

Plaintiff suing in libel need not plead or prove special damages if the defamatory statement "tends to expose the Plaintiff to public contempt, ridicule, aversion or disgrace or induce an evil opinion of him [her] in the minds of right-thinking persons, and to deprive him [her] of their friendly intercourse in society (citations omitted)." *Matherson v. Marchello*, 100 A.D.2d 233, 236 – 237, 473 N.Y.S.2d 998, 1001 – 1002 (2d Dept. 1984).

Defendant, a world-famous boxer beloved by the community, portrayed Plaintiff as a "stripper" in the media, accused her of releasing "fake", "manufactured" and "photoshopped" photographs of Defendant.  These defamatory and untrue statements exposed Plaintiff to

---

[5]    A Defendant commits larceny by false pretenses when he or she "obtain[s] possession of money of another by means of an intentional false material statement about a past or presently existing fact upon which the victim relied in parting with the money" *People v. Arnold*, 15 A.D.3d 783, 786, 790 N.Y.S.2d 291, 294 (3d Dept. 2005) (citations omitted); Penal Law § 155.05[1].

[6]    That Defendant did not specifically accuse Plaintiff of "larceny by false pretenses" in his public statements, is of no merit.  In light of all the circumstances as pled in the complaint, it is clear that Plaintiff accused Plaintiff of committing a crime.  *See Hinsdale v. Orange County Publications,* 17 N.Y.2d 284, 270 N.Y.S.2d 592 (1966) (a publication may be libelous *per se* even where the writing is defamatory only in the light of extrinsic facts alleged in the complaint which are not part of the published matter.)

13

public ridicule and contempt from the general public.  This public contempt is borne out by the remarks to the press by Defendant's attorney, Bertram Fields, when he reported "[m]any of the website's viewers identified the photos as a 'really bad photoshop job.'" (Am. Com. §62(c)).

Defendant's defamatory statements exposed Plaintiff to public ridicule and contempt, which will be borne out at trial.  General damages are presumed, and Plaintiff need not plead special damages.

**D.    Even so, Plaintiff has sufficiently pled special damages.**

Despite that Plaintiff was not required to plead special damages, she has done so. Plaintiff specifically named the customers to whom she and her agents would have sold the photographs but for Defendant's defamation and wrongful interference, which is all that is required under case law.[7]  *See Drug Research Corp. v. Curtis Publishing Co.,* 7 N.Y.2d 435, 441, 199 N.Y.S.2d 33, 37 (1960), *referring to Reporters' Assn. of America v. Sun Printing & Publishing Assn.,* 186 N.Y. 437, 422 (1906) (If special damage was a loss of customers, the persons who ceased to be customers, or who refused to purchase, must be named.)

Plaintiff need not show more at this pleading stage to meet the requirements of alleging special damages.  *See Squire Records, Inc. v. Vanguard Recording Soc., Inc.,* 25 A.D.2d 190, 192, 268 N.Y.S.2d 251, 255 (1st Dept. 1966) (Plaintiff sufficiently alleged special damages by naming customers who no longer purchased his product); *Schneidman Heating v. New York Plumbers' Specialties Co.,* 238 A.D. 318, 319, 264 N.Y.S.146, 148 (1st

---

[7]    In her amended complaint, Plaintiff specifically named the customers (Playboy, Maximum, OK, and the Inquirer) who then did not purchase Plaintiff's photographs or interview her due to Defendant's wrongful acts of defamation and coercion (including the Defendant's coercive acts that resulted in Plaintiff stating to the *Daily News* on September 23, 2007 that she could not verify the authenticity of the photographs).

14

Dept. 1933) (special damages were sufficiently pled by naming the customers who were about to contract with it for work when a false letter was sent out by Defendant to the customers, which prevented Plaintiff from securing the contracts that otherwise would have been awarded to it.)

It is not necessary at this juncture to identify specific dollar figures, as long as the specific *customers* are named that will allow Defendant to identify the losses he is accused of causing. *See Riley v. Dun & Bradstreet*, 172 F.2d 303, 306 (6th Cir. 1949) (holding Plaintiffs properly pled special damages where Plaintiffs stated that they were unable to state with complete particularity all the contracts lost by reason of the dissemination of the false and libelous matter but listed the various contracts lost).

However, should the Court determine that Plaintiff needs to state specific dollar figures in connection with the customers named, she requests leave to amend the complaint to include such figures, as permitted by Fed. R. Civ. P. § 15(a).

## POINT V

### PLAINTIFF'S STATEMENTS TO THE *DAILY NEWS* DO NOT EXEMPT DEFENDANT FROM HIS LIBELOUS ACTIONS

Defendant remains liable for the consequences of his defamatory statements before and after he wrongfully caused Plaintiff to state to the *Daily News* that she could not personally verify the authenticity of the photographs.

Plaintiff concedes that New York law is unclear on the status of "compelled self-publication." *Compare Van-Go Transp. Co. v. N.Y. City Bd. of Educ,* 971 F.Supp. 90 (E.D.N.Y. 1997) (concluding largely on the basis of federal district courts' interpretation of New York law, that New York would recognize self-compelled publication), with

15

*Tischmann v. ITT/Sheraton Corp.,* 882 F.Supp. 1358 (S.D.N.Y. 1995) (N.Y. law) (citing *Wieder v. Chem. Bank,* 202 A.D.2d 168, 608 N.Y.S.2d 195, 196 (1st Dept. 1994.) The Eastern and Western Districts have recognized the doctrine of self-compelled publication. *See Elmore v. Shell Oil Co.,* 733 F.Supp. 544, 546 (E.D.N.Y. 1988); *Weldy v. Piedmont Airlines,* No. Civ. 88628, 1989 WL 158342 (December 22, 1989) (Elfvin, E.), *rev'd on other grounds,* 985 F.2d 57 (2d Cir. 1993). The Southern District has considered the question, but has not arrived at a consensus. *Van-Go* at 103 – 104.

Most of the cases dealing with the issue of "self-publication" are employment cases wherein the employee claims that he or she was compelled to repeat the employer's defamatory statement to future employers. (*Van-Go* and *Wieder* deal with self-compelled publication in terms of an employment case. The *Tischmann* case is silent as to whether the self-compelled publication claim related to an employment matter, but it is very likely as the case arose out of an employment sexual harassment matter.) The defamatory statements made by the employer are typically only made to the employee. None of the cases reviewed by Plaintiff or the courts regarding this issue have dealt with a situation wherein a Plaintiff published the defamatory statement as a result of the Defendant's tortious, wrongful conduct.

In reviewing the relevant New York federal and state cases, the courts look to the foreseeability or likelihood that the Plaintiff would be required to repeat the Defendant's defamatory statement. The more likely it is that the Defendant could foresee that Plaintiff would be compelled to repeat the statement, the more likely it is that the courts find in favor of the principle of self-compelled publication. *J. Crew Group v. Griffin,* No. 90 Civ. 2663, 1990 WL 193918, * 3 - 5 (S.D.N.Y. November 27, 1990) (Conboy, K.), *Van-Go Transport Co., Inc. v. New York City Bd. of Educ.,* 971 F.Supp. 90, 104 (E.D.N.Y. 1997). In any event,

16

this is a factual issue, that must be resolved at trial.

Certainly, if the publication by Plaintiff is not voluntary or consensual, but is made as the result of duress, undue influence or other wrongful means, Defendant should not be permitted to escape liability for the harm he caused.

Central to the question is (1) did the Plaintiff voluntarily publish the defamatory statement; and (2) how foreseeable was it that the Plaintiff would have to republish the statement.

As stated by Judge Conboy in *Van-Go:*

> In reviewing these [compelled self-publication] cases, two trends seem apparent. When actually required to decide, most federal district courts hold that New York would adopt the doctrine of self-publication. Further, they largely agree that the *Weldy* formulation is the proper one, and that properly understood it requires a Plaintiff to show both foreseeability and compulsion. (Citations omitted.)

*Van-Go Transport Co., Inc.* at 104.

Since it was Defendant's own coercion that resulted in Plaintiff's statement that she could not verify the authenticity of the photographs, it was not only likely that Plaintiff would make such a statement, but it was foreseeable. Defendant knew that his coercion would result in compelling Plaintiff to publish a defamatory statement against herself. Plaintiff's statement to the *Daily News* was not voluntary and was completely foreseeable as Defendant caused it. Therefore, Plaintiff's statement to the *Daily News* cannot absolve Defendant of his liability for the harm caused by his defamatory statements.

For the same reasons, Defendant's defamatory statements after September 23, 2007 are no less defamatory than the ones he made prior to September 23, 2007.

17

## POINT VI

### PLAINTIFF'S FIFTH CAUSE OF ACTION IS SUFFICIENT, AND SPECIAL DAMAGES NEED NOT BE PLED

Plaintiff has sufficiently pled trade libel *per se*, which does not require the articulation of special damages. *See Ruder & Finn Inc. v. Seaboard Sur. Co.*, 52 N.Y.2d 663, 670 – 671, 439 N.Y.S.2d 858 (1981). Where a statement impugns the basic integrity or credit-worthiness of a business,[8] an action for defamation lies and injury is conclusively presumed.

Defendant and his agents defamed and libeled the integrity and credit-worthiness of the photographs that comprised Plaintiff's business by stating the photographs Plaintiff sold were "fake", "manufactured" and "photoshopped." These aspersions affected the legitimacy and quality of the photographs, to the disparagement of the quality of Plaintiff's business or product. *See* Prosser, Torts [4th ed], p 915 *et seq.* Therefore, a claim of product libel *per se* lies, and special damages need not be pled.

Further, as argued in POINT IV, *supra*, even if Plaintiff is required to plead special damages, she has adequately done so.

## POINT VII

### PLAINTIFF HAS SUFFICIENTLY PLED INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS IN THE THIRD CAUSE OF ACTION

Contrary to Defendant's contention, Plaintiff has sufficiently pled that Defendant's actions and those of his agents were extreme in degree, causing Plaintiff mental and emotional distress. "Where severe mental pain or anguish is inflicted through a *deliberate and malicious campaign of harassment or intimidation*, a remedy is available in the form of

---

[8]     As demonstrated in Footnote 4, Defendant has conceded that Plaintiff's selling the photographs and engaging in media interviews constitutes "commerce."

18

an action for the intentional infliction of emotional distress." (Emphasis added.) *See Nader v. General Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647 (1970); *Doe v. American Broadcasting Cos.,* 152 A.D.2d 482, 483, 543 N.Y.S.2d 455) (1st Dept. 1989).

Plaintiff has sufficiently pled that Defendant and his agents engaged in a campaign to locate, harass, intimidate and coerce Plaintiff (*see* Am. Com. §§ 18, 53) with repeated cell phone calls that frightened her (Am. Com. § 19); calls to her former place of employment trying to locate Plaintiff (Am. Com. § 19); feigned calls from the F.B.I. attempting to locate Plaintiff, and threatening that Plaintiff was involved in a crime he was investigating, and threatening the arrest of Plaintiff (Am. Com. § 22); threats to interfere with Plaintiff's citizenship application (Am. Com. § 30); and threats of legal action by Defendant, a world-famous and powerful person (Am. Com. § 31).

The extreme and outrageous nature of Defendant's conduct arises not only from what he and his agents did in harassing, tracking and intimidating Plaintiff, but also from the relative ability of Defendant to damage Plaintiff. The more power Defendant has in relation to Plaintiff, the more power he has to cause harm to Plaintiff and her interests, increasing the emotional distress caused by his actions. *See Vasarhelyi v. New School for Social Research,* 230 A.D.2d 658, 661, 646 N.Y.S.2d 795, 797 (1st Dept. 1996) *referring to* Prosser & Keeton, Torts § 12, at 61 [5[th] ed.] (the extreme and outrageous nature of the conduct may arise not so much from the results of Defendant's abuse as from *the relation or position* which gives the Defendant actual or apparent power to damage the Plaintiff's interests.)

As pled by Plaintiff, there is a stark contrast between Defendant's position as a world famous boxer and champion, and a successful business man with national interests (Am. Com. § 6), and her own as a 22-year old dancer and model with a high school education

19

(Am. Com. § 5). His campaign of harassment was thus even more severe due to the extreme power imbalance between the parties.

Plaintiff has more than adequately pled facts, which if proven, comprise the tort of intentional inflection of emotional distress.

## CONCLUSION

Accepting all of Plaintiff's assertions as true, Plaintiff has sufficiently pled causes of action for tortious interference with business relations, defamation, product libel, defamation by compelled self-publication and intentional infliction of emotional distress, and Defendant's motion to dismiss the amended complaint must be denied.

Dated:        New York, New York
              January 23, 2007

                                        Yours, etc.

                                        STRAZZULLO LAW FIRM

                                        By:
                                        Salvatore E. Strazzullo, Esq.
                                        (SS 7419)
                                        100 Park Avenue, Suite 1600
                                        New York, New York  10017
                                        Tel: (212) 551-3224
                                        Fax: (212) 926-5001
                                        *Attorneys for Plaintiff Milana Dravnel*

TO:    Judd Burstein, Esq.
       Judd Burstein, P.C.
       1790 Broadway, Suite 1501
       New York, New York  10019
       Tel:    (212) 974-2400
       Fax:    (212) 974-2944
       -AND-
       Greenberg Glusker
       Bert Fields, Esq.
       Jeffrey Spitz, Esq.
       1900 Avenue of the Stars, 21st Floor
       Los Angeles, California  90067
       Tel:    (310) 553-3610

20

Fax:    (310) 553-0687
*Attorneys for Oscar De La Hoya*