UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MILANA DRAVNEL,

                 *Plaintiff,*

   – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

                 *Defendants.*
------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

## DECLARATION OF JUDD BURSTEIN

**JUDD BURSTEIN, ESQ.**, hereby declares under penalty of perjury:

1)     I am an attorney duly admitted to practice before the Bar of this Court.

2)     I represent Defendant Oscar De La Hoya ("Defendant") in this action.

3)     I submit this Declaration in further support of Defendant's Motion to Dismiss the Amended Complaint.

4)     The purpose of this Declaration is to authenticate certain documents referred to in the accompanying Reply Memorandum of Law in Support of the Motion to Dismiss the Amended Complaint submitted on behalf of Defendant.

5)     Annexed hereto as Exhibit A is a true and accurate copy of the Declaration of Milana Dravnel, dated December 30, 2007, filed in this action.

6)      Annexed hereto as Exhibit B is a true and accurate copy of the Declaration of Richard Rubino, dated January 2, 2008, filed in this action.

**WHEREFORE**, your Declarant prays for an Order granting Defendant's Motion to Dismiss the Amended Complaint.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 29th day of January, 2008, in New York, New York.

_____
JUDD BURSTEIN

2

EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

MILANA DRAVNEL,

                         Plaintiff,                  **DECLARATION OF**
                                                     **MILANA DRAVNEL**

       -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,               Hon. Laura T. Swain
                                          Case No.: 07-cv-10406
                        Defendants.

------------------------------------------------------------X

        I, MILANA DRAVNEL, declare as follows:

1.      I am the Plaintiff in the above-entitled matter.  I am fully familiar with the facts and circumstances of this case.

2.      I make this Declaration in opposition to Defendant's motion to compel arbitration.

3.      On September 23, 2007, I met with representatives of Defendant Oscar De La Hoya (hereinafter "Mr. De La Hoya") regarding photographs I had of Mr. De La Hoya dressed in women's clothing.  My friend, Richard Rubino, accompanied me to the meeting.

3.      On September 23, 2007, Stephen Espinoza (hereinafter "attorney Espinoza"), an attorney, and Glen Bunting (hereinafter "Bunting"), a publicist with Sitrick and Company, introduced themselves to me as Mr. De La Hoya's representatives (hereinafter collectively "De La Hoya's representatives").

4.      Both attorney Espinoza and Bunting stated they had flown to New York from California for one day to meet with me.

5.     Mr. Rubino, attorney Espinoza, and I met for approximately 1.5 hours at a deli near Espinoza's hotel to discuss the photographs.

6.     I told attorney Espinoza and Bunting more than once that the photographs were authentic and real.

7.     Attorney Espinoza and Bunting, the publicist, were anxious to obtain an agreement from me relating to Mr. De La Hoya and the photographs.

8.     Attorney Espinoza drafted an agreement for me to sign.

9.     I told attorney Espinoza that I would not sign any agreement until after my attorneys had reviewed and approved it.

10.    I am 22 years old. I immigrated from Russia when I was 12 years old. I did not graduate high school, and have only recently obtained my GED. I have no legal training.

11.    I never agreed to the terms of the agreement drafted by attorney Espinoza, and I certainly never agreed to arbitrate any matters relating to the supposed agreement. On September 23, 2007, I did not even know what arbitration was.

12.    Attorney Espinoza and Bunting stressed that they were flying out the following day, and that I had to sign the agreement before they left.

13.    I left the meeting on September 23, 2007, with a copy of an unsigned agreement.

14.    After leaving the meeting, I discussed the proposed agreement with Mr. Rubino.

15.    I then returned to attorney Espinoza's hotel and met him in the lobby. I informed attorney Espinoza that if he would add language to the agreement stating that the agreement would not be effective or valid until after I had my attorneys review and approve it, then I would sign it that day. It was clearly explained to attorney Espinoza that if I signed the agreement, that it was subject to approval and review by my attorneys.

2

16.     Mr. Rubino also explained to attorney Espinoza that I would sign the agreement only if he added a clause stating that the agreement would not become a binding contract until my attorneys reviewed and approved it.

17.     Attorney Espinoza then wrote above the signature line for my name "SUBJECT TO APPROVAL BY MD'S ATTORNEY."

18.     I then placed my signature on the paper.

19.     I have never given Mr. De La Hoya or his representatives any information that would lead them to believe that any of my attorneys have approved the proposed agreement.

20.     I was very clear in my meetings with Mr. De La Hoya's representatives, that the agreement would not be binding unless and until my attorneys reviewed it and approved it.

21.     When I left Mr. De La Hoya's representatives on September 23, 2007, I did not believe we had entered into a binding contract.  I believed that in order for it to become binding, my attorneys would have to review it and agree to it.

22.     A copy of the agreement referred to herein is attached as <u>EXHIBIT "1"</u>.

        I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 30th day of December 2007, in Kings County, New York.

_____
MILANA DRAVNEL

3

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

MILANA DRAVNEL,

Plaintiff,

-against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

Defendants.

--------------------------------------------------------X

**DECLARATION OF
RICHARD RUBINO**

Hon. Laura T. Swain
Case No.: 07-cv-10406

I, RICHARD RUBINO, declare as follows:

1.    I am a friend of the Plaintiff, Milana Dravnel. I am not an attorney.

2.    On September 23, 2007, I accompanied the Plaintiff, Milana Dravnel, to Manhattan to meet with representatives of the Defendant, Oscar De La Hoya.

3.    The purpose of the meeting was to negotiate an agreement between Ms. Dravnel and Mr. De La Hoya regarding digital photographs in Ms. Dravnel's possession of Mr. De La Hoya dressed in women's clothing.

4.    Mr. De La Hoya's representatives introduced themselves as Stephen Espinoza, an attorney, and Glen Bunting, a publicist from the public relations firm Sitrick and Company.

5.    Ms. Dravnel told attorney Stephen Espinoza and Glen Bunting many times that the photos were authentic and real.

6.    During the meeting, attorney Stephen Espinoza stated to Ms. Dravnel and me that he, Stephen Espinoza, was speaking on the telephone with Mr. De La Hoya and another attorney, both of whom were present in California.

7.      Attorney Stephen Espinoza typed up the agreement while we were all present.

8.      In a draft of the agreement, attorney Stephen Espinoza included a provision requiring any disputes relating to the agreement be resolved in California under California law. I objected to that provision, and it was deleted.

9.      I also objected to the inclusion of any provision requiring that disputes under the agreement be resolved in arbitration. It was my understanding that any provision requiring arbitration had been deleted from the agreement.

10.     Attorney Stephen Espinoza presented a final agreement for Ms. Dravnel to sign regarding the photographs of Mr. De La Hoya dressed in women's clothing.

11.     Ms. Dravnel did not want to sign the agreement at that time, and specifically told attorney Stephen Espinoza that she did not want to sign it until her attorneys had a chance to review it.

12.     Attorney Stephen Espinoza stated that he and Glen Bunting were leaving for California the next day, September 24, 2007, and that if Ms. Dravnel were going to sign the agreement, she would have to do it that day, September 23, 2007.

13.     Ms. Dravnel and I left the meeting with the agreement unsigned.

14.     Ms. Dravnel and I later returned to attorney Stephen Espinoza's hotel. Ms. Dravnel agreed to sign the agreement, with the proviso that it would not be effective or binding until her attorney approved it. Ms. Dravnel told Stephen Espinoza that it was not a contract unless and until her attorneys reviewed and approved it.

15.     I also told attorney Stephen Espinoza that the agreement would not be binding unless and until Ms. Dravnel's attorneys approved it.

2

16.     Attorney Stephen Espinoza then wrote on the agreement, above Ms. Dravnel's signature line, that the agreement was "subject to further review by MD's attorneys."

17.     Ms. Dravnel then signed the agreement.

18.     At all times it was made very clear to attorney Stephen Espinoza that the agreement would not be binding unless and until Ms. Dravnel's attorneys approved it.

19.     A copy of the agreement referred to herein is attached as EXHIBIT "1".

20.     To the best of my knowledge, Ms. Dravnel's attorneys have never approved the agreement.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this          day of          2008, in New York County, New York.

RICHARD RUBINO                   01/02/08

3

**EXHIBIT "A"**

## AGREEMENT

The following sets forth the terms of the agreement ("Agreement"), dated as of September 22, 2007, between Malina Dravnel ("MD") and Oscar De La Hoya ("DLH"). In consideration of the reciprocal commitments and mutual benefits hereunder, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1.    MD acknowledges that she, on her own initiative, approached DLH's representatives and initiated the discussions which have resulted in this Agreement. MD acknowledges that the purpose for initiating contact with DLH's representative was to advise them of her intention to publicly recant and retract her prior public statements regarding DLH and to publicly announce that the images that had been previously posted to the internet had been taken from MD's camera by a third party without her consent and had been altered and to seek DLH's consent and approval of her public statement(s) (the "Statements"). MD acknowledges that she has not requested, nor has DLH agreed, to pay or to cause any other party to pay to her any financial compensation in connection with this Agreement or otherwise.

2.    MD represents and warrants that she has not entered into any agreement with any third party regarding DLH, or any photograph or image purporting to depict DLH other than X17. Pursuant to MD's request, but subject to MD actually publicly making the Statements as mutually agreed by MD and DLH, DLH: (a) shall indemnify MD against all legal fees paid or incurred by MD for the defense of any third party lawsuit, whether filed domestically and/or internationally, against MD at any time after the date hereof claiming that the Statements constitute a breach of an agreement between MD and a third party; and (b) agrees not to file or pursue any lawsuit against MD arising out of any publication of photographs or interviews given by MD which occurred prior to the date hereof. MD agrees not to file or pursue any lawsuit against DLH arising out of any matter which has occurred prior to the date hereof.

3.    MD shall keep this Agreement and the terms hereof strictly confidential. Without limiting the generality of the foregoing, MD shall not use, divulge, disseminate, discuss, refer to or acknowledge the existence of, publish, reproduce, or otherwise disclose (or authorize or permit any third party to do any of the above) (i) this Agreement or the terms hereof, (ii) any information regarding DLH, or (i) any photographs or images of DLH. In addition, after the date hereof MD shall not, without DLH's prior written consent, grant or participate in any interviews or articles, make any public statement or otherwise discuss or divulge any information regarding DLH. In the event of any breach or violation by MD of the terms of this Paragraph 3, then DLH shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $25,000 for each violation hereof. Likewise in the event of any breach or violation by DLH of DLH's obligations pursuant to Paragraph 2, then MD shall be entitled to, as liquidated damages and not as a penalty, and in addition to any other remedy, the sum of $250,000 for each violation hereof. In addition, MD agrees that In the event of any breach, alleged breach or violation of the terms of this Paragraph 3, then DLH shall sustain irreparable damage and damage which is difficult, and DLH shall therefore be entitled to injunctive and/or other equitable remedy to prevent and/or remedy any such breach or violation, and MD agrees not to oppose any such injunctive or other equitable remedy.

4.    Notwithstanding anything to the contrary contained herein, and without prejudice to any other remedies set forth herein or otherwise at law or in equity, DLH's obligations under Paragraph 2

shall be null and void, and DLH shall be fully released from all of his covenants and obligations thereunder, in the event of any breach, alleged breach or violation by MD of the terms of Paragraphs 2 or 3 above.

5.    This is the entire agreement between MD and DLH regarding the subject matter hereof. MD acknowledges that neither DLH nor any other party has made any promises to her other than those contained in this Agreement. This Agreement may not be amended or modified in any way, except pursuant to a written instrument signed by both parties. MD acknowledges that she has been advise to consult with an attorney before signing this Agreement and that she has had a reasonable opportunity to do so.

6.    Nothing contained in this Agreement shall require or be construed as to require the commission of any act contrary to any applicable law, rule or regulation, and if there shall exist any conflict between any provision of this Agreement and any such law, rule or regulation, the latter shall prevail and the pertinent provision or provisions of this Agreement shall be curtailed, limited or eliminated to the extent necessary to remove such conflict, and as so modified, this Agreement shall continue in full force and effect. In the event that one or more of the provisions of this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not be in any way affected or impaired thereby.

7.    This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York applicable to agreements made and to be fully performed therein. Any and all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS. Each party shall have a right of appeal to a three-arbitrator panel, which appeal shall also be conducted by private, confidential arbitration in accordance with the rules of JAMS.

MD ACKNOWLEDGES THAT SHE HAS CAREFULLY READ THIS AGREEMENT, UNDERSTANDS IT, AND IS VOLUNTARILY ENTERING INTO IT OF HER OWN FREE WILL, WITHOUT DURESS OR COERCION, AFTER DUE CONSIDERATION OF ITS TERMS AND CONDITIONS. MD FURTHER ACKNOWLEDGES THAT EXCEPT AS STATED IN THIS AGREEMENT, NEITHER DLH NOR ANY REPRESENTATIVE OF DLH HAS MADE ANY OTHER REPRESENTATIONS OR PROMISES TO HER.

*SUBJECT TO FURTHER REVIEW BY MD'S RETND*
*ATTORNEY*

_____
Milana Dravnel

Date:_____

Oscar De La Hoya
By Stephen Espinoza, Authorized Representative
Date:_____9/28/07_____

AGREED AND ACCEPTED, AS TO THE CONFIDENTIALITY PROVISIONS OF PARAGRAPH 3 ONLY:

_____
Richard Rubino

- 2 -