UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MILANA DRAVNEL,

                *Plaintiff*,

— against —

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

                *Defendants*.
-----------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO DISMISS THE AMENDED COMPLAINT

GREENBURG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
(310) 201-7484

- AND -

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Attorneys for Defendant
Oscar De La Hoya*

TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................... ii

ARGUMENT ................................................................ 1

POINT I

    PLAINTIFF HAS ERRONEOUSLY STATED THE LEGAL STANDARD
    APPLICABLE TO THIS MOTION ......................................... 1

POINT II

    PLAINTIFF'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS
    RELATIONS CLAIM MUST BE DISMISSED ............................... 2

POINT III

    PLAINTIFF'S ALLEGATIONS OF TORTIOUS INTERFERENCE WITH
    CONTRACT FAIL TO STATE A CLAIM UPON WHICH
    RELIEF MAY BE GRANTED ............................................. 6

POINT IV

    PLAINTIFF'S ALLEGATIONS OF INTENTIONAL INFLICTION OF
    EMOTIONAL DISTRESS FAIL TO STATE A CLAIM UPON WHICH
    RELIEF MAY BE GRANTED ............................................. 7

POINT V

    PLAINTIFF'S DEFAMATION ALLEGATIONS FAIL TO STATE A CLAIM UPON
    WHICH RELIEF MAY BE GRANTED ..................................... 7

CONCLUSION ............................................................. 10

## TABLE OF AUTHORITIES

CASES

All Boys Music, Ltd. v. Degroot,
    89 Civ. 8258, 1992 WL 51502 (S.D.N.Y. Mar. 9, 1992) ........................ 3

Bell Atlantic Corp. v. Twombly,
    127 S. Ct. 1955 (2007) ............................................. 1, 2, 9

Brinkley v. Casablancas,
    80 A.D.2d 428, 438 N.Y.S.2d 1004 (1st Dep't 1981) ............................ 5

Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.,
    95 Civ. 5106, 1996 WL 363091 (S.D.N.Y. July 1, 1996) (Schwartz, D.J.) ............ 2

Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,
    50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) ................................... 3, 6

Havana Central NY LLC v. Lunney's Pub, Inc.,
    ___ N.Y.S.2d ___, 2007 WL 4533126 (1st Dep't Dec. 27, 2007) .................. 4

Henneberry v. Sumitomo Corp. of America,
    04 Civ. 2128, 2007 WL 2068346 (S.D.N.Y. July 12, 2007) ...................... 2

Herrick, Inc. v. Vetta Sports, Inc.,
    94 Civ. 0905, 1996 WL 434571 (S.D.N.Y. Aug. 2, 1996) (Patterson, D.J.) .......... 6

J. Crew Group, Inc. v. Griffin,
    90 Civ. 2663, 1990 WL 193918 (S.D.N.Y. Nov. 27, 1991) ...................... 8

Kramer v. Time Warner,
    937 F.2d 767 (2d Cir. 1991) ............................................. 2

McGill v. Parker,
    179 A.D.2d 98, 582 N.Y.S.2d 91 (1st Dep't 1992) ........................... 2

Pacheco v. United Medical Associates, P.C.,
    305 A.D.2d 711, 759 N.Y.S.2d 556 (3d Dep't 2003) .......................... 4

Titan Sports, Inc. v. Comics World Corp.,
    870 F.2d 85 (2d Cir. 1989) .............................................. 5

Pagliaccio v. Holborn Corp.,
    289 A.D.2d 85, 734 N.Y.S.2d 148 (1st Dep't 2001) .............................. 4

Pentech International, Inc. v. Wall Street Clearing Co.,
    772 F.Supp. 807 (S.D.N.Y. 1991) (Knapp. D.J.), *aff'd in part, vacated in part, on other grounds*, 983 F.2d 441 (2d Cir. 1993) .................................. 5

Suthers v. Amgen, Inc.,
    441 F.Supp.2d 478 (S.D.N.Y. 2006) (Castel, D.J.) ............................... 2

Tierney v. Omnicom Group Inc.,
    06 Civ. 14302, 2007 WL 2012412 (S.D.N.Y. July 11, 2007) (Swain, D.J.) ........... 1

Turk v. Angel,
    293 A.D.2d 284, 740 N.Y.S.2d 50 (1st Dep't 2002) .............................. 6

Union Carbide Corp. v. Montell N.V.,
    944 F.Supp. 1119 (S.D.N.Y. 1996) (Scheindlin, D.J.) ............................ 3

Wehringer v. Standard Security Life Ins. Co. of New York,
    57 N.Y.2d 757, 454 N.Y.S.2d 984 (1982) ...................................... 9

Welch v. Mr. Christmas,
    57 N.Y.2d 143, 454 N.Y.S.2d 971 (1982) ...................................... 5

STATUTES AND OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ............................................................. 1, 10

Fed. R. Civ. P.  9(g) ................................................................. 1, 10

N.Y. Civil Rights Law § 51 ........................................................... 5, 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MILANA DRAVNEL,

                *Plaintiff*,

                07 CIV 10406 (LTS)

-- against --

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

                *Defendant*.
-------------------------------------------------------X

### REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO DISMISS THE AMENDED COMPLAINT

Defendant Oscar De La Hoya respectfully submits this reply memorandum of law in further support of his motion, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(g), to dismiss the Amended Complaint, dated January 2, 2008, for failure to state a claim upon which relief may be granted.

### ARGUMENT

### POINT I

### PLAINTIFF HAS ERRONEOUSLY STATED THE LEGAL STANDARD APPLICABLE TO THIS MOTION

Plaintiff's answer to Defendant's motion does not take account of the recent change in the standard governing Rule 12(b)(6) motions. As this Court recognized in *Tierney v. Omnicom Group Inc.*, 06 Civ. 14302, 2007 WL 2012412 (S.D.N.Y. July 11, 2007) (Swain, D.J.), the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), now requires the Court to assess "whether sufficient facts are alleged to make the plaintiff's allegations of wrongdoing 'plausible.'" *Omnicom*, 2007 WL 2012412, at *3.

In making this assessment, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions.... Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S. Ct. at 1964-65. (Citations omitted). Moreover, the Court may take judicial notice and consider on a Rule 12(b)(6) motion any documents in the public record. *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991). Finally, the Court is entitled to take into account allegations in a complaint that undermine the relief sought. *See, e.g., Suthers v. Amgen, Inc.*, 441 F.Supp.2d 478, 481 (S.D.N.Y. 2006) (Castel, D.J.).

**POINT II**

**PLAINTIFF'S TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS CLAIM MUST BE DISMISSED**

Plaintiff's answers to our arguments concerning her First Claim for Relief are wholly inadequate. **First**, the allegation that a public relations firm was working on unspecified "book, movie and other sponsorship deals," (Amended Complaint at ¶ 29) fails because a "'general allegation of interference with customers without any sufficiently particular allegation of interference with a **specific contract or business relationship**' will not withstand a motion to dismiss." *Envirosource, Inc. v. Horsehead Resource Dev. Co., Inc.*, 95 Civ. 5106, 1996 WL 363091, at *14 (S.D.N.Y. July 1, 1996) (Schwartz, D.J.) (*quoting McGill v. Parker*, 179 A.D.2d 98, 105, 582 N.Y.S.2d 91, 95 (1st Dep't 1992) (emphasis in original); *accord Henneberry v. Sumitomo Corp. of America*, 04 Civ. 2128, 2007 WL 2068346, at *23 (S.D.N.Y. July 12, 2007) (Leisure, D.J.).

**Second**, with respect to both the "book, movie and other sponsorship" allegations and the allegations about four specified magazines "express[ing] interest in interviewing Plaintiff and

2

purchasing the photographs," (Amended Complaint at ¶ 28), the Amended Complaint fails to meet the requirement that a plaintiff allege with "'some certainty that the plaintiff would have gotten the contract but for' the defendant's interference...." *All Boys Music, Ltd. v. Degroot*, 89 Civ. 8258, 1992 WL 51502, at *9 (S.D.N.Y. Mar. 9, 1992) (Citations omitted).

*Union Carbide Corp. v. Montell N.V.*, 944 F.Supp. 1119, 1142 (S.D.N.Y. 1996) (Scheindlin, D.J.), makes our point. There, the Court rejected a tortious interference claim based upon a similarly, indeed far less, speculative loss of business:

> UCC alleges only that Shell Canada "concluded that ... a new low cost UNIPOL plant would provide Shell Canada with a competitive facility" (Cplt. ¶ 91); that Shell Canada conducted a study of the feasibility of constructing a new polypropylene plant at its Sarnia site using UNIPOL technology (*id.*); that Shell Canada "was exploring taking a UNIPOL license ... for a new 120,000 ton polypropylene plant in Sarnia, Ontario scheduled to become operational in 1995...." (*id.* ¶ 113); and that Shell Canada "remained interested in taking a UNIPOL license for a new polypropylene plant ... into late 1991" (*id.*). These allegations do not form a sufficient basis for concluding that but for Defendants' interference, Shell Canada was reasonably certain (let alone more than reasonably certain) to have entered into a UNIPOL licensing agreement for its Sarnia plant.

If the allegations in *Union Carbide* were inadequate, then, *a fortiori*, the Amended Complaint's allegations are also inadequate.

**Third**, Plaintiff has misapprehended the "wrongful means" component of a tortious interference with business relations claim. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 196, 428 N.Y.S.2d 628, 636 (1980). According to Plaintiff's answering papers:

> Defendant here used "wrongful means" ... when (1) he threatened to have Plaintiff arrested ... (2) he threatened to sue Plaintiff and others who published the photographs ... (3) he placed undue influence on Plaintiff to state that she could not authenticate the photographs ... and (4) he defamed and libeled Plaintiff....

(Plaintiff's Answering Memorandum, dated January 23, 2008, at page 6).

3

With one exception (discussed below), Plaintiff's allegations concerning conduct directed against her – such as the alleged threat to have her arrested – are irrelevant because the "wrongful means" element of a tortious interference with prospective business relations claim may be met only through allegations of conduct directed at **third parties,** rather than conduct directed at the Plaintiff. *Havana Central NY LLC v. Lunney's Pub, Inc.*, ___ N.Y.S.2d ___, 2007 WL 4533126, at *7 (1st Dep't Dec. 27, 2007).

Thus, we are left only with one allegation of "wrongful means" directed at a third party: the claim that Defendant "threatened to sue ... others who published the photographs." It is of course true that the threat to sue a third party may constitute "wrongful means" if the threatened litigation would be frivolous. *See Pagliaccio v. Holborn Corp.*, 289 A.D.2d 85, 85, 734 N.Y.S.2d 148, 149 (1st Dep't 2001). But the Amended Complaint's allegations concerning the alleged threat to sue do not make out a claim for "wrongful means."

In the first instance, there are only two allegations in the Amended Complaint arguably referencing threats of litigation. (Amended Complaint at ¶¶ 31 and 62(d)). These allegations are inadequate because Plaintiff fails also to allege that Defendant's supposed threats were ever communicated to or heard by the four specific companies – Playboy Magazine, Maximum Magazine, OK Magazine and the Inquirer – named in the Amended Complaint, at ¶ 28, let alone that these companies stopped communicating with Plaintiff because of the threats. *See Pacheco v. United Medical Associates, P.C.*, 305 A.D.2d 711, 713, 759 N.Y.S.2d 556, 559 (3d Dep't 2003) ("Here, plaintiff has not alleged how or whether his contractual relationships, prospective or current, with specific patients, UHS or other treating physicians were actually damaged by defendants' conduct.").

Further, Plaintiff erroneously assumes that the only "legal remedies" that could have been "pursued" were those that depended upon a fact finder concluding that the images were not genuine. This is not so. Even if one were to assume *arguendo* that the images are genuine, that "fact" would not foreclose a lawsuit by Defendant pursuant to N.Y. Civil Rights Law § 51, which permits even a public figure to sue for damages and injunctive relief where his or her picture has been used for "purposes of trade without ... written consent." *See, e.g., Titan Sports, Inc. v. Comics World Corp.*, 870 F.2d 85 (2d Cir. 1989) (Summary judgment reversed on claim by professional wrestling promoter that statute was violated because a magazine publisher enclosed unauthorized, removable poster-sized photos of wrestlers in magazine centerfolds); *Welch v. Mr. Christmas*, 57 N.Y.2d 143, 454 N.Y.S.2d 971 (1982) (Actor could sue advertising agency for unauthorized use of his photograph in a television commercial); *Brinkley v. Casablancas*, 80 A.D.2d 428, 438 N.Y.S.2d 1004 (1st Dep't 1981) (Supermodel could sue distributor of commercial calendar using her photograph without her consent).

Since the Amended Complaint explicitly alleges that Plaintiff entered into an agreement to sell the images to X17, which was then authorized to sell the photographs to third parties (Amended Complaint at ¶ 25), Defendant could have maintained a meritorious, and certainly non-frivolous, action against X17 even if the images had been accurate. As such, the alleged threats of litigation were not threats of **frivolous** litigation. *See Pentech International, Inc. v. Wall Street Clearing Co.*, 772 F.Supp. 807, 816 (S.D.N.Y. 1991) (Knapp. D.J.), *aff'd in part, vacated in part, on other grounds*, 983 F.2d 441 (2d Cir. 1993) ("[G]iven the paucity of legal authority addressing the questions raised by Wall Street's asserted claim to the Warrant, there can be no doubt that such claim was asserted, not improperly, but in good faith."); *accord*

5

*Herrick, Inc. v. Vetta Sports, Inc.*, 94 Civ. 0905, 1996 WL 434571, at *4 (S.D.N.Y. Aug. 2, 1996) (Patterson, D.J.).

Finally, a tortious interference with prospective business relations claim must be dismissed where it is "plain that [a] plaintiff[ ] [will] not be able to demonstrate that defendants' conduct was a proximate cause of their alleged loss." *Turk v. Angel*, 293 A.D.2d 284, 284, 740 N.Y.S.2d 50, 51 (1st Dep't 2002). Here, according to the Complaint: (a) Plaintiff sold the photos on or about September 18, 2007 (Amended Complaint at ¶ 25), (b) Defendant's counsel made his alleged "legal remedies" statement on or about September 19, 2007 (*id.* at ¶ 62(d)), and (c) on September 23, 2007, Plaintiff herself informed the media that "the photographs were fabricated, altered, and were not genuine depictions of people or events." (*Id.* at ¶¶ 34-36). In other words, according to the Amended Complaint, there was a span of just four days between counsel's statement and Plaintiff disavowing the *bona fides* of the images. Plainly, once she stated publicly that the pictures were not genuine, no one negotiating with her (if indeed discussions had reached that point) would have purchased them. Hence, as in *Turk*, it will be impossible for Plaintiff to establish proximate cause.

### POINT III

**PLAINTIFF'S ALLEGATIONS OF TORTIOUS INTERFERENCE WITH CONTRACT FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

Plaintiff offers two meritless arguments in an attempt to sustain her tortious interference with contract claim. **First**, she erroneously contends that, under *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 192, 428 N.Y.S.2d 628, 634 (1980), the tort of interference with a contract is applicable to at-will agreements. In fact, the *Guard-Life* Court held to the contrary – concluding that "contracts terminable at will ... fall in the same category

with interference with prospective contractual relations," and that tort claims based upon such contracts therefore require proof of "wrongful means." *Id.* at 192, 191.

**Second**, Plaintiff contends that the Amended Complaint's allegation that X17 "rescinded" its agreement with Plaintiff as a "direct result" of Plaintiff having publicly announced the images were not genuine should be ignored because "[t]here is no evidence that X17's rescinding of the contract was not a breach of the contract." (Plaintiff's Answering Memorandum at page 11). In making this argument, counsel for Plaintiff studiously avoids actually alleging that X17's rescission was in fact a breach, or even providing a copy of the X17 contract. It would be absurd and sanctionable – and certainly not "plausible" – to actually claim that X17 did not have the right to rescind the contract once Plaintiff acknowledged that the images were not genuine.

## POINT IV

### PLAINTIFF'S ALLEGATIONS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Given the space limitations applicable to a reply brief, we will not engage in an extended discussion of Plaintiff's arguments concerning her intentional infliction of emotional distress claim. Rather, we rely upon the Court reading the cases cited by Plaintiff and comparing the facts in those cases to the allegations in the Amended Complaint. That comparison will provide ample basis for dismissing this claim.

## POINT V

### PLAINTIFF'S DEFAMATION ALLEGATIONS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

Putting aside the question of whether, notwithstanding the explicit allegations of slander in the Amended Complaint, Plaintiff is in fact alleging libel rather than slander, her defamation

7

claim must still be dismissed because (a) Plaintiff herself stated publicly that the photographs were not genuine, and (b) any statements made by Defendant and his agents after Plaintiff publicly disavowed the photographs plainly were not alleging that it was Plaintiff who manipulated the photographs.[1]

Plaintiff's **only** answer to these arguments is to contend that Plaintiff's own statements about the images are irrelevant because she was "compelled" to make them. (Plaintiff's Answering Memorandum at pages 15-17). Indeed, given that she has not even sought to answer our argument that a defendant's own publication of a libel precludes a defamation claim, *see J. Crew Group, Inc. v. Griffin*, 90 Civ. 2663, 1990 WL 193918 (S.D.N.Y. Nov. 27, 1991), she has no choice but to argue coercion.

The problem for Plaintiff, however, is that the Amended Complaint's allegations negate a claim that Plaintiff was coerced. This is so primarily because the Amended Complaint alleges that the vast majority of the supposedly improper conduct – threats of arrest, mysterious telephone calls, various calls seeking to locate her – took place **before** she sold the images and started publicizing them. (*See* Amended Complaint at ¶¶ 16-28).

According to the Amended Complaint, Plaintiff sold the images and planned to embark upon a publicity campaign notwithstanding all of this alleged pressure placed upon her. Hence, it would not be "plausible," *Omnicom*, 2007 WL 2012412, at *3, to rely upon allegations relating to pressure applied **before** her sale to X17 in considering Plaintiff's claim that she was coerced into disavowing the provenance of the images **after** she had sold them.

---

[1] Our argument here applies equally to Plaintiff's claims for "compelled self-publication" and "product libel." With respect to the latter, we also fail to understand how libel of a **product**, as opposed to a person, could ever be libel *per se*. As such, at least with respect to the "product libel" claim, Plaintiff was obligated to plead special damages. Plaintiff's reliance upon cases decided 40 years ago does not undermine the case law we have cited on this issue.

8

Thus, the only remaining allegations of post-sale coercion are as follows (a) a threat to "interfere with [Plaintiff's] pending United States citizenship application (Amended Complaint at ¶ 30); (b) a threat to "prevent further publication of the photographs" (*id.*); (c) a threat of "legal action" (*id.* at ¶¶ 31 and 62(d)); and (d) unspecified "coercive tactics" used during a meeting with Defendant's representative on the day she publicly stated that the images were not genuine. (*Id.* at ¶¶ 35-41).

These allegations cannot possibly support a claim of coercion. **First**, it makes no sense that a supposed threat to somehow "interfere" with Plaintiff's citizenship efforts would coerce her into doing anything, given the Amended Complaint's allegation that Plaintiff went forward with selling the images notwithstanding a supposed threat that an FBI agent "was investigating a crime in which Plaintiff was involved and that Plaintiff would be arrested." (Amended Complaint at ¶ 22).

**Second**, the threats to prevent further publications of the images and commence legal action cannot be deemed coercive in light of the fact that – even without regard to his right to sue because the images were fraudulent – Defendant had the right to commence an action and seek injunctive relief pursuant to N.Y. Civil Rights Law § 51. "A threat to do what one has a legal right to do is not actionable." *Wehringer v. Standard Security Life Ins. Co. of New York*, 57 N.Y.2d 757, 759, 454 N.Y.S.2d 984, 984 (1982).

**Third**, alleging unspecified "coercive tactics" used at a meeting with Defendant's representatives is precisely the type of "labels and conclusions" that are not "enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. Moreover, as noted *supra*, at POINT I, the Court can take judicial notice of the Declarations that Plaintiff and her friend, Richard Rubino, publicly filed with the Clerk's office in opposition to Defendant's

9

motion to compel arbitration. (Exhibits A and B to the accompanying Declaration of Judd Burstein). In both Declarations, the declarants recount that (a) Plaintiff insisted upon changes in the terms of the agreement at issue on that motion before she ultimately signed it, (b) she left the meeting with Defendant's representatives without having signed the proffered agreement, and (c) she voluntarily returned to meet with Defendant's attorney in order to sign the agreement. No claim of coercion can be sustained given these sworn statements by Plaintiff and the person accompanying her to the meeting.

## CONCLUSION

For the foregoing reasons, together with those urged in our moving papers, Defendant Oscar De La Hoya requests that the Court enter an Order dismissing the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 9(g).

Dated: New York, New York
January 29, 2008

> Respectfully submitted,
>
> Bertram Fields, Esq.
> Jeffrey Spitz, Esq.
> GREENBURG GLUSKER
> 1900 Avenue of the Stars
> Los Angeles, California 90067
> (310) 201-7484
>
> JUDD BURSTEIN, P.C.
>
> By _____
> Judd Burstein (JB-9585)
> 1790 Broadway, Suite 1501
> New York, New York 10019
> (212) 974-2400
>
> *Attorneys for Defendant Oscar De La Hoya*