UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
MILANA DRAVNEL,

        *Plaintiff*,

– against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

        *Defendants*.
----------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION

GREENBURG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
(310) 201-7484

- AND -

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Attorneys for Defendant
Oscar De La Hoya*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................. ii

RELEVANT FACTS AND PROCEDURAL HISTORY OF THIS MOTION ............... 1

POINT I

    THE COURT SHOULD COMPEL ARBITRATION OF ALL OF THE
    CLAIMS IN THE AMENDED COMPLAINT ................................ 4

    A.    THE GOVERNING LAW ......................................... 4

    B.    THE AMENDED COMPLAINT'S FAILURE TO MENTION THE
           AGREEMENT DOES NOT PRECLUDE DEFENDANT'S RELIANCE UPON
           THE AGREEMENT'S ARBITRATION CLAUSE ........................ 5

    C.    IF THE AGREEMENT IS ENFORCEABLE, IT PLAINLY REQUIRES
           ARBITRATION OF ALL OF PLAINTIFF'S CLAIMS ................... 5

    D.    THE ARBITRATOR SHOULD DECIDE WHETHER THE AGREEMENT IS
           ENFORCEABLE ................................................ 6

CONCLUSION ............................................................ 11

# TABLE OF AUTHORITIES

## CASES

Adams v. Suozzi,
    433 F.3d 220 (2d Cir. 2005) .................................................. 4

Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran,
    445 F.3d 121 (2d Cir. 2006) .................................................. 9

Bar-Ayal v. Time Warner Cable Inc.,
    No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) .................. 10

Contec Corp. v. Remote Solution, Co., Ltd.,
    398 F.3d 205 (2d Cir. 2005) ............................................... 9, 10

Gilbert v. Fox & Roach, LP,
    No. CIV 05-668, 2005 WL 2347121 (D.N.J. Sept. 23, 2005) ..................... 4

Shaw Group, Inc. v. Triplefine Intern. Corp.,
    322 F.3d 115 (2d Cir. 2003) ............................................... 4, 5

Tor Line U.S.A., Inc. v. Kimberly Explorer Cruises Pty, Ltd.,
    No. 90 CIV 0672, 1990 WL 129178 (S.D.N.Y. Aug. 31, 1990) (Cedarbaum, D.J.) .... 5

## STATUES AND OTHER AUTHORITIES

9 U.S.C. §§ 1 .................................................................. 4

9 U.S.C. §§ 2 .................................................................. 4

9 U.S.C. §§ 3 .................................................................. 1

9 U.S.C. §§ 4 .................................................................. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MILANA DRAVNEL,

               *Plaintiff,*

    – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

               *Defendant.*
-----------------------------------------------------------X

07 CIV 10406 (LTS)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION

Defendant Oscar de la Hoya respectfully submits this memorandum of law in support of his motion, pursuant to 9 U.S.C. §§ 3 and 4, to compel arbitration of all of Plaintiff Milana Dravnel's ("Plaintiff") claims in this case.

### RELEVANT FACTS AND PROCEDURAL HISTORY OF THIS MOTION

In November of 2007, Plaintiff filed a Complaint against Defendant in the New York State Supreme Court. *See* Exhibit A to the accompanying Declaration of Judd Burstein, dated February 7, 2008 ("Burstein Dec."). The Complaint alleged, *inter alia*, that Plaintiff (a) had sold to a website ("X17") digital images which she claimed showed Defendant wearing women's clothing, and (b) had been fraudulently induced and/or coerced into (i) disavowing the legitimacy of the images, and (ii) entering into an agreement ("Agreement") (Exhibit B to Burstein Dec.), which prohibited her from profiting any more from the sale of the images.

The Agreement provided, *inter alia*:

a. Plaintiff acknowledged that the images had been altered, and agreed to so inform the media (Exhibit B to Burstein Dec. at ¶ 1);

b. Defendant agreed to indemnify Plaintiff for any claims brought by X17 and agreed not to sue Plaintiff (*Id.* at ¶ 2);

c. Plaintiff agreed to a bar on her selling any other pictures of Defendant or disclosing information about him to anyone and further agreed "not to file or pursue any lawsuit against [Defendant] arising out of any matter which has occurred prior to the date hereof" (*Id.*); and

d. Plaintiff agreed to a very broad arbitration provision:

> Any and all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS. Each party shall have the right to a three arbitrator panel, which appeal shall also be conducted by private confidential arbitration in accordance with the rules of JAMs.

(*Id.* at ¶ 7).

On November 16, 2007, Defendant removed the case to this Court. Defendant then responded to the Complaint by filing a motion to compel arbitration or, in the alternative, to dismiss the Complaint.

On January 2, 2008, Plaintiff filed both an Amended Complaint, dated January 2, 2008 (Exhibit C to Burstein Dec.), and an opposition to Defendant's motion. (Exhibit D to Burstein Dec.) In these submissions, Plaintiff radically changed her position. Instead of claiming that she

2

had been fraudulently induced and/or coerced into entering into the Agreement, her Amended Complaint no longer referenced the Agreement, and her response to the motion to compel now claimed that she had never entered or intended to enter into the agreement in the absence of approval by her attorney. Specifically, Plaintiff contended that the insertion of the words "Subject to further review by MD's Attorney" established her intent not to be bound.

On January 8, 2008, Defendant both moved to dismiss the Amended Complaint and also filed a reply memorandum in support of the motion to compel arbitration. (Exhibit E to Burstein Dec.) In that reply memorandum, at page 1, Defendant stated:

> Although Plaintiff has filed an Amended Complaint … alleging a variety of frivolous new claims…, those changes do not moot Defendant's motion because Plaintiff's claims for tortious interference and intentional infliction of emotional distress remain in the case…. Indeed, the only change brought about by the Amended Complaint is that Plaintiff has now brought her defamation-based claims within the ambit of the September 2007 Agreement…. In contrast to the Original Complaint which alleged only defamatory conduct that occurred after the execution of the Agreement…, the Amended Complaint now alleges a host of supposedly defamatory statements made **before** the execution of the Agreement. Accordingly, the defamation-based claims now fall within the Agreement's provision barring Plaintiff from "fil[ing] or pursu[ing] any lawsuit against DLH arising out of any matter which has occurred prior to the date hereof."

On January 24, 2008, Plaintiff submitted a sur-reply, in letter form, on the motion to compel arbitration.

On January 28, 2008, Defendant objected to Plaintiff's submission of a sur-reply.

On February 4, 2008, the Court entered an Order finding that Defendant's motion to compel arbitration based upon the original Complaint was rendered moot by reason of the fact that the Amended Complaint does not reference the Agreement.

3

This motion, which seeks to compel arbitration of the claims set forth in the Amended Complaint, follows.

<u>**POINT I**</u>

**THE COURT SHOULD COMPEL ARBITRATION OF ALL OF THE CLAIMS IN THE AMENDED COMPLAINT**

**A.    THE GOVERNING LAW**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, governs the enforceability of arbitration agreements contained within any contract "involving commerce." 9 U.S.C. § 2. "[T]he Supreme Court has held that the term "involving commerce" signifies the "'broadest permissible exercise of Congress' Commerce Clause power.'" *Adams v. Suozzi*, 433 F.3d 220, 225 (2d Cir. 2005). Hence, the FAA applies so long as a contract containing an arbitration clause "has a slight nexus to interstate commerce." *Gilbert v. Fox & Roach, LP*, No. CIV 05-668, 2005 WL 2347121, at *2 (D.N.J. Sept. 23, 2005). Since, (a) according to the Amended Complaint, Plaintiff sold certain pictures of Defendant to a website and gave an interview on a national television show (Exhibit C to Burstein Dec. at ¶¶ 25-28), and (b) the Agreement prohibits Plaintiff from selling any other pictures of Defendant or disclosing information about him to anyone (Exhibit B to Burstein Dec. at ¶ 3), the Agreement plainly "involve[s] commerce" and is therefore governed by the FAA. Further, the FAA, "requires that 'any doubts concerning the scope of arbitrable issues' be resolved in favor of arbitration.'" *Shaw Group, Inc. v. Triplefine Intern. Corp.*, 322 F.3d 115, 120 (2d Cir. 2003) (citation omitted).

4

B.  **THE AMENDED COMPLAINT'S FAILURE TO MENTION THE AGREEMENT DOES NOT PRECLUDE DEFENDANT'S RELIANCE UPON THE AGREEMENT'S ARBITRATION CLAUSE**

The law is of course clear that "'arbitration is a matter of contract' ..., and that parties cannot be compelled to arbitrate issues that they have not specifically agreed to submit to arbitration." *Shaw Group,* 322 F.3d at 120 (2d Cir. 2003).

However, the fact that Plaintiff does not mention the Agreement in her Amended Complaint does not preclude inquiry into its existence or the enforceability of its arbitration clause. *See Tor Line U.S.A., Inc. v. Kimberly Explorer Cruises Pty Ltd.,* No. 90 CIV 0672, 1990 WL 129178 (S.D.N.Y. Aug. 31, 1990) (Cedarbaum, D.J.). Indeed, as a matter of common sense, the right to arbitrate cannot be dependent upon whether an arbitration agreement is mentioned in a complaint. If that were the rule, every plaintiff could avoid arbitration simply by omitting any reference to an enforceable arbitration agreement in a complaint.

C.  **IF THE AGREEMENT IS ENFORCEABLE, IT PLAINLY REQUIRES ARBITRATION OF ALL OF PLAINTIFF'S CLAIMS**

As the Court can see from a review of Plaintiff's Amended Complaint, **all** of her claims for relief involve allegations of conduct by Plaintiff that predates the execution of the Agreement. As such, Plaintiff's claims fall within the scope of the Agreement's provision that Plaintiff would "not to file or pursue any lawsuit against [Defendant] arising out of any matter which has occurred prior to the date hereof." (Exhibit B to Burstein Dec. at ¶ 2).

Hence, before this case can proceed, the existence, or enforceability, of the Agreement must be resolved either by the Court or, as we contend, an arbitrator.

5

D.  **THE ARBITRATOR SHOULD DECIDE WHETHER THE AGREEMENT IS ENFORCEABLE**

As noted, Plaintiff seeks to avoid arbitration because the Agreement includes the following hand-written language inserted above her signature: "Subject to further review by MD's Attorney." Based upon this language, Plaintiff has argued that she is not required to arbitrate anything until the Court decides whether the Agreement ever came into effect. We of course recognize that this is an issue – whether there is in fact an agreement between the parties – which must be resolved before Defendant can successfully compel arbitration. That is not a matter of dispute between the parties.

Rather, there is an even more preliminary issue to be resolved by the Court: whether the Court or an arbitrator should decide if an agreement between the parties exists. We contend that the issue is one that must be decided by an arbitrator.

Of crucial importance here is the fact that the Agreement's enforceability was not contingent upon attorney **approval**, but only upon attorney "**review**." The accompanying Declaration of Stephen Espinoza, dated January 7, 2008, (Exhibit F to Burstein Dec.)[1], the representative of Defendant who executed the Agreement, describes the circumstances surrounding the execution of the Agreement, and shows why this distinction is important:

> When I came out to the street, Ms. Dravnel and Mr. Rubino [Plaintiff's friend] were waiting by Mr. Rubino's car. I handed them a clean copy of the agreement to sign. At this point, Mr. Rubino [Ms. Dravnel's friend] stated that he and Ms. Dravnel wanted to show the agreement to an attorney solely for the purpose of

---

[1] Mr. Espinosa's Declaration was initially submitted as part of Defendant's reply papers on the original motion to compel.

6

> seeing if any language needed to be clarified, and not to decide whether to enter into the agreement. Moreover, Mr. Rubino explicitly told me that I would hear from an attorney the next morning only if there were some language issues. That is the reason I hand-wrote in "Subject to further review by MD's Attorney" above the signature line for Ms. Dravnel.
>
> Prior to her signing, I explicitly told Ms. Dravnel that she did not have to sign the agreement at that point, and that if she had an attorney, she should have it reviewed by the attorney before signing it. I made it crystal clear that Mr. de la Hoya would still be willing to sign the agreement the following day. Ms. Dravnel refused this offer and signed.
>
> As we left each other, there was absolutely no doubt about the facts that (a) Ms. Dravnel and I had reached agreement, (b) she would be speaking to an attorney only for the purpose of determining if any language changes were needed to clarify the agreement, and (c) I would hear from that attorney the next morning only if there were any drafting issues.
>
> No lawyer representing Ms. Dravnel ever called me the next day or at any time thereafter concerning the agreement she had signed.

(Declaration of Stephen Espinoza at ¶¶ 13-16).

In other words, this is not a case where there are undisputed facts demonstrating the parties' understanding that an agreement would not become effective unless there was an affirmative act of attorney approval. Rather there is a factual dispute in this case as to what the "attorney review" insertion means. Indeed, that is one of a number of factual issues to be resolved. For example, if Plaintiff had no intention of entering into the Agreement absent attorney approval, why did she voluntarily return hours later to meet with Mr. Espinoza to sign the agreement before showing it to an attorney? (*See* Exhibit F to Burstein Dec. at ¶ 12). Also, given that the insertion only called for review, did she in fact take the Agreement to an attorney?

7

If she did so, and the attorney expressed no reservations, then the Agreement is surely valid by its own terms because it was "reviewed" by her attorney.

Given that the handwritten insertion does not demonstrate, as a matter of law, that the parties never formed a contract, we are left with the question of whether the Court or an arbitrator should decide if the Agreement is an enforceable document. In answering this question, the following facts are relevant:

**First**, Plaintiff will not dispute that she signed the Agreement and that the Agreement contains an arbitration clause.

**Second**, it is clear that the language of the arbitration clause covers Plaintiff's claims.

**Third**, the arbitration clause explicitly provides not only that "any and all disputes, claims, controversies and actions hereunder" shall be arbitrated by JAMS, it also provides that the arbitration is to be conducted "in accordance with the rules of JAMS."

**Fourth**, JAMS's rules explicitly provide:

> The Parties shall be deemed to have made these Rules a part of their Arbitration agreement whenever they have provided for Arbitration by JAMS under its Comprehensive Rules or for Arbitration by JAMS without specifying any particular JAMS Rules.

\* \* \*

> Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

(JAMS Rules 1(b) and 11(c)).

These facts are determinative in light of *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005), where the Court held that an arbitration clause's incorporation of AAA rules granting the arbitrator authority to decide questions of jurisdiction required that the arbitrator decide whether the parties had in fact agreed to arbitrate their disputes:

> The arbitration clause at issue here appears in paragraph 19 of the 1999 Agreement and provides:
>
> In the event of any controversy arising with respect to this Agreement, both parties shall use its best efforts to resolve the controversy. In the event the parties are unable to arrive at a resolution, such controversy shall be determined by arbitration held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the American Arbitration Association (the "AAA")....
>
> Rule 7 of the AAA Commercial Arbitration Rules states with respect to jurisdiction that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a).
>
> We have held that when, as here, parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as ***clear and unmistakable evidence*** of the parties' intent to delegate such issues to an arbitrator.

(Bold and italic emphasis supplied); *accord Alliance Bernstein Inv. Research & Mgmt., Inc. v. Schaffran*, 445 F.3d 121, 126 (2d Cir. 2006).

Here, we have an identical situation with the JAMS Rules. Indeed, the JAMS Rules are even more explicit than the AAA Rules relied upon in *Contec*, because JAMS's Rules provide for the arbitrator to decide the "existence" of an arbitration agreement.

Judge Wood's decision in *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006), makes our point. There, the plaintiff alleged that he had been charged improper fees in connection with his use of Time Warner's Roadrunner internet service. Time Warner argued that the dispute must be arbitrated because there was an arbitration clause in a contract that the plaintiff had to accept by a mouse click when running the start-up software. In response, the plaintiff contended that he had never even seen nor assented to the contract containing the arbitration clause. *Id.* at *4. Judge Wood acknowledged that, as here, the plaintiff was "challenging the existence (but not the 'validity') of the contract containing the arbitration provision." *Id.* at *7. Nonetheless, relying upon *Contec*, the Court concluded that an arbitrator must decide whether the parties had ever formed a contract because, *inter alia*, the arbitration provision at issue incorporated AAA's rules. *Id.* at *4.

This case is functionally indistinguishable from *Bar-Ayal* because in both cases (a) the party seeking to resist arbitration alleged that he or she had never entered into the contract that contained the arbitration clause in question, and (b) that the arbitration clause incorporated rules of an arbitration forum which granted the arbitrator jurisdiction to decide whether the parties had entered into any agreement. Hence, in light of *Contec* and *Bar-Aval*, the issue of whether the "attorney review" insertion negates the existence of the Agreement must be resolved in

10

arbitration. (That being said, if the Court concludes otherwise, we ask for a trial before the Court on this issue).

## CONCLUSION

For the foregoing reason, Defendant Oscar de la Hoya requests that the Court enter an Order compelling Plaintiff to arbitrate all of the claims in the Amended Complaint.

Dated: New York, New York
February 7, 2008

>Respectfully submitted,
>
>Bertram Fields, Esq;
>Jeffrey Spitz, Esq.
>GREENBURG GLUSKER
>1900 Avenue of the Stars
>Los Angeles, California 90067
>(310) 201-7484
>
>JUDD BURSTEIN, P.C.
>
>By_____
>Judd Burstein (JB 9585)
>1790 Broadway
>New York, New York 10019
>(212) 974-2400
>
>*Attorneys for Defendant Oscar de la Hoya*

11