UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
MILANA DRAVNEL,

           *Plaintiff*,

– against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

           *Defendant*.
------------------------------------------------------X

07 CIV 10406 (LTS)

## PRELIMINARY PRE-TRIAL STATEMENT

Plaintiff Milana Dravnel ("Plaintiff") and Defendant Oscar de la Hoya ("Defendant") respectfully submit this Preliminary Pre-Trial Statement pursuant to Paragraph 5 of the Court's November 28, 2007 Initial Conference Order.

### I. STATEMENT OF THE NATURE OF THIS ACTION

Plaintiff has sued Defendant in connection with electronic images from a digital camera ("photographs") purporting to show Defendant wearing women's clothing. Plaintiff contends that Defendant defamed her when Defendant stated publicly that the photographs had been manipulated to falsely portray Defendant wearing women's clothing. In addition, Plaintiff states that she suffered damages – on theories of tortious interference with prospective business relations, tortious interference with contract and intentional infliction of emotional distress – because, as alleged in the Amended Complaint at ¶ 34, Defendant allegedly forced her into publicly stating that the images were fabricated, altered, and were not genuine depictions of people or events. In addition to maintaining his claim that the images falsely depict him wearing

1

women's clothing, Defendant contends that this action is barred by a signed document, entitled "Agreement", dated September 22, 2007 and executed September 23, 2007 ("Disputed Agreement"), and that, in any event, the Disputed Agreement requires arbitration of Plaintiff's claims. Plaintiff denies that any contract was formed, and contends that if no contract exists, Plaintiff has no obligation to arbitrate the Parties' disputes. In addition, Defendant intends to rely upon numerous other defenses discussed below.

## II. STATEMENT AS TO SUBJECT MATTER JURISDICTION

The Parties do not dispute that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) in that Plaintiff is a citizen of Russia, Defendant is a citizen of the Commonwealth of Puerto Rico, and Plaintiff is seeking $5,000,000 in compensatory damages.

## III. STATEMENT AS TO MATERIAL UNCONTESTED FACTS

1. In September of 2007, Plaintiff sold to a website, X17online.com ("X17"), photographs which she claimed accurately depicted Defendant wearing women's clothing.

2. Following publication of the photographs and interviews by Plaintiff with the media, Defendant and his agents publicly claimed that the photographs were altered to falsely depict Defendant wearing women's clothing.

3. On or about September 23, 2007, Plaintiff, accompanied by a friend, Richard Rubino, met in New York with Stephen Espinoza and Glen Bunting. Mr. Espinoza is an attorney for Defendant and Mr. Bunting is a publicist for Defendant.

4.     Following the meeting, the Disputed Agreement was signed by both Plaintiff and Mr. Espinoza as Defendant's agent. The words "Subject to further review by [Plaintiff's] attorney" were inserted above Plaintiff's signature before she signed.

5.     The Parties do not dispute the written contents of the Disputed Agreement.

6.     Following the signing of the Disputed Agreement, Defendant and his agents again publicly claimed that the photographs had been altered to falsely depict Defendant in women's clothing.

## IV.    STATEMENT OF UNCONTESTED LEGAL ISSUES

There are no uncontested legal issues in this case.

## V.    STATEMENT OF LEGAL ISSUES TO BE DECIDED BY THE COURT

1.     Whether the Court or an arbitrator should decide whether the Disputed Agreement is enforceable?

2.     If the Court asserts jurisdiction to decide the enforceability of the Disputed Agreement, whether the Disputed Agreement is enforceable?

3.     If the Court asserts jurisdiction to decide the enforceability of the Disputed Agreement, whether it should declare that, as a matter of law, the Disputed Agreement is not enforceable?

4.     If the Court asserts jurisdiction to decide the enforceability of the Disputed Agreement and does not rule that, as a matter of law, the Disputed Agreement is not enforceable, whether Plaintiff is entitled to a jury trial on the issue?

5.     If the Court concludes that the Disputed Agreement is unenforceable:

     a.    Whether Plaintiff's claim for tortious interference with prospective economic advantage is adequately pled? That is, did Plaintiff plead (i) specifically identified relations with a third party, (ii) that, but for Defendant's interference with wrongful means, prospective business relations would have ripened into actual contracts, and (iii) "wrongful means" by Defendant?;

     b.    Whether Plaintiff has adequately pled a claim for tortious interference based upon a contract, to which Plaintiff was a party, that was terminable at will?;

     c.    Whether Plaintiff's claim for intentional infliction of emotional distress is adequately pled with respect to the issue of outrageous conduct?;

     d.    Whether Plaintiff has plead libel *per se*, thereby obviating the need for her to plead special damages?;

     e.    Whether Plaintiff's defamation claims are barred because the Amended Complaint alleges that Plaintiff herself published the alleged defamatory statements?;

     f.    Whether Plaintiff's defamation claims require allegations of special damages as set forth in statutory and case law?;

     g.    Whether New York recognizes the tort of Defamation by Compelled Self-publication, and, if it does, whether Plaintiff has adequately pled such a claim?; and

     h.    If attorney Bertram Fields becomes a necessary witness, should he be disqualified from acting as Defendant's attorney?

## VI. PLAINTIFF'S STATEMENT OF MATERIAL DISPUTED FACTS

1. Plaintiff possessed photographs of Defendant dressed in women's clothing.

4

2. The photographs are authentic.

3. Plaintiff has witnesses to the authenticity of the photographs.

4. These images were newsworthy.

5. Defendant and his agents engaged in a campaign of harassment to intimidate Plaintiff into not releasing the photographs to the media.

6. Plaintiff entered into contracts with third parties regarding the sale of the photographs and for interviews regarding the photographs and her relationship with the Defendant.

7. After the photographs were released, Plaintiff's agents were engaged in negotiations and discussions with many media outlets regarding the purchase of the photographs and for interviews with the Plaintiff for which she would be compensated.

8. After the photographs were released, Defendant and his agents (including attorney Bertram Fields) falsely stated to the public and media that the photographs were photoshopped and manipulated, and threatened to take legal action.

9. Defendant and his agent slandered Plaintiff by falsely stating through the media that Plaintiff had released faked and photoshopped photographs of the Defendant.

10. As a result of Defendant's and his agent's actions and statements to the public and press, Plaintiff was held up to ridicule by the public and in the community.

11. As a result of Defendant's and his agent's actions and statements to the public and press, Plaintiff was defamed and injured in her good name and reputation.

12. As a result of the campaign of harassment engaged in by Defendant and his agents, as well as Defendant's public relations campaign impugning the veracity of the photographs, Plaintiff was coerced into stating she could not verify the authenticity of the photographs.

13. On September 23, 2007, Plaintiff signed the Disputed Agreement with Defendant regarding the photographs with the explicit understanding that the Disputed Agreement was not a legally binding document until her attorney reviewed and approved it.

14. Plaintiff's attorney never approved the Disputed Agreement and it never became binding. Therefore, the arbitration provision contained in the Disputed Agreement has no effect.

15. Further, the arbitration provision contained in the Disputed Agreement is unconscionable.

16. As a result of Defendant's and his agent's actions, including coercing Plaintiff to state she could not verify the authenticity of the photographs, the third parties withdrew their offers for compensation and interviews in connection with the photographs, adversely affecting Plaintiff's existing and prospective business opportunites.

17. Defendant engaged in conduct that was extreme and outrageous.

18. Plaintiff suffered emotional distress as a result of Defendant's conduct.

## VII. DEFENDANT'S STATEMENT OF MATERIAL DISPUTED FACTS

1. Plaintiff was not coerced into signing the Disputed Agreement.

6

2. At the time she signed the Disputed Agreement, Mr. Rubino [Plaintiff's friend] stated to Mr. Espinoza that he and Ms. Dravnel wanted to show the Disputed Agreement to an attorney solely for the purpose of seeing if any language needed to be clarified, and that Mr. Espinoza would hear from an attorney the next morning only if there were some language issues.

3. No attorney called Mr. Espinoza the next day.

4. Plaintiff knowingly and voluntarily entered into the Disputed Agreement.

5. Defendant's and his agents' statements about the images were in fact true.

6. The images were manipulated.

7. Plaintiff did not maintain custody of the original media containing the images.

8. Plaintiff was not coerced into publicly stating that the images were not genuine.

9. Defendant did not use "wrongful means."

10. Plaintiff did not suffer any damages.

11. Plaintiff was not involved in any negotiations with third parties that would have coalesced into an actual contract but for Defendant's conduct.

12. Plaintiff did not receive any actual offers for compensation in connection with the images which were then withdrawn after she recanted her claims about the *bona fides* of the images.

13. Plaintiff's contract with X17 allowed it to rescind its agreement with her if the images were not genuine.

14. Defendant did not engage in any conduct that was extreme and outrageous.

15. Plaintiff did not seek any psychological or medical treatment as a result of any conduct by Defendant.

16. Plaintiff did not suffer any emotional distress as a result of Defendant's conduct.

## VIII. STATEMENT OF LEGAL BASIS FOR PLAINTIFF'S CLAIMS

1. Because there was no meeting of the minds between the Parties, no contract containing an arbitration provision was ever formed. *See* CPLR § 7503(a); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (1980).

2. If a contract embodying a purported arbitration agreement never existed, the arbitration agreement itself does not exist and Plaintiff cannot be compelled to arbitration. *See Adams v. Suozzi*, 433 F.3d 220, 226 (2d Cir. 2005).

3. If the Court does not deny Defendant's motion to compel arbitration, then Plaintiff, as the opposing party, is entitled to have a jury determine whether a contract containing a valid arbitration agreement was formed on September 23, 2007. *See* 9 U.S.C. § 4; *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (1980).

4. The Disputed Agreement was not a fully formed contract because it required the review and approval of Plaintiff's attorney, which was never given. *See Schreck v. Spinard*, 13 A.D.3d 1027, 1027–28, 788 N.Y.S.2d 214, 214–15 (3d Dep't 2004); *Pepitone v. Sofia*, 203 A.D.2d 981, 611 N.Y.S.2d 375, 376 (4th Dep't 1994); *Nelson v. Ring*, 136 A.D.2d 878, 879, 524 N.Y.S.2d 544, 544-46 (3d Dep't 1988); *Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dep't 1978); *Wilhelm v. Wood*, 151 A.D.42, 135 N.Y.S. 930, 932 (2d Dep't 1912).

8

5. Further, the arbitration provision is unconscionable and unenforceable. *See Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). The disparity in experience, education and bargaining power between the Parties makes the arbitration provision procedurally unconscionable. *See Wright v. SFX Entertaiment Inc.,* No. 00 CIV 5354, 2001 WL 103433, at *3 (S.D.N.Y. Feb. 7, 2001); *Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir. 1997); *Gillman v. Chase Manhattan Bank, N.A.,* 73 N.Y.2d 1, 10-11, 537 N.Y.S.2d 787, 792 (1988); *Brower v. Gateway 2000,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998). Because the arbitration clause unreasonably favors Defendant, the arbitration provision is substantively unconscionable.

6. Defendant used wrongful means to interfere with Plaintiff's existing and prospective business relations by (a) making defamatory and false statements about the photographs and the Plaintiff, (b) coercing Plaintiff into stating she could not verify the authenticity of the photographs, and (c) making threats of commencing frivolous lawsuits. *See Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 191-94, 428 N.Y.S.2d 628, 632-34 (1980).

7. Plaintiff must establish four elements in order to prevail on a defamation claim: (a) a false and defamatory statement of fact; (b) regarding the Plaintiff; (c) published to a third party by the Defendant; and (d) resulting in injury to the Plaintiff. *See Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir. 1993). Defendant falsely stated that the photographs were photoshopped and fake to the media and public at large, causing injury to Plaintiff's reputation and interfering with her "business." Defendant's statements that the photographs

9

were fake and had been photoshopped "regarded the Plaintiff," because Plaintiff was named by the media as the person who released the photographs.

8.  Defendant's statements are libelous as they falsely stated that the photographs were false and photoshopped and accused Plaintiff of acting in a deceitful manner, injuring Plaintiff's reputation. Plaintiff has pled special damages by naming the customers whom she lost as the result of Defendant's defamatory statements and compelled defamation. *See Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 441, 199 N.Y.S.2d 33, 37 (1960); *Reporters' Assn. of America v. Sun Printing & Publishing Assn.*, 186 N.Y. 437, 422 (1906); *Squire Records, Inc. v. Vanguard Recording Soc., Inc.*, 25 A.D.2d 190, 192, 268 N.Y.S.2d 251, 255 (1st Dep't 1966); *Schneidman Heating v. New York Plumbers' Specialties Co.*, 238 A.D. 318, 319, 264 N.Y.S.146, 148 (1st Dep't 1933).

9.  Defendant acted with reckless disregard and actual malice when he publicly stated (and when he instructed his agents to state) that the photographs were fake and had been photoshopped, knowing that such statements were false. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726 (1964).

10.  Defendant's statements regarding the photographs, and by extension, the Plaintiff, were libel *per se* as they (a) accused Plaintiff of committing larceny by false pretenses, (b) exposed Plaintiff to public contempt, ridicule, aversion and disgrace in the community, and (c) injured Plaintiff in her business. *See Mencher v. Chesley*, 297 N.Y. 94, 100, 75 N.E.2d 257, 259 (1947), *Ben-Oliel v. Press Pub. Co.* 251 N.Y. 250, 167 N.E. 432 (1929). Therefore, the

10

Plaintiff need not plead special damages. *Van Lengen v. Parr,* 136 A.D.2d 964, 525 N.Y.S.2d 100 (4th Dep't 1988).

11. Defendant's statements caused harm to the credit-worthiness of the photographs and the information Plaintiff offered to the media. Defendant's libelous statements affected the basic integrity of the photographs, and injury is conclusively presumed. *See Ruder & Finn v. Seaboard Sur. Co.,* 52 N.Y.2d 663, 670, 671, 439 N.Y.S.2d 858 (1981); *Tobin v. Alfred M. Best Co.,* 105 N.Y.S. 294, 294-295 (1st Dep't 1907). Further, Plaintiff sufficiently pled special damages by naming the customers she lost. (See Paragraph 9 *supra.*).

12. It was completely foreseeable that Defendant's and his agent's actions would compel Plaintiff to state that she could not verify the authenticity of the photographs. Plaintiff's statement was not made voluntarily, but out of fear and intimidation. Therefore, a claim for compelled self-publication lies, and the Defendant is not relieved of liability for the damages he caused. *See Van-Go Transport Co., Inc. v. New York City Bd. of Educ.,* 971 F.Supp.90, 104 (E.D.N.Y. 1997).

13. Defendant inflicted intentional emotional distress on Plaintiff through his campaign of harassment and intimidation. Such behavior is sufficient action to cause intentional infliction of emotional distress. *See Nader v. General Motors Corp.,* 25 N.Y.2d 560, 569, 307 N.Y.S.2d 647, 654 (1970).

14. If it is determined attorney Bertram Fields is a necessary witness, he should be disqualified from acting as Defendant's attorney. *See* 22 NYCRR § 1200.21.

11

## IX. STATEMENT OF LEGAL BASIS FOR DEFENDANT'S DEFENSES

1. Defendant contends in the first instance that the Parties' dispute should be arbitrated. 9 U.S.C. §§ 3 and 4; *see Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005).

2. Defendant's actual and anticipated defenses to the Amended Complaint's First Claim for Relief, alleging tortious interference with prospective business relations are:

   a. Plaintiff has not alleged, and cannot prove, that Defendant interfered with any specific, existing business relationship. *See Mobile Data Shred, Inc. v. United Bank of Switzerland*, No. 99 Civ. 10315, 2000 WL 351516, at *7 (S.D.N.Y. Apr. 5, 2000).

   b. Plaintiff has not alleged, and cannot prove, that it is reasonably certain that, but for Defendant's conduct, any potential contractual relationship would have ripened into an actual contract. *See Union Carbide Corp. v. Montell, N.V.*, 944 F.Supp. 1119, 1142 (S.D.N.Y. 1996) (Scheindlin, D.J.).

   c. Plaintiff has not alleged, and cannot prove, that Defendant employed "wrongful means." *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190, 785 N.Y.S.2d 359, 362 (2004).

3. Defendant's actual and anticipated defense to the Amended Complaint's Second Claim for Relief is that Plaintiff has not alleged, and cannot prove, that any party breached a contract with Plaintiff as a result of Defendant's conduct. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 402 (2d Cir. 2006).

4.  Defendant's actual and anticipated defense to the Amended Complaint's Third Claim for Relief is that Plaintiff has not alleged, and cannot prove, that Defendant's alleged conduct was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See Nunez v. A-T Financial Information Inc.* 957 F.Supp. 438, 442 (S.D.N.Y. 1997) (Preska, D.J.).

5.  Defendant's actual and anticipated defenses to the Amended Complaint's Fourth and Fifth Claims for Relief, alleging defamation and "product libel" are:

   a.  Having sold the images and embarked upon a publicity campaign, Plaintiff is a limited purpose public figure. *See Liu v. New York News, Inc.*, 183 A.D.2d 443-44, 583 N.Y.S.2d 391 (1st Dep't 1992). As such, she must prove by clear and convincing evidence that Defendant's statements were false. *DiBella v. Hopkins*, 503 F.3d 102, 115 (2d Cir. 2005). She cannot meet this burden of proof.

   b.  Defendant's statements about Plaintiff and the images in question were in any event substantially true. *See Matovcik v. Times Beacon Record Newspapers*, 46 A.D.3d 636, 849 N.Y.S. 2d 75 (2d Dep't 2007).

   c.  Plaintiff's defamation claim is barred because she stated publicly that the images were not genuine, thereby publishing the allegedly defamatory statement herself. *See J. Crew Group, Inc. v. Griffin*, No. 90 Civ. 2663, 1990 WL 193918, at *2 (S.D.N.Y. Nov. 27, 1990) (Conboy, D.J.).

      d.      Any statements Defendant allegedly made after Plaintiff disavowed the images were about the images themselves, and not about Plaintiff. *See Bee Publications, Inc. v. Cheektowaga Times, Inc.*, 107 A.D.2d 382, 384, 485 N.Y.S.2d 885, 888 (4th Dep't 1985).

      e.      Because Plaintiff has not alleged defamation *per se*, she must plead special damages, which she has failed to do. *See Dellefave v. Access Temporaries, Inc.*, No. 99 Civ. 6098, 2001 WL 25745, at *2 (S.D.N.Y. Jan. 10, 2001) (Sweet, D.J.); Fed. R. Civ. P. 9(g).

      f.      Plaintiff will be unable to prove any damages, special or otherwise.

6.      Defendant's actual and anticipated defenses to the Amended Complaint's Sixth[1] Claim for Relief, alleging "Compelled Self-publication," are:

      a.      The same defenses that will be offered in opposition to the Amended Complaint's Fourth and Fifth Claims for Relief.

      b.      New York does not recognize the tort of compelled self-publication. *See Wieder v. Chemical Bank*, 202 A.D.2d 168, 169-70, 608 N.Y.S.2d 195, 196 (1st Dep't 1994).

      c.      Even if the tort were available under New York law, the Amended Complaint's allegations, even if proven, do not establish defamation by self-publication.

---

[1] While identified in the Amended Complaint as the Plaintiff's second Fifth Claim for relief, clearly Plaintiff intended this claim as the Sixth Claim for Relief.

*See Van-Go Transport Co., Inc. v. New York City Board of Education*, 971 F.Supp. 90, 104 (E.D.N.Y. 1997).

## X.  STATEMENT AS TO BURDEN OF PROOF

Defendant bears the burden of proving to the Court that the Parties entered into the Disputed Agreement. Plaintiff bears the burden of proof on all issues by a preponderance of the evidence, except that, if it is determined that Plaintiff is a public figure, she is obligated to prove by clear and convincing evidence (a) the falsity of Defendant's statements, and (b) that Defendant acted with malice.

## XI.  AMENDMENT OF THE PLEADINGS

In light of the fact that Defendant has pending motions to compel arbitration and to dismiss the Amended Complaint, the Parties are at this time unable to determine whether there will be any need to amend the pleadings or substitute parties. Nor are they in a position to suggest a deadline for any amendments or substitution of parties.

## XII.  TRANSFER TO A MAGISTRATE JUDGE

The Parties do not consent to a transfer of the case to a Magistrate Judge for all purposes.

## XIII.  RULE 26(a) DISCLOSURES

The Parties have a dispute on the issue of the timing of Rule 26 Disclosures. Plaintiff contends that only one set of Rule 26 Disclosures should be made, and that those disclosures should be made 21 days following the Court's ruling on Defendant's motion to dismiss the Amended Complaint.

Defendant contends that there should be two rounds of potential Rule 26 Disclosures. If the Court rules that it will determine the enforceability of the Disputed Agreement, the first round of Rule 26 Disclosures should be made within 21 days following the Court's ruling, but limited only to disclosure related to the enforceability of the Disputed Agreement. Thereafter, if (a) the Court determines that the Disputed Agreement is not enforceable, (b) Defendant appeals that ruling and the Court of Appeals affirms, and (c) the Court denies Defendant's motion to dismiss the Amended Complaint, Defendant proposes that the second round of Rule 26 disclosures – relating to the merits – be made within 21 days following the later of the Court's denial of Defendant's motion to dismiss the complaint or the issuance of the Mandate by the Court of Appeals (if Defendant has appealed).

## XIV. THE SUBJECTS AND TIMING OF DISCLOSURE

The Parties disagree about the subjects and timing of discovery. Plaintiff contends that even if the Court orders a trial on the issue of whether the Disputed Agreement is enforceable, discovery should not be bifurcated (except possibly with regard to damages), and that a discovery schedule be set after the Court rules on Defendant's motion to dismiss the Amended Complaint. Plaintiff believes that if the Court does not deny Defendant's motion to compel arbitration and orders a jury trial on contract formation, Plaintiff will need to discover information regarding the events before, during and after the signing of the document. Further, Plaintiff should also be permitted to depose all parties who participated in the discussions on September 23, 2007, whether telephonically or in person. Defendant, Plaintiff, and Defendant's agents are necessary witnesses to Plaintiff's case in chief as well as to the issues surrounding the

Disputed Agreement. It would be inefficient, considering the geographic distances between the Parties and attorneys, to have to conduct two sets of depositions for all of these witnesses.

Defendant contends that if the Court orders a trial on the issue of whether the Disputed Agreement is enforceable, discovery should be bifurcated so that a first round of discovery would be limited to discovery related to the issue of whether the Disputed Agreement is enforceable. In the event that Defendant's request for a bifurcation of discovery is granted, the first phase of discovery would require depositions of the individuals who attended the meeting which resulted in the execution of the Disputed Agreement, and production of documents related thereto. Such documents and depositions may give rise to the need for additional depositions and document production. In the event that the Court orders a trial on the enforceability of the Disputed Agreement, Defendant proposes a discovery cut-off date of 120 days after the Court rules that a trial is necessary.

With respect to the merits, the Parties anticipate that discovery, involving both depositions and documents, will include inquiry into:

    a. the circumstances of the taking of the photographs;

    b. the nature of the Parties' relationship;

    c. the Parties' communications and interactions before and after the photographs were released to the media;

    d. the events surrounding the meeting that took place on September 23, 2007;

    e. the Parties' and their agents' statements to the public and press regarding the photographs;

    f.   the contracts and business relationships Plaintiff allegedly lost as the result of Defendant's and his agents' actions and statements; and

    g.   Plaintiff's alleged damages.

The Parties do not intend the list directly above to necessarily be exhaustive, and reserve their right to contend that some of the issues set forth – or inquiry related thereto – are not the proper subjects of disclosure.

Plaintiff requests permission to postpone setting a discovery cut-off date with respect to the merits until after the Court issues its decision on Defendant's motion to dismiss the Amended Complaint.

Defendant proposes that if (a) the Court determines that the Disputed Agreement is not enforceable, (b) Defendant appeals that ruling and the Court of Appeals affirms, and (c) the Court denies Defendant's motion to dismiss the Amended Complaint, the setting of a discovery cut-off date for the second round of discovery – relating to the merits – be postponed until 21 days following the later of the Court's denial of Defendant's motion to dismiss the Amended Complaint or the issuance of the Mandate by the Court of Appeals (if Defendant has appealed).

## XV.   **POTENTIAL EXPERT TESTIMONY**

Should the Court order a trial on the enforceability of the Disputed Agreement, the Parties do not anticipate a need for expert testimony for that trial.

However, if the Court directs a trial on the enforceability of the Disputed Agreement and Plaintiff prevails at the trial, the Parties expect that expert testimony will be needed on the issue of the authenticity of the photographs.

18

### XVI. CHANGING THE FEDERAL RULES' DISCOVERY LIMITATIONS

Plaintiff contends that if a jury trial is held with regard to the Disputed Agreement, that discovery should only be bifurcated with respect to the issue of damages.

Defendant agrees that if the Court grants a trial on the enforceability of the Disputed Agreement and bifurcates discovery, there is no need to alter the discovery limitations set by the Federal Rules of Civil Procedure with respect to that trial.

However, if the Court (a) the Court determines that the Disputed Agreement is not enforceable, (b) Defendant appeals that ruling and the Court of Appeals affirms, and (c) the Court denies Defendant's motion to dismiss the Amended Complaint, Defendant asks for leave to submit a statement discussing whether there is a need to alter the Rules' discovery limitations within 21 days following the later of the end of the trial or, the issuance of the Mandate by the United States Court of Appeals (if Defendant has appealed).

### XVII. STATUS OF SETTLEMENT DISCUSSIONS

There is no prospect for settling this case.

### XVIII. LENGTH OF TRIAL/JURY VS. NON-JURY

In the event that the Court orders a trial on the enforceability of the Disputed Agreement, Plaintiff seeks a jury trial. Plaintiff's case shall last two days, and Defendant's case shall last two days.

If the Court directs a trial on the enforceability of the Disputed Agreement and Plaintiff prevails at the trial, Plaintiff's and Defendant's cases in chief will each last one week.

## XIX. NEED FOR ADDITIONAL ORDERS

Plaintiff does not believe that the Court needs to enter any other orders pursuant to Fed. R. Civ. P. 16 and 26. Defendant believes such orders may be necessary with respect to the possible bifurcation of disclosure.

Dated: New York, New York
       February 8, 2008

Respectfully submitted,

STRAZULLO LAW FIRM

By /S/
Salvatore E. Strazzullo (SS7419)
100 Park Avenue
New York, New York 10017
(212) 551-3224
*Attorneys for Plaintiff*

JUDD BURSTEIN, P.C.

By
Judd Burstein (JB9585)
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400
*Attorneys for Defendant*