UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MILANA DRAVNEL,

                        Plaintiff,

     -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                        Defendants.

-------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT**
**<u>OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION</u>**

STRAZZULLO LAW FIRM
100 Park Avenue, Suite 1600
New York, New York 10017
Tel: (212) 551-3224
Fax: (212) 926-5001
*Attorneys for Plaintiff Milana Dravnel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .i

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

POINT I

      A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED;
      THEREFORE NO AGREEMENT TO ARBITRATE EXISTS. . . . . . . . . . .3

POINT II

      DEFENDANT CANNOT ENFORCE ANY PROVISION OF THE
      SEPTEMBER 23, 2007 DOCUMENT UNLESS AND UNTIL THE
      COURT FINDS A CONTRACT WAS FORMED. . . . . . . . . . . . . . . . . . 9

POINT III

      IN THE EVENT THE COURT FINDS A CONTRACT WAS
      FORMED, MS. DRAVNEL SHOULD NOT BE COMPELLED TO
      ARBITRATION AS THE AGREEMENT TO ARBITRATE IS
      UNCONSCIONABLE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

POINT IV

      MS. DRAVNEL DEMANDS A JURY DETERMINE
      WHETHER A CONTRACT CONTAINING A LEGALLY
      ENFORCEABLE ARBITRATION AGREEMENT WAS FORMED. . . . . .17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ............ . .18

JURY DEMAND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. .. . . . . . . .18

**TABLE OF AUTHORITIES**

**STATUTES**

CPLR § 7503(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 4

Fed. R. Civ.P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9 U.S.C.A. § 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**CASES**

*Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

*Alliance Bernstein Inv. Research and Management Inc. v. Schaffran*,
      445 F.3d 121 (2d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 13

*Apollo Computer, Inc. v. Berg*, 886 F.2d 469, 470 - 472 (1st Cir. 1989) . . . . . . . . . . 12

*AT& T Technologies Inc. v. Communications Workers*, 475 U.S. 643 (1986) . . . . . . . . .4

*Bar-Ayal v. Time Warner Cable Inc.*,
      No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006). . . . . 10, 11, 12, 14

*Benckiser Consumer Products, Inc. v. Kasday,*
      No. 97 Civ. 5389 (KMW), 1998 WL 677631 (S.D.N.Y. Sept. 30, 1998) . .. . . . .17

*Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y. 2002). . . . . . . . . . .5, 14, 16

*Brower v. Gateway 2000*, 246 A.D.2d 246, 676 N.Y.S.2d 569 (1st Dep't 1998) . . . . . . 15

*Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204 (2006). . . . . . . . . . . . . 12, 13

*Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel*, 346 F3d 360 (2d Cir. 2003) . . . . . .14

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986) . . . . . . . . . . . . . . . . . .17

*Cohn v. Geon Intercontinental Corp.,*
      62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dept. 1978) . . . . . . . . . . . . . . . . . . . 7, 8

*Contec Corp. v. Remote Solution, Co., Ltd.* 398 F.3d 205 (2d Cir. 2005). . . .. . . . .. 10, 11

ii

*First Options of Chicago, Inc. v. Kaplan,*
    514 U.S. 938, 115 S.Ct. 1920 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11

*Garten v. Kurth,* 265 F.3d 136 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Gillman v. Chase Manhattan Bank, NA,*
    73 N.Y.2d 1, 537 N.Y.S.2d 787 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

*Klos v. Lotnicze,* 133 F.3d 164 (2d Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . 15

*Manos v. Interbank of New York,*
    202 A.D.2d 403, 608 N.Y.S.2d 691 (2d Dept. 1994) . . . . . . . . . . . . . . . . . . . . . 4

*Nelson v. Ring,* 136 A.D.2d 878, 524 N.Y.S.2d 544 (3d Dept. 1988) . . . . . . . . . . . . .6 - 7

*Nichols v. Washington Mut. Bank,*
    No. 07 CV 3216 (JG), 2007 WL 4198252 (E.D.N.Y., Nov. 21, 2007). . . . . . . . .13

*Opals on Ice Lingerie v. Bodylines, Inc.,* 320 F.3d 363 (2d Cir. 2003) . . . . . . . . . .5, 6, 7

*Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F.2d 51 (1980) . . . . . . . . . 3, 17

*Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375 (4th Dept. 1994) . . . . . . . . . . . . . 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.,*
    388 U.S. 395, 87 S.Ct. 1801 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sandvik AB v. Advent Intern. Corp.,* 220 F.3d 99 (3d Cir. 2000) . . . . . . . . . . . . . . . . . 4

*Schreck v. Spinard,* 13 A.D.3d 1027, 788 N.Y.S.2d 214 (3d Dept. 2004) . . . . . . . . . . . .6

*Telenor Mobile Communications AS v. Storm LLC,*
    524 F.Supp.2d 332 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Three Valleys Mun. Water v. E.F. Hutton,* 925 F.2d 1136 (9th Cir. 1991) . . . . . . . . . . . 4

*Wilhelm v. Wood,* 151 A.D.42, 135 N.Y.S. 930 (2d Dept. 1912) . . . . . . . . . . . . . . . . . . 7

*Will-Drill Resources, Inc. v. Samson Resources Co.,* 352 F.3d 211 (5th Cir. 2003). . . . . . 5

*Wright v. SFX Entertainment, Inc.,*
    No. 00 Civ. 5354 (SAS), 2001 WL 103433 (S.D.N.Y. Feb. 7, 2001) . . . . . . . . . 15

iii

**OTHER**

Restatement (Second) of Contracts § 24 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Restatement (Second) of Contracts § 50 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Restatement (Second) of Contracts § 71 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
MILANA DRAVNEL,

                    Plaintiff,

      -against-

OSCAR DE LA HOYA, and
JOHN and/or JANE DOES 1 & 2,

                    Defendants.

-------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

**ORAL ARGUMENT REQUESTED**

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT <u>OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION</u>

      Plaintiff Milana Dravnel submits this Memorandum of Law in opposition to defendant Oscar De La Hoya's Motion to Compel Arbitration. Simply put, since the arbitration clause Defendant seeks to enforce was within a purported contract that was never formed, the arbitration provision contained in the contract is not valid or enforceable, and the motion to compel Plaintiff to arbitration should be denied.

### <u>STATEMENT OF FACTS</u>

      Plaintiff Milana Dravnel filed an Amended Complaint in this matter on January 2, 2007, charging Defendant with Tortious Interference with Business Opportunities, Tortious Interference with Contract, Intentional Infliction of Emotional Distress, Defamation, Defamation by Compelled Self-publication, and Product Libel.

The facts relevant to Defendant's Motion to Compel Arbitration are as follows:
Plaintiff Milana Dravnel agreed to meet with two representatives of the champion boxer
and businessman, Oscar De la Hoya, after enduring Defendant's insistent and aggressive
efforts to contact her, both directly and through her work and friends. Thus, a team of
Defendant's agents from California - attorney Stephen Espinoza, and publicist Glen
Bunting – met with Ms. Dravnel in Bunting's Manhattan offices on the Sunday afternoon
of September 23, 2007. Ms Dravnel, age 22 with only a high-school education, brought a
friend, Richard Rubino, a retired police officer in the automotive business, to accompany
her to the meeting. (Dravnel Dec. ¶ 3; Rubino Dec. ¶ 3.)[1]

Within that meeting, pursuant to discussions between those four as well as by
telephone with both Mr. De la Hoya and yet another attorney for Defendant, Espinoza
drafted an agreement (hereinafter "the Agreement"). In brief, the Agreement stated that
Ms. Dravnel would state publicly that she could not verify the authenticity of the
photographs of Mr. De la Hoya that she possessed.

Yet, Ms. Dravnel informed Espinoza more than once that she would not sign the
Agreement without her attorneys' approval. However, because it was a Sunday, Ms.
Dravnel was unable to contact an attorney. Nonetheless, Espinoza and Bunting were
pressuring Ms. Dravnel to sign the Agreement because – they told her – they had to
return to California by the following day. (Dravnel Dec. ¶ 12). Ultimately, she only

---

[1] See Declaration of Milana Dravnel dated December 30, 2007, and Declaration of
Richard Rubino dated February 25, 2008.

2

agreed to sign the Agreement with the addition of the following provision: "SUBJECT TO REVIEW BY MD'S [Milana Dravnel's] ATTORNEY." She then signed directly below that provision. The parties agreed that the Agreement would not be valid or enforceable unless and until Ms. Dravnel's attorneys reviewed and approved it. *See* Agreement, as EXHIBIT 1, attached to Dravnel and Rubino Declarations.

Significantly, Ms. Dravnel's attorneys have never approved the agreement, and thus no agreement was ever formed.

Accordingly, because no agreement was ever formed, the arbitration provision contained in the Agreement is not valid, and defendant's motion to compel arbitration must be denied.

## POINT I

### A CONTRACT BETWEEN THE PARTIES WAS NEVER FORMED; THEREFORE NO AGREEMENT TO ARBITRATE EXISTS

A basic tenet of both federal and New York law is that a party may not be compelled to arbitration unless a valid contract containing an arbitration agreement has been entered into. *See* CPLR § 7503(a); *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 (1980) (although sales contract contained arbitration clause, providing that any claim arising out of contract or merchandise covered thereby would be submitted to and determined by arbitration, plaintiff buyer's claim that there was never meeting of minds on terms and conditions contained in agreement, accompanied by supporting affidavits, was sufficient to require jury determination as to whether there had

3

been a meeting of minds on the purported agreement to arbitrate); *Sandvik AB v. Advent Intern. Corp.,* 220 F.3d 99, 106 (3d Cir. 2000) (defendant not entitled to arbitration where it disputed very existence of binding contract); *Manos v. Interbank of New York,* 202 A.D.2d 403, 608 N.Y.S.2d 691 (2d Dept. 1994) (CPLR 7503(a) to compel party to arbitrate pursuant to contractual agreement, there must be no substantial question as to whether valid agreement was made or complied with).

This long-settled principle is a straightforward one:

> [B]y contending that they never entered into such contracts, plaintiffs also necessarily contest any agreements to arbitrate within the contracts. To require the plaintiffs to arbitrate where they deny that they entered into the contracts would be inconsistent with the 'first principle' of arbitration, that a 'party cannot be required to submit [to arbitration] any dispute which he has not agreed so to submit.'

*Three Valleys Mun. Water v. E.F. Hutton,* 925 F.2d 1136, 1142 (9th Cir. 1991), citing *AT& T Technologies Inc. v. Communications Workers,* 475 U.S. 643, 648 (1986). *See also Garten v. Kurth,* 265 F.3d 136, 142 (2d Cir. 2001) ("[B]efore the court compels arbitration of a claim, the court must find that a valid agreement to arbitrate exists.")

Moreover, as noted in *Three Valleys, supra,* the Federal Arbitration Act does not confer jurisdiction on arbitrators absent an agreement of the parties to arbitrate. 925 F.2d at 1142 n.5.

It is a factual question for the Court to decide whether parties entered into a contract, applying New York contract principles. *See Adams v. Suozzi,* 433 F.3d 220, 226 (2d Cir. 2005) (The court is to determine whether the parties entered into a contract);

4

*Will-Drill Resources, Inc. v. Samson Resources Co.*, 352 F.3d 211 (5th Cir. 2003) (The court should apply state-law principles of contract to determine whether an agreement existed); *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377, 381 (S.D.N.Y 2002) (State-contract principles of contract are used to evaluate the validity of an agreement to arbitrate).

Under New York law, the general requisites for formation of a contract include offer, acceptance, and consideration. *See* Restatement (Second) of Contracts §§ 24, 50, 71 (1981). If there is no meeting of the minds on all essential terms, then under New York law, there is no contract. This is so because an enforceable contract requires <u>mutual assent</u> of the essential terms and conditions thereof. *Id.*

The case of *Opals on Ice Lingerie v. Bodylines, Inc.*, 320 F.3d 363, 372 (2d Cir. 2003), is worthy of note. There, a New York and a Nevada company drafted various documents which Opals argued should constitute a valid contract - containing an arbitration clause. However, the documents drafted and signed by Opals each called for arbitration in New York, governed by New York law. The only documents undisputedly signed by Bodylines which contained an arbitration clause- two Addendums - each called for arbitration in California, governed by California law. The court found this difference to be significant, indicating that there was **no meeting of the minds** as to an agreement to arbitrate. Fundamental to every valid, enforceable contract is that the parties have a meeting of the minds and mutually assent to the essential terms and conditions of their

agreement.  Thus, if no contract was formed, then any arbitration agreement contained in the contract is unenforceable. *Opals,* 320 F.3d 371-72.

In the case here, Ms. Dravnel was unable to obtain the assistance of an attorney in negotiating and evaluating the terms of the Agreement that defendant and his agents had drafted.  At the same time, Defendants' agents were pressuring Plaintiff to sign the Agreement, since they purportedly needed to return to California.  Accordingly, it was *explicitly agreed between the parties*[2] – and was included **as a handwritten clause** within the contract "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY" - that Ms. Dravnel's signature *would not be binding* as an assent to the Agreement, ***until*** the Agreement was reviewed by her attorney.

Thus the agreement, including the arbitration clause, was subject to the approval of Ms. Dravnel's attorney, and was not a fully formed contract because without the approval of Ms. Dravnel's attorneys, there was no meeting of the minds or mutual assent between the parties. *See Pepitone v. Sofia,* 203 A.D.2d 981, 611 N.Y.S.2d 375, 376 (4th Dept. 1994) (an agreement that is subject to approval by an attorney is not binding and enforceable until such approval is given); *Schreck v. Spinard,* 13 A.D.3d 1027, 1027–28, 788 N.Y.S.2d 214, 214–15 (3d Dept. 2004) (when an agreement is subject to attorney approval, it is not binding and enforceable until it is approved.); *Nelson v. Ring,* 136 A.D.2d 878, 879, 524 N.Y.S.2d 544, 544 – 546 (3d

---

[2]  Ms. Dravnel and Mr. Rubino both state that when Ms. Dravnel signed the agreement, they told attorney Espinoza that the agreement would not be binding or enforceable without Ms. Dravnel's attorneys' approval.  (Dravnel Dec. ¶¶ 15 - 18; Rubino Dec. ¶¶ 15 - 23).

Dept. 1988) (attorney approval clauses are considered an essential part of real property

contracts which must be satisfied before a contract is enforceable).

In *Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th

Dept. 1978), a case similar to the one here, the court found that the defendant's

handwritten words to the effect that the document was subject to legal advice, as well as

the defendant's crossing out of the words "consented to," vitiated any "intent to bind

defendant" to the terms set forth in the document. As a result, the court found that there

was no mutual assent or meeting of the minds sufficient to form a binding contract. *Id.* at

1161–62, 404 N.Y.S.2d at 208-09.

Here, Ms. Dravnel had the right to make her acceptance of the agreement dependent on

the approval of her attorney, and she did so. *See Wilhelm v. Wood*, 151 A.D.42, 135 N.Y.S.

930, 932 (2d Dept. 1912) (a party to a contract has the right to make their acceptance

dependent upon the approval of their own attorney.) Her attorneys never approved the

agreement; therefore, any arbitration provision in the agreement is invalid and unenforceable,

and defendant's motion to compel arbitration should be denied.

In his motion, Defendant asserts that the provision "SUBJECT TO FURTHER

REVIEW BY MD'S ATTORNEY" did not mean that Ms. Dravnel had the right to have her

attorney approve of the document before it became a fully formed contract. Defendant claims

that Ms. Dravnel demanded those words be inserted prior to her signing the document just in

case her attorney had some "language" changes or "drafting" issues.

This assertion is belied by the witness, Mr. Rubino, who was present at the time the document was signed. Mr. Rubino and Ms. Dravnel were clear that Ms. Dravnel wanted her attorney to review the document and approve it *before* it became a fully formed contract. Rubino Declaration at ¶¶ 19, 20, 23.

But Ms. Dravnel, although only age 22 with a limited education, was aware enough to realize that she needed to consult her own lawyer before agreeing to a document drafted by skilled attorneys - for the other side. Ms. Dravnel's own attorney never approved the document – thus, no mutual assent was given, no meeting of the minds occurred, and no contract was formed. Therefore, any arbitration agreement contained therein does not exist and is not enforceable.

8

## POINT II

### DEFENDANT CANNOT ENFORCE ANY PROVISION OF THE SEPTEMBER 23, 2007 DOCUMENT UNLESS AND UNTIL THE COURT FINDS A CONTRACT WAS FORMED

Defendant argued that the rules of JAMS[3] give jurisdiction to the arbitrator to determine questions of "arbitrability."  However, whether the JAMS rules apply, again, is a matter of contract between the parties, and presupposes that a contract exists.

Simply put, Defendant is mistaken when he argues that whether or not a contract was formed between Ms. Dravnel and Mr. De La Hoya is a question of "arbitrability."  There is a general presumption that the issue of "arbitrability" should be resolved by the courts, and not in arbitration.  *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944- 945, 115 S.Ct. 1920 (1995).  The issue of "arbitrability" may only be referred to the arbitrator if there is clear evidence from the arbitration agreement that the parties intended the question of "arbitrability" be decided by the arbitrators.  *Id.* at 939, 115 S.Ct. at 1921.  Whether the parties agreed that

---

[3] Paragraph 7 of the proposed Agreement (Exhibit 1 to Dravnel and Rubino Declarations) states "all disputes, claims, controversies and actions hereunder shall be resolved by private, confidential arbitration in New York, NY pursuant to the rules of JAMS," Judicial Arbitration and Mediation Services.

Rule 11(c) of JAMS states:  "Jurisdictional and arbitrability disputes, including disputes over the existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration shall be submitted to and ruled on by the Arbitrator.  The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." (Emphasis added.)  Author's note:  this language refers to the arbitration agreement, not the entire contract.

matters of arbitrability will be determined by the arbitrator <u>is a matter of contract</u>. *Id.* at 943. The parties had to enter the agreement (that included an arbitration agreement) before they could be bound by it.

Because the Agreement at issue was never fully formed, it does not exist, and any agreement – including that the Rules of JAMS apply, and that the arbitrator determines matters of "arbitrability" – **are not applicable**. Put another way, whether or not a contract was formed between Ms. Dravnel and Mr. De La Hoya is not a matter of "arbitrability." Only if Ms. Dravnel had formed the contract would she be bound by the Agreement's provisions, including an agreement to have questions of arbitrability determined by an arbitrator.

Indeed, a careful review of the cases upon which Defendant relies, *Contec* and *Bar-Ayal,* reveals that they do not hold otherwise, but rather are factually distinct from the one here – because in both, *a contract already existed* that either specifically stated that the arbitrator was to decide issues of arbitrability or invoked rules which gave the arbitrator such power. *See Contec Corp. v. Remote Solution, Co., Ltd.* 398 F.3d 205 (2d Cir. 2005) and *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006).

Thus, in *Contec Corp. v. Remote Solution,* defendant Remote opposed arbitration with plaintiff Contec. Remote argued that its contract was with Contec's predecessor - therefore, Remote was not bound to arbitrate with Contec, and the Court - not the arbitrator - should decide whether it was bound to arbitrate with Contec, the successor to the contract. *Contec* at 207. Significantly however, the contract between Remote and Contec's predecessor specifically invoked the Rules of the American Arbitration Association ("AAA"), and stated

10

that issues regarding the scope or validity of the arbitration agreement were subject to arbitration. 398 F.3d at 208 – 209. The Court determined that Remote was signatory to the agreement, and that the dispute had arisen because the parties had continued to conduct themselves subject to the agreement regardless of the change in corporate form.  The Court held that as a signatory to the contract containing an arbitration clause and incorporating by reference the AAA Rules, Remote could not disown its agreed-to obligation to arbitrate all disputes, including the question of arbitrability.  *Contec* at 211.

Notably, when the Court stated that Remote was a "signatory," it meant more than that Remote just placed its signature on the contract.  It meant that Remote **had entered into the contract**, and a contract had been formed.  The dispute there was whether a party could be obligated to arbitrate with a successor to the contract. *Contec* at 211.

The case at bar is different.  While Ms. Dravnel placed her signature on the document, it does not make her a "signatory" in the sense that Remote was a signatory in the *Contec* matter, because here, the contract was never formed. *See* POINT ONE, *supra*.

Likewise, in *Bar-Ayal*, that plaintiff did not dispute that he had entered into a contract with defendant Time Warner Cable.  In fact, one of the causes of action was for breach of contract. *Bar-Ayal*, 2006 WL 2990032 at *6.   Rather, the defendant contended that he never assented to that part of the contract - the Customer Agreement - that contained the arbitration provision. *Id.* *4.   The *Bar-Ayal* court stated that where a party challenges the "validity" of a contract as a whole or a separate arbitration agreement, that under the seminal case of

11

*Prima Paint*[4], the arbitrator decides the issue.  In both those cases, *Bar-Ayal* and *Prima Paint,* the courts were not deciding whether a contract was formed.  Instead, they dealt with the contracts' "validity," *i.e.* whether the contract that existed was enforceable, i.e. whether it was induced by fraud (*Prima Paint* at 399, 403 - 404).  "The issue of the contract's validity is different from the issue of whether any agreement between the parties was concluded."  *Bar-Ayal* at 6, quoting *Buckeye Check Cashing, Inc., v. Cardegna,* 126 S.Ct. 1204, 1208 n.1 (2006).

The *Bar-Ayal* court found that the arbitration provision at issue, both in its explicit language and its incorporation of the AAA's Rules, constituted sufficiently clear and unmistakable evidence that the parties intended to have issues of arbitrability decided by the arbitrator.  Id. at *8.   The court found that in accordance with New York state law, that Plaintiff had accepted the terms of the Customer Agreement and the arbitration provision.

In reviewing the facts of other cases wherein the issue was whether the arbitrator or court had jurisdiction to determine questions of arbitrability, none of them involve a case wherein "a question of arbitrability" was whether a contract had been formed.  Many of the cases regard factual situations where a successor party to a contract containing an arbitration provision that gave the arbitrator authority to determine questions of "arbitrability" was either attempting to enforce or avoid a contract that had been formed. *See Apollo Computer, Inc. v. Berg,* 886 F.2d 469, 470-72 (1st Cir. 1989) (Issue was not whether Apollo had formed a contract, rather it was whether the contract continued to

---

[4] *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801 (1967).

12

exist and was valid against a successor); *Alliance Bernstein Inv. Research and Management Inc. v. Schaffran,* 445 F.3d 121, 127 (2d Cir. 2006)( Parties did not contest that that they had executed a registration form that included a mandatory arbitration clause incorporating use of the NASD Rules - the issue was whether the employment discrimination claim was exempted from mandatory arbitration, not whether contract had been formed); *Telenor Mobile Communications AS v. Storm LLC*, 524 F.Supp.2d 332, 351-53 (S.D.N.Y. 2007) (There was no dispute that party opposing arbitration had entered into a contract incorporating the rules of UNCITRA – rather, issues were whether (1) the language of the UNCITRAL Rules alone was sufficient to strip the party avoiding arbitration from its ability to present evidence of the *validity* of the arbitration agreement to the Court – which the Court found it was not – and (2) whether signatory to the contract was authorized to bind the corporation to the arbitration provision); *Nichols v. Washington Mut. Bank*, No. 07 CV 3216 (JG), 2007 WL 4198252, *7 (E.D.N.Y., Nov. 21, 2007) (Plaintiff did not dispute that she entered into a contract, but claimed that she was unaware of arbitration provision that incorporated the Rules of AAA, which give the arbitrator power to determine issues of arbitrability – nonetheless, court found that plaintiff's challenge that she was unaware of the arbitration provision had to be decided by the Court).

In sum, Defendant's position makes no sense in light of this prevailing case law. Arbitrators derive their authority because the parties have agreed in advance to submit their grievances to arbitration. If Plaintiff never entered into a contract that contained a

13

provision requiring her to submit her claims to arbitration through JAMS, then the rules

of JAMS cannot be used to give authority to an arbitrator to decide whether or not she

entered into a contract.

### POINT III

### IN THE EVENT THE COURT FINDS A CONTRACT WAS FORMED, MS. DRAVNEL SHOULD NOT BE COMPELLED TO ARBITRATION AS THE AGREEMENT TO ARBITRATE IS UNCONSCIONABLE

Even if the Court were to rule that a contract was formed by the parties on

September 23, 2007, the Court – and not an arbitrator -- should nonetheless find that the

arbitration provision is unconscionable and unenforceable.[5] *Bar-Ayal v. Time Warner*

*Cable Inc., supra,* at *15 (court determined whether arbitration provision was

unconscionable notwithstanding the fact that under the contract, questions of arbitrability

were to be determined by the arbitrator.)

In New York, unconscionability generally requires both procedural and substantive

elements. *Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002). The test

for procedural inadequacy in forming a contract is whether, in light of all the facts and

circumstances, a party lacked "a meaningful choice" in deciding whether to sign the contract.

Although it is true that one who signs an agreement without full knowledge of its terms

---

[5] The Court must determine whether a valid arbitration provision exists employing New York state law. *Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel,* 346 F3d 360, 365 (2d Cir. 2003).

might be held to assume the risk that he or she has entered a one-sided bargain, this rule does not apply if a plaintiff is able to demonstrate an absence of meaningful choice. *Id.* at 382.

To determine whether a contract was validly formed, one factor upon which a court should focus is any disparity in experience and education, *i.e.* bargaining power, between the parties. *See Wright v. SFX Entertainment Inc.,* No. 00 Civ 5354 (SAS), 2001 WL 103433 (S.D.N.Y, Feb. 7, 2001); *Gillman v. Chase Manhattan Bank, NA,* 73 N.Y.2d 1,10-11, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988); *see also Klos v. Lotnicze,* 133 F.3d 164, 168 (2d Cir.1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis with no opportunity to change the terms"); *Brower v. Gateway 2000,* 246 A.D.2d 246, 676 N.Y.S.2d 569, 573 (1st Dep't 1998) (describing disparity in bargaining power as turning on the "experience and education of the party claiming unconscionability").

In this case, Mr. De La Hoya's attorneys and agents drafted the arbitration provision that went so far as to invoke the Rules of JAMS, which even placed questions of arbitrability into arbitration. Attorney Espinoza is a member of Ziffren, Brittenham, Branca, Fischer, Gilbert-Lurie, Stiffelman, Cook, Johnson, Lande & Wolf LLP, a leading Southern California transactional entertainment law firm. Glen Bunting is employed by Sitrick and Company, one of the nation's leading public relations firms. Further, on September 23, 2007, Mr. Espinoza consulted at length with yet another attorney via telephone regarding the terms of the agreement.

15

On the other hand, Ms. Dravnel, 22-years-old, with just a high school education, did not even know what arbitration was, and thus could not know of the potential consequences of agreeing to the Rules of JAMS.

The power imbalance between Ms. Dravnel and Mr. De La Hoya's legal and public relations team is so stark that Ms. Dravnel's purported negotiation – which included the arbitration provision - could hardly be considered meaningful -- indeed, she recognized and conceded that imbalance, by requesting that her own legal counsel first review the entire document before being bound by it.

This being so, any arbitration provision obtained on that day is procedurally unconscionable due to the extreme power imbalance between the parties. *See Brennan v. Bally Total Fitness,* 198 F.Supp.2d 377, 382 (S.D.N.Y. 2002).

Additionally, the arbitration agreement is substantively unconscionable. The arbitration clause unreasonably favors Mr. De La Hoya, and inures totally to his benefit. Mr. De La Hoya, a public figure, has everything to gain by requiring Ms. Dravnel to litigate her disputes with him in confidential arbitration, as compared to a judicial forum.

To permit Mr. De La Hoya to use his power and extensive resources to dupe Ms. Dravnel into giving up her rights to litigate her dispute in the judicial forum would be unconscionable and should not be permitted.

16

**POINT IV**

**MS. DRAVNEL DEMANDS A JURY DETERMINE
WHETHER A CONTRACT CONTAINING A LEGALLY
ENFORCEABLE ARBITRATION AGREEMENT WAS FORMED**

Defendant, as the party seeking to compel arbitration, has the burden of showing that there are no material issues of fact to be tried and that he is entitled to judgment as a matter of law.  *See Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.,* 636 F2d 51, 54 (3d Cir. 1980) (the standard for evaluating a motion to compel arbitration is the same as that for summary judgment);  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986).

Based upon the case law cited and evidence presented, the Court must decide whether a meeting of the minds occurred, a contract was formed, and arbitration can be compelled.  However, if the Court cannot find as a matter of law that a contract was not formed, then pursuant to 9 U.S.C. § 4, Plaintiff requests the matter be decided by a jury. [6] *See also Benckiser Consumer Products, Inc. v. Kasday,* No. 97 Civ. 5389 (KMW), 1998 WL 677631, *2–3 (S.D.N.Y. September 30, 1998).

---

[6] Under 9 U.S.C. § 4, the party opposing arbitration may request that a jury decide whether an arbitration agreement was made.

17

## CONCLUSION

The Court should deny defendant's motion to compel arbitration and permit Ms. Dravnel to proceed in the judicial forum.

### **Jury Demand**

Should the Court not find as a matter of law that no valid Agreement was made, then plaintiff demands a jury trial on the issue.

Dated:          New York, New York
                February 25, 2008

                                        Yours, etc.

                                        STRAZZULLO LAW FIRM

                                        By:
                                        Salvatore E. Strazzullo, Esq.
                                        (SS 7419)
                                        100 Park Avenue, Suite 1600
                                        New York, New York  10017
                                        Tel:  (212) 551-3224
                                        Fax:  (212) 926-5001
                                        *Attorneys for Plaintiff Milana Dravnel*

TO:    Judd Burstein, Esq.
       Judd Burstein, P.C.
       1790 Broadway, Suite 1501
       New York, New York  10019
       Tel:    (212) 974-2400
       Fax:    (212) 974-2944

       -AND-

       Greenberg Glusker
       Bert Fields, Esq.
       Jeffrey Spitz, Esq.

18

1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067
Tel:     (310) 553-3610
Fax:     (310) 553-0687
*Attorneys for Oscar De La Hoya*