UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
MILANA DRAVNEL,

                  *Plaintiff,*

    – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1 & 2,

                  *Defendants*.
--------------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION

GREENBURG GLUSKER
1900 Avenue of the Stars
Los Angeles, California 90067
(310) 201-7484

- AND -

JUDD BURSTEIN, P.C.
1790 Broadway, Suite 1501
New York, New York 10019
(212) 974-2400

*Attorneys for Defendant*
*Oscar De La Hoya*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

POINT I

    DEFENDANT'S MOTION SHOULD BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . 1

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## TABLE OF AUTHORITIES

<u>CASES</u>

Adams v. Suozzi,
    433 F.3d 220 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Bar-Ayal v. Time Warner Cable Inc.,
    No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) (Wood, D.J.) . . . . . . . 5, 9

Brennan v. Bally Total Fitness,
    198 F.Supp.2d 377 (S.D.N.Y. 2002) (Scheindlin, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Buckeye Check Cashing, Inc. v. Cardegna,
    126 S.Ct. 1204 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cohn v. Geon Intercontinental Corp.,
    62 A.D.2d 1161, 404 N.Y.S.2d 206 (4th Dep't 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Contec Corp. v. Remote Solution, Co., Ltd.,
    398 F.3d 205 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Doctor's Associates, Inc. v. Distajo,
    107 F.3d 126 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Ferguson v. Lion Holdings, Inc.,
    312 F.Supp.2d 484 (S.D.N.Y. 2004) (Leisure, D.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nichols v. Washington Mutual Bank,
    No. 07-CV-3216, 2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007) . . . . . . . . . . . . . . . . . 6

Opals on Ice Lingerie v. Bodylines Inc.,
    320 F.3d 362 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
    388 U.S. 395 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

<u>STATUTES AND OTHER AUTHORITIES</u>

9 U.S.C. §§ 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9 U.S.C. §§ 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Fed.R.Civ.P. 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MILANA DRAVNEL,

                    *Plaintiff,*

    – against –

OSCAR DE LA HOYA, and JOHN and/or JANE
DOES 1&2,

                   *Defendant.*
-----------------------------------------------------------X

Case No.: 07-cv-10406

Hon. Laura T. Swain

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT OSCAR DE LA HOYA'S MOTION TO COMPEL ARBITRATION

Defendant Oscar de la Hoya ("Defendant") respectfully submits this Reply Memorandum of Law in support of his motion, pursuant to 9 U.S.C. §§ 3 and 4, to compel arbitration of Plaintiff Milana Dravnel's ("Plaintiff") claims.

### ARGUMENT

### POINT I

### DEFENDANT'S MOTION SHOULD BE GRANTED

Plaintiff has failed to adequately answer Defendant's motion for the following reasons.

**First**, Plaintiff's response to the motion demonstrates that Defendant is entitled to the equivalent of summary judgment against Plaintiff on her claim that she did not agree to arbitrate. "As when opposing a motion for summary judgment under Fed.R.Civ.P. 56, the party requesting a jury trial on the existence of an agreement to arbitrate must 'submit evidentiary facts showing that there is a dispute of fact to be tried.'" *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) (citations and quotations omitted). Plaintiff has made no such showing.

The parties in this case do not dispute that the words "SUBJECT TO FURTHER REVIEW BY MD'S ATTORNEY" were inserted above Plaintiff's signature on the Agreement, dated September 22, 2007 ("Agreement"), at issue on this motion. But they do vigorously dispute the meaning of those words. However, even if one (erroneously) credits Plaintiff's interpretation – that the words signify that she did not intend to be bound until her attorney reviewed and approved the Agreement – there still remains the factual question of whether there was such an attorney review and approval. Plainly, if she did take the Agreement to an attorney who approved it, the Agreement would be enforceable, even under Plaintiff's view of the case. Yet, Plaintiff has not supplied any proof on this issue of attorney review.

Rather, she has offered only the following:

1.    The February 25, 2008 Declaration of Richard Rubino, the person who accompanied Plaintiff to her meeting with Defendant's lawyer, which states only that "[t]o the best of my knowledge, Ms. Dravnel's attorneys have never approved the agreement." (Declaration of Richard Rubino at ¶ 25).

2.    Plaintiff's Declaration does not even go this far. Instead, she states only that "I have never given [Defendant] or his representatives any information that would lead them to believe that any of my attorneys have approved the proposed agreement." (Declaration of Milana Dravnel at ¶ 19).

In other words, **Plaintiff has failed to offer any proof that her attorney did not review and approve the Agreement**. Mr. Rubino's Declaration is irrelevant, because he has no

2

firsthand knowledge of anything one way or the other –*i.e.*, his "belief" has no probative value. Nor does Plaintiff even speak to this key issue.

It is extremely significant that this is Defendant's second motion to compel arbitration,[1] and it is therefore Plaintiff's second opportunity to provide a factual basis for her claim. Yet, Plaintiff chose not to submit a new declaration – instead relying upon her December 30, 2007 Declaration in which she spoke only of whether she had given Defendant any information about her having consulted with her lawyer.

Her failure to make an affirmative statement about not having consulted a lawyer is damning in light of the facts (a) that Mr. Rubino submitted a new declaration on this Motion, and (b) Plaintiff was plainly available in New York to sign a new declaration. This is made clear by the accompanying Declaration of Judd Burstein, dated March 4, 2008, which demonstrates that Plaintiff appeared outside the Courthouse on February 15, 2008. Hence, she could have submitted a new declaration (signed by fax just as Mr. Rubino's Declaration was signed), but chose not to do so.

Plaintiff's refusal to swear that she did not take the Agreement to her attorney is further explained by the fact that her story makes no sense. According to the Declarations of Mr. Rubino and Plaintiff: (a) they spent a significant period of time one day negotiating the Agreement with Defendant's counsel; (b) there were four separate drafts of the Agreement

---

[1]    As the Court will recall, Defendant's first motion to compel arbitration was denied as moot in light of Plaintiff's filing of the Amended Complaint.

prepared that day; (c) Plaintiff and Mr. Rubino left their meeting with Defendant's counsel without Plaintiff having signed the Agreement; and (d) Plaintiff and Mr. Rubino then returned for Plaintiff to sign the Agreement after inserting the "attorney review" language. Further, according to the original Complaint in this matter, Plaintiff did not seek to profit further from the pictures or even speak about them – from the date of the Agreement through the filing of the Complaint, some two months later – because "[I]f she did, she would be in violation of the agreement." (Exhibit F to the accompanying Declaration of Judd Burstein at ¶ 19).

Given these facts, the possibility of Plaintiff not having promptly consulted a lawyer boggles the imagination. Who would ever sign an agreement – supposedly under pressure – after insisting upon such "attorney review" language, and then not promptly take the agreement to a lawyer? Why would a person who possessed such supposedly lucrative digital images choose not to exploit them out of concern for breaching an "agreement" into which she believed she had never entered – unless of course she had consulted an attorney who told her that the agreement was enforceable? Plainly, Plaintiff's story is incredible, thereby making her failure to submit a new declaration on the present motion – when she had a chance to do so – determinative.[2]

---

[2]  It is also again worth pointing out that, in her original Complaint, Plaintiff sought damages based upon the fact that she had been fraudulently induced into entering into the Agreement. In seeking those damages, Plaintiff necessarily reaffirmed that there had in fact been a meeting of the minds. *See Ferguson v. Lion Holdings, Inc.*, 312 F.Supp.2d 484, 498 (S.D.N.Y. 2004) (Leisure, D.J.) (When a plaintiff claims fraud in the inducement and seeks damages rather than rescission, she is thereby affirming the contract). Why would Plaintiff have made such a claim in the original Complaint if she had never entered into the Agreement?

4

**Second**, Plaintiff has not adequately distinguished *Contec Corp. v. Remote Solution, Co., Ltd.*, 398 F.3d 205 (2d Cir. 2005) and *Bar-Ayal v. Time Warner Cable Inc.*, No. 03 CV 9905, 2006 WL 2990032 (S.D.N.Y. Oct. 16, 2006) (Wood, D.J.), in any meaningful way. With respect to *Contec*, Plaintiff simply overlooks one of the key aspects of that case – that the incorporation of AAA rules requires that an arbitrator decide the issue of arbitrability.

As for *Bar-Ayal*, Plaintiff has described it in a way that makes the case unrecognizable. In *Bar-Ayal*, the plaintiff did in fact dispute that he had entered into the contract in question – explicitly contending that he had never even seen, much less assented to, the contract. 2006 WL 2990032 at * 4. Moreover, contrary to Plaintiff's remarkable claim in her brief, Judge Wood did not hold that, where rules such as the AAA or JAMS rules are incorporated into an agreement, the arbitrator should decide only questions as to the "validity" of the agreement. Rather, Judge Wood held to the contrary that the incorporation of the AAA rules mandated that the arbitrator decide the "existence" of the contract, *i.e.*, whether the parties had ever formed the contract. *Id.*

**Third**, Plaintiff's other attempts to avoid the force of *Contec* and *Bar-Ayal* fail because, with just two exceptions, all of the cases she has cited are irrelevant, in that they (a) either predate *Contec*, (b) were decided by a Court outside of this Circuit, and/or (c) are not cited as contrary authority, but only to explain why other decisions have referred questions of arbitrability to the arbitrator. As for the remaining two cases, neither of them provide any comfort to Plaintiff.

In *Adams v. Suozzi*, 433 F.3d 220 (2d Cir. 2005), the Court upheld the District Court's assumption of jurisdiction to decide whether an arbitration agreement existed because the "County [could] point to no provision of the LPA that 'clearly and unmistakeably' assigns the question of arbitrability to the arbitrator in the first instance." 433 F.3d at 226. Here, as we pointed out in our moving papers, the Agreement incorporates JAMS's arbitration rules, which provide for the arbitrator to decide whether an agreement to arbitrate exists.

In *Nichols v. Washington Mutual Bank*, No. 07-CV-3216, 2007 WL 4198252 (E.D.N.Y. Nov. 21, 2007), the Court acknowledged that, under *Contec*, an arbitrator must determine the existence of an agreement containing an arbitration clause when, as is the case here, the existence of the whole agreement is challenged. *Id.* at *7. However, in *Nichols*, the Plaintiff was not denying the existence of the underlying agreement as a whole, but indeed was seeking relief under it. Instead, she was only challenging whether the arbitration clause in the agreement was, standing alone, enforceable because, she claimed, she was unaware that the clause was in the agreement. Here, of course, we have the exact opposite situation. As Mr. Rubino's Declaration makes clear, he and Plaintiff specifically discussed the arbitration clause with Defendant's attorney. (Declaration of Richard Rubino at ¶ 8).

**Fourth**, if Plaintiff wins on the issue of who decides arbitrability, but it turns out that the Court holds that the Agreement is enforceable, Defendant will have lost one of the benefits of his bargain: the incorporation of the JAMS rule requiring the arbitrator to resolve the question of

6

whether the Agreement exists.   On the other hand, if the arbitrator rules that there is no agreement, Plaintiff returns to this Court unharmed.

**Fifth**, on a somewhat related note, if Plaintiff is correct, the JAMS rule concerning an arbitrator ruling on the existence of an agreement would be meaningless.  According to Plaintiff, a JAMS arbitrator is empowered to decide whether an agreement exists only when a party has actually acknowledged that the agreement exists.  This makes no sense, especially in a case where Plaintiff (a) does not dispute that she signed an "agreement" with an arbitration clause, and (b) only contests whether she meant to be bound by her signature.

**Sixth**, it is important to emphasize that, as demonstrated by the paucity of the case law on the issue, cases such as this represent the exception, not the rule.  In the absence of a provision incorporating rules of organizations such as AAA or JAMS, the FAA plainly requires a court to resolve the issue of whether there was ever an agreement to arbitrate.  But where, as here, the parties designate an arbitrator to decide such issues, the matter is taken out of the Court's hands.

**Seventh**, Plaintiff mistakenly seeks to rely upon a host of cases in which courts held that real estate contracts never became binding because they had a provision explicitly requiring an affirmative act of attorney **approval** before they became effective.[3]    These cases are

---

[3]       The only case that does not fall completely within this description is *Cohn v. Geon Intercontinental Corp.*, 62 A.D.2d 1161, 1162, 404 N.Y.S.2d 206, 208-9 (4th Dep't 1978).  However, in *Cohn*, the defendant actually struck out the words "CONSENTED TO" before stating that the agreement was subject to his attorney's advice.  Moreover, in *Cohn*, the exact words used by the parties were not set forth in the decision.

We also note that this case is completely distinguishable from *Opals on Ice Lingerie v.*

7

fundamentally different because there is nothing in the Agreement which required affirmative attorney approval. Rather, the Agreement stated only that it was subject to "further **review** by MD's attorney." (Emphasis supplied). This is a crucial distinction in light of Stephen Espinoza's Declaration, dated January 7, 2008, in which he states that "there was absolutely no doubt about the facts that (a) Ms. Dravnel and I had reached agreement, (b) she would be speaking to an attorney only for the purpose of determining if any language changes were needed to clarify the agreement, and (c) I would hear from that attorney the next morning only if there were any drafting issues." (Declaration of Stephen Espinoza at ¶ 15). In other words, this is not a case where there are undisputed facts demonstrating the parties' understanding that an agreement would not become effective unless there was an affirmative act of attorney approval. Rather, there is a factual dispute in this case – to be resolved by the arbitrator – as to what the "attorney review" insertion meant.

**Eighth**, in arguing that the Agreement is unenforceable because it is allegedly unconscionable, Plaintiff ignores the governing law. Put simply, since she alleges that the Agreement as a whole, as opposed to just the arbitration clause, is unconscionable, that claim must be resolved in arbitration. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S.

---

*Bodylines Inc.*, 320 F.3d 362 (2d Cir. 2002). In *Opals*, the parties had signed two different versions of a contract, each of which contained a different arbitration clause providing for arbitration in different locales governed by different law. Here, in contrast, we have a single agreement signed by both parties.

8

395, 403-04 (1967); *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S.Ct. 1204, 1209 (2006); *Bar-Ayal* at *15.

The case primarily relied upon by Plaintiff, *Brennan v. Bally Total Fitness*, 198 F.Supp.2d 377 (S.D.N.Y. 2002) (Scheindlin, D.J.), is not to the contrary, and Plaintiff's citation to it is misleading, because Plaintiff regrettably does not cite an earlier decision in the same case. In *Brennan v. Bally Total Fitness*, 153 F.Supp2d. 408, 414 (S.D.N.Y. 2001), the Court held that it, rather than an arbitrator, would resolve an unconscionability claim only because the Court was not faced with "an arbitration clause within a contract, but an entire arbitration agreement" that contained no material terms broader than the obligation to arbitrate disputes arising out of the plaintiff's employment. Here, in contrast, there are numerous other material terms in the Agreement beyond the arbitration clause.

## **CONCLUSION**

For the foregoing reasons, Defendant Oscar de la Hoya requests that the Court enter an

Order compelling Plaintiff to arbitrate all of her claims in this case.

Dated: New York, New York
       March 4, 2008

                                        Respectfully submitted,

                                        Bertram Fields, Esq.
                                        Jeffrey Spitz, Esq.
                                        GREENBURG GLUSKER
                                        1900 Avenue of the Stars
                                        Los Angeles, California 90067
                                        (310) 201-7484

                                        JUDD BURSTEIN, P.C.


                                        By_____/s/_____
                                        Judd Burstein (JB-9585)
                                        1790 Broadway
                                        New York, New York 10019
                                        (212) 974-2400
                                        *Attorneys for Defendant Oscar de la Hoya*

10